IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., <br> 425 Third Street, S.W., Suite 800 <br> Washington, DC  20024, <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL ARCHIVES AND <br> RECORDS ADMINISTRATION <br> 8601 Adelphi Road <br> College Park, MD  20740-6001, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Civil Action No. |

**COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF**

Plaintiff Judicial Watch, Inc. brings this action against Defendant National Archives and Records Administration to compel compliance with the Presidential Records Act, 44 U.S.C. § 2201, et seq. ("PRA") and the Administrative Procedure Act, 5 U.S.C. § 701, et seq. ("APA").  As grounds therefor, Judicial Watch, Inc. alleges as follows:

**JURISDICTION AND VENUE**

1.  The Court has jurisdiction over this action pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1331.

2.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).

**PARTIES**

3.  Plaintiff is a non-profit, educational foundation organized under the laws of the District of Columbia and having its principal place of business at 425 Third Street, S.W., Suite 800, Washington, DC  20024.  Plaintiff seeks to promote transparency, integrity, and

accountability in government and fidelity to the rule of law. In furtherance of its public interest mission, Plaintiff regularly requests access to the public records of federal, state, and local government agencies, entities, and offices, and disseminates its findings to the public.

4. Defendant National Archives and Records Administration ("NARA") is an agency of the United States Government. Defendant has its principal place of business at 8601 Adelphi Road, College Park, MD 20740-6001. Defendant also operates and maintains the Clinton Presidential Library and Museum ("the Library"), which contains the presidential records of President William Jefferson Clinton.

## STATEMENT OF FACTS

5 The PRA defines "presidential records" as documentary materials created by the President "in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President." 44 U.S.C. § 2201(2).

6. Pursuant to the PRA, Defendant was required to assume responsibility for the custody, control, and preservation of, and access to, the presidential records of President Clinton on January 20, 2001, the date that President Clinton left office. 44 U.S.C. § 2203(f)(1).

7. Pursuant to the PRA, "Presidential records shall be administered in accordance with" the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). 44 U.S.C. § 2204(c)(1).

8. During the course of his presidency, President Clinton enlisted historian Taylor Branch to assist President Clinton in creating an oral history of his eight years in office.

9. According to Branch, he and President Clinton met on seventy-nine separate occasions between January 20, 1993 and January 20, 2001 to create audio recordings of

conversations between President Clinton and Branch. These audiotapes preserved not only President Clinton's thoughts and commentary on contemporaneous events and issues he was facing as president, but, in some instances, recorded actual events such as presidential telephone conversations.

10. Within the White House, the Oval Office Operations had an active role in creating the audiotapes. On information and belief, Oval Office Operations controls the day-to-day management of the Oval Office. Most significantly, the office is responsible for determining who gets access to the president during official hours.

11. According to Branch, the audiotapes recorded President Clinton discussing issues related to presidential appointments and policy decisions, including but not limited to the following:

    a. President Clinton contemplating potential changes to his cabinet, including whether to fire CIA Director R. James Woolsey, Jr. and whether to nominate Madeleine Albright for Secretary of State;

    b. President Clinton's thoughts and reasoning behind foreign-policy decisions such as the United States' military involvement in Haiti and the contemplated relaxation of the United States' embargo of Cuba;

    c. President Clinton's side of telephone conversations with foreign leaders, members of the United States Senate, and cabinet secretaries;

    d. President Clinton speaking to several members of the United States Senate in which President Clinton attempted to persuade the Senators to vote against a specific amendment before the Senate;

      e.      President Clinton's side of a telephone conversation with Congressman William Natcher of Kentucky in which President Clinton explained his reasoning for entering into the North American Free Trade Agreement based on technical forecasts that he received during presidential briefings;

      f.      President Clinton's side of a telephone conversation with U.S. Secretary of State Warren Christopher concerning a diplomatic impasse over Bosnia.

12.    On October 7, 2009, Plaintiff sent a request to the Library seeking access to all seventy-nine audiotapes pursuant to FOIA.

13.    By letter dated October 9, 2009, Dana Simmons, Supervisory Archivist for the Library, notified Plaintiff that the Library had determined that the requested audiotapes "are not presidential records and therefore are not subject to request" under the PRA and FOIA.

14.    By letter dated November 2, 2009, Plaintiff administratively appealed the Library's October 9, 2009 determination that the requested records are not presidential records. In its appeal, Plaintiff asserted that the audiotapes are records of President Clinton's official duties as President of the United States and, therefore, are presidential records.

15.    By letter dated March 16, 2010, NARA responded that it had determined that the audiotapes are not presidential records under the PRA, apparently without even reviewing the content of the requested records.

16.    On information and belief, President Clinton unlawfully retained the requested audiotapes after leaving office. 44 U.S.C. § 2202 ("The United States shall reserve and retain complete ownership, possession, and control of presidential records.").

## COUNT 1
(Administrative Procedure Act, 5 U.S.C. § 701, *et seq.*)

17.    Plaintiff realleges paragraphs 1 through 16 as if fully stated herein.

18.    The requested audiotapes are audio records of President Clinton's official duties as President of the United States and, therefore, are presidential records under the PRA.

19.    Defendant's March 16, 2010 determination was a final agency action for which there is no other adequate remedy in a court of law.

20.    Defendant's final agency action was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the PRA.

21.    Plaintiff is being irreparably harmed by reason of Defendant's final agency action because Defendant's determination prevents Plaintiff from gaining access to the audiotapes through FOIA.

22.    Plaintiff will continue to be irreparably harmed unless and until Defendant reverses its March 16, 2010 determination, fulfills its responsibility for the custody, control, and preservation of, and access to, the requested records, and makes them available though FOIA.

WHEREFORE, Plaintiff respectfully requests that the Court: (1) declare Defendant's final agency action as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the PRA; (2) declare the requested records to be presidential records pursuant to 44 U.S.C. § 2203(f); (3) order Defendant to assume custody and control of the requested records; (4) order Defendant to deposit the requested records in the Library pursuant to 44 U.S.C. § 2203(f)(2); (5) order Defendant to process the records pursuant to FOIA; (6) grant Plaintiff an award of attorney's fees and other litigation costs reasonably incurred in this action pursuant to

5 U.S.C. § 552(a)(4)(E); and (7) grant Plaintiff such other relief as the Court deems just and proper.

| | |
|---|---|
| Dated: October 26, 2010 | Respectfully submitted, |
| | JUDICIAL WATCH, INC. |
| | /s/ Paul J. Orfanedes |
| | Paul J. Orfanedes |
| | D.C. Bar No. 429716 |
| | |
| | /s/ Michael Bekesha |
| | Michael Bekesha |
| | D.C. Bar No. 995749 |
| | 425 Third Street, S.W., Suite 800 |
| | Washington, DC  20024 |
| | (202) 646-5172 |
| | |
| | *Attorneys for Plaintiff* |