Exhibit 4



# National Archives and Records Administration

8601 Adelphi Road
College Park, Maryland 20740-6001

MAR 16 2010

Michael Bekesha
Judicial Watch, Inc.
501 School Street, S.W.
Suite 700
Washington, D.C. 20024

### Re: Freedom of Information Act Appeal NGC010-008A

Dear Mr. Bekesha:

This is in response to your Freedom of Information Act (FOIA) appeal of September 23, 2009, submitted via e-mail to the William Jefferson Clinton Presidential Library ("Clinton Library"). Your appeal was forwarded to this office for processing in according with our implementing regulations (36 CFR 1250.74(b)) on November 3, 2009. We apologize for the delay in responding.

In your initial request of October 7, 2009, submitted under the Presidential Records Act (44 U.S.C. §§ 2201-07) and the FOIA, you asked for *"copies of the audiotapes of the seventy-nine conversations that occurred between Taylor Branch and President William J. Clinton at the White House between January 20, 1993 and January 20, 2001."* In our reply of October 9, 2009, you were informed by Dana Simmons of the Clinton Presidential Library that the Taylor Branch tapes are personal records as defined by the Presidential Records Act (PRA) (44 U.S.C. § 2201(3)), and therefore not subject to disclosure under the provisions of the PRA and FOIA. You are appealing that response.

To support your appeal, you indicate your belief that the audio tapes are in fact "presidential records" as defined in 44 U.S.C. § 2201(2), rather than "personal records" as defined in § 2201(3). You base this belief on the grounds that the audio tapes, or reasonably segregable portions thereof, relate to or have an effect upon to the official duties of President Clinton. You cite to the hundred or so hours spent creating a presidential record through these audio interviews and observations caught on tape by Taylor Branch. Further, you assert that during his eight years in office, President Clinton discussed policy with and sought advice from Mr. Branch on a variety of issues from foreign affairs to cabinet appointments. These factors, among other things, lead you to believe that the President Clinton mistakenly used his records management authority under 44 U.S.C. § 2203 to classify these audio tapes as personal records while in office. You are now asking that the National Archives question the determination made by President Clinton to classify the tapes (or portions thereof) as personal records and instead to treat these tapes as presidential records subject to the FOIA, and make the requested audio tapes available to you.

The statute at § 2201(3) defines "personal records" as "all documentary materials, or any reasonably segregable portion thereof, of a purely private or nonpublic character which do not relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties

of the President." Subsection (3)(A) further clarifies the definition of personal records as including "diaries, journals, or other personal notes serving as the functional equivalent of a diary or journal which are not prepared or utilized for, or circulated or communicated in the course of, transacting Government business." The statute distinguishes "personal records" from "presidential records," the latter of which is defined in § 2201(2) to include "documentary materials created . . . by the President in the course of conducting activities which relate to or have an effect upon the carrying out of constitutional, statutory, or other official or ceremonial duties."

In response to your appeal, first, and most importantly, the Taylor Branch audio tapes are not and have never been physically located at the Clinton Library or at any other NARA facility, and thus your FOIA request is premised on a faulty assumption that these materials are somehow within the present custody of the National Archives -- which they are not.

To the extent, however, that your FOIA appeal can be read as requesting that the National Archives should make a further determination that the materials in question ought to be considered "presidential records" within the meaning of the PRA, we decline to do so. In making a decision on this matter I have to consider the nature of the audio tapes, if they were created with the intent of their use as government materials, and whether or not they were circulated within the Administration or relied on as policy documents. On the facts made available to me, I do not believe the materials in question fall within the ambit of the PRA.

First, as stated above, President Clinton did not choose to transfer the materials to the National Archives at the end of his Presidency. It seems self-evident that the President was interested in compiling information for use, at his discretion, in personal endeavors following his presidency. Indeed, you assert, by citing to Mr. Branch's book, that the audio tapes were a way for President Clinton to explain, during his "post-presidency," his reasoning behind much of his policy-making and decision making. This seems to suggest that President Clinton's intent was to use the audio tapes as memory joggers about major initiatives and historical events that occurred while he was in office, akin to "diaries, journals, or other personal notes."

Moreover, while the audio tapes sometimes record President Clinton's statements and actions in response to telephone calls with local and national leaders, there is no evidence to suggest that the tapes were circulated to anyone or relied on for policy determinations of the Clinton Administration. The discussions appear to be strictly between Taylor Branch and President Clinton, and there is no suggestion that they were circulated or relied on for final decisions, or ever intended to be maintained by the White House Office of Records Management for transfer to the Clinton Library as a presidential record.

For these reasons, I am of the opinion that that the audio tapes created by Taylor Branch are personal records of President Clinton as defined by the PRA. Accordingly, I am upholding the initial

determination by the Clinton Library. Your administrative remedies are now exhausted, and you are free to seek judicial review in federal district court.

Sincerely,

*Adrienne C. Thomas*

ADRIENNE C. THOMAS
Deputy Archivist of the United States