## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,         )
                                    )
               Plaintiff,       )       Civil Action No. 10-1834 (PLF)
                                    )
v.                                  )
                                    )
NATIONAL ARCHIVES AND    )
RECORDS ADMINISTRATION    )
                                    )
             Defendant.     )
_____)

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
### TO DISMISS; REQUEST FOR HEARING

      Plaintiff Judicial Watch, Inc., by counsel, respectfully submits this memorandum of law in opposition to Defendant National Archives and Records Administration's motion to dismiss. Moreover, pursuant to LCvR 7(f), Plaintiff requests an oral hearing on Defendant's Motion to Dismiss. As grounds therefor, Plaintiff states as follows:

### MEMORANDUM OF LAW

## I.      INTRODUCTION.

      During the course of his presidency, President William Jefferson Clinton and Author/Historian Taylor Branch met on seventy-nine separate occasions and created audiotapes about the Clinton presidency. Regardless of the intended purpose of the audiotapes, they recorded President Clinton conducting activities that related to, or had an effect upon, the carrying out of his constitutional, statutory, or other official or ceremonial duties of President. In other words, the audiotapes capture President Clinton being President.

      Because the audiotapes capture President Clinton being President and not just the musings of President Clinton about being President, the audiotapes constitute presidential

records under the Presidential Records Act ("PRA").  Therefore, when President Clinton's term concluded on January 20, 2001, the PRA required Defendant to assume responsibility for the custody, control, and preservation of, and access to, the audiotapes.  44 U.S.C. § 2203(f)(1). Because the audiotapes are presidential records under the PRA, they must be made available to the public under the Freedom of Information Act ("FOIA").  Yet, when Plaintiff made a FOIA request to Defendant for the audiotapes, Defendant responded by asserting that the audiotapes are not presidential records and therefore are not subject to FOIA.

II.      FACTUAL BACKGROUND.

A.      The Audiotapes Are Presidential Records.

In 2009, Branch published *The Clinton Tapes: Wrestling History with the President* ("*The Clinton Tapes*").  The book was based on Branch's personal recollections of the seventy-nine separate occasions between January 20, 1993 and January 20, 2001 on which he and President Clinton met to create audio recordings about the Clinton presidency.  Complaint at ¶ 9. According to Branch, these audiotapes preserved not only President Clinton's thoughts and commentary on contemporaneous events and issues he was facing as president, but, in some instances, recorded actual events such as presidential telephone conversations.  *Id*. at ¶ 10; *see generally*, Exhibit 3, as attached to Defendant's Memorandum in Support of its Motion to Dismiss ("Def's Mem.").

As the entity that controls the day-to-day management of the Oval Office, Oval Office Operations is responsible for determining who gets access to the president during official hours. Complaint at ¶ 11.  In *The Clinton Tapes*, Branch describes how Oval Office Operations had an active role in creating the audiotapes.  Complaint at ¶ 11.  Specifically, Nancy Hernreich, director of Oval Office Operations, set up the meetings between President Clinton and Branch

and was involved in the mechanics of the audio recordings.  Exhibit 3, attached to Def's Mem. at 2.  She also discussed the content of the audiotapes with Branch.  *Id.*

Most relevant, according to Branch, the audiotapes recorded President Clinton discussing issues related to presidential appointments and policy decisions.  Complaint at ¶ 11.  Such discussions included, but were not limited to:

- President Clinton contemplating potential changes to his cabinet, including whether to fire CIA Director R. James Woolsey, Jr. and whether to nominate Madeleine Albright for Secretary of State;

- President Clinton's thoughts and reasoning behind foreign-policy decisions such as the United States' military involvement in Haiti and the contemplated relaxation of the United States' embargo of Cuba;

- President Clinton's side of telephone conversations with foreign leaders, members of the United States Senate, and cabinet secretaries;

- President Clinton speaking to several members of the United States Senate in which President Clinton attempted to persuade the Senators to vote against a specific amendment before the Senate;

- President Clinton's side of a telephone conversation with Congressman William Natcher of Kentucky in which President Clinton explained his reasoning for entering into the North American Free Trade Agreement based on technical forecasts that he received during presidential briefings; and

- President Clinton's side of a telephone conversation with U.S. Secretary of State Warren Christopher concerning a diplomatic impasse over Bosnia.

*Id.*; *see also*, Exhibit 3, as attached to Def's Mem. at 2-4.  As is evident from these few examples, the audiotapes contain more than just musings of President Clinton about being President.  The audiotapes capture President Clinton *being* President.

B.     **Defendant Determined that the Audiotapes Are Not Presidential Records.**

Based on Branch's firsthand account of the contents of the audiotapes, Plaintiff sent a

FOIA request to the Clinton Library and Presidential Museum ("the Clinton Library") on

October 7, 2010.  Complaint at ¶¶ 4 and 12.  By letter dated October 9, 2010, Clinton Library

Supervisory Archivist Dana Simmons responded to Plaintiff's request, stating:

> [t]he items you have requested are not presidential records and therefore are not
> subject to request under the PRA and FOIA.  Rather, the tapes are personal
> records, as defined in section 2201(3) of the PRA.  Therefore, we do not consider
> this to be a denial under the Freedom of Information Act.

*Id.* at ¶ 13; Exhibit 2, as attached to Def's Mem.  Supervisory Archivist Simmons also informed

Plaintiff that it could appeal her decision to the Deputy Archivist of the United States.  Plaintiff

did so.  Complaint at ¶ 14; Exhibit 3, as attached to Def's Mem.  (Plaintiff "believes that the

audiotapes are presidential records and therefore FOIA applies.  This letter respectfully appeals

the determination of Ms. Simmons.").

In a response dated March 16, 2010, Deputy Archivist Adrienne C. Thomas affirmed

Supervisory Archivist Simmons' decision:

> I am of the opinion that the audiotapes . . . are personal records of President
> Clinton as defined by the PRA.  Accordingly, I am upholding the initial
> determination by the Clinton Library.  Your administrative remedies are now
> exhausted, and you are free to seek judicial review in federal district court.

Complaint at ¶ 15; Exhibit 4, as attached to Def's Mem.  Plaintiff subsequently initiated this

action.

III.    **ARGUMENT.**

A.     **Plaintiff Has Standing.**

As is evident, Plaintiff specifically challenges Defendant's erroneous determination that

the audiotapes are not presidential records.  By letter dated March 16, 2010, Defendant upheld its

initial determination of October 9, 2009 that "[t]he items [Plaintiff] requested are not presidential records and therefore are not subject to request under the PRA and FOIA."  Exhibit 2, as attached to Def's Mem.  Regardless of what Defendant now attempts to argue, Defendant's decision that the audiotapes are not presidential records was a final agency action.

Plaintiff does not contest that there is no private right of action under the PRA.  Def's Mem. at 12.  Therefore, once Defendant erroneously determined that the audiotapes are not presidential records, Plaintiff's only course of action was to bring a claim against Defendant under the Administrative Procedure Act ("APA").  *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 2010 U.S. Dist. LEXIS 140225, *12 (D.D.C. Sept. 7, 2010) (("The APA grants jurisdiction to review final agency actions for which there is no other adequate remedy.") (*citing* 5 U.S.C. § 704)).  Indeed, Defendant advised Plaintiff that "we do not consider this to be a denial under the Freedom of Information Act."  Exhibit 2, as attached to Def's Mem.  Consequently, if Plaintiff cannot challenge Defendant's erroneous determination under the APA, Plaintiff has no other adequate remedy at law and would be prevented from ever gaining access to the records it requested.

Like the PRA, the Federal Advisory Committee Act ("FACA") does not provide a private right of action.  *Judicial Watch, Inc.*, 2010 U.S. Dist. LEXIS 140225, **11-12.  However, a plaintiff may bring a claim pursuant to the APA for an alleged violation of FACA.  *Id.* at **12- 14.  In *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, Judicial Watch sued the Department of Commerce over alleged violations of FACA.  The Department of Commerce argued that Judicial Watch lacked standing because the Department of Commerce claimed that FACA did not apply. Although the district court agreed with the Department of Commerce, the U.S. Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") reversed, holding that Judicial Watch had

standing to sue. *Judicial Watch v. U.S. Department of Commerce*, 583 F.3d 871, 873 (D.C. Cir.

2009).

As the D.C. Circuit declared, "To satisfy the constitutional standing requirement, familiar

doctrine requires a plaintiff to allege an injury in fact that is fairly traceable to the challenged

conduct and that will likely be redressed by a favorable decision on the merits." *Id.* (*citing Lujan*

*v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  In the context of a FACA claim, the

injury requirement is obviously met when the agency refuses to disclose information that the act

requires be revealed.  *Id.* (*citing Public Citizen v. United States Department of Justice*, 491 U.S.

440, 449-50 (1989); *Byrd v. U.S. Environmental Protection Agency*, 174 F.3d 239, 243 (D.C.

Cir. 1999)).  With respect to causation and redressability, the D.C. Circuit held that the ultimate

issue of whether FACA applies is of no consequence.  *Id.*  Because all factual allegations are

assumed be true at the pleading stage, FACA is assumed to apply on a motion to dismiss.  *Id.*

Therefore, the Court concluded, if FACA ultimately was found to apply, the Department of

Commerce would be "subject to an array of FACA obligations."  *Id.*

In the instant matter, Defendant's argument that Plaintiff does not have standing rests

solely on Defendant's erroneous determination that the audiotapes "are not presidential records

and therefore are not subject to request under the PRA and FOIA."  According to Defendant,

Plaintiff has no standing to sue because it claims that the PRA and FOIA do not apply.  This

argument is no different from the argument that the D.C. Circuit rejected in *Judicial Watch, Inc.*

*v. U.S. Dep't of Commerce* with respect to FACA.

In sum, Defendant determined that the audiotapes are not presidential records.  If, as

Plaintiff alleges, Defendant's determination was erroneous, Defendant will be subject to an array

of obligations under the PRA.  44 U.S.C. § 2203(f)(1).  These obligations include the obligation

to "assume responsibility for the custody, control, and preservation of, and access to" the audiotapes under FOIA. *Id.* Plaintiff plainly requested access under FOIA to what it alleges are presidential records and Defendant erroneously determined that the requested records are not presidential records. As a result, Defendant concluded that it had no obligation to make the audiotapes available under FOIA. Consequently, Plaintiff satisfies the injury, causation, and redressability requirements of standing. *Judicial Watch, Inc.*, 583 F.3d at 873; *see also Massachusetts v. Environmental Protection Agency*, 548 U.S. 497, 526 (2007); *National Parks Conservation Association v. Manson*, 414 F.3d 1, 4 (D.C. Cir. 2005).

### 1. Defendant incorrectly interprets the PRA.

Defendant argues that no provision of the PRA requires it to assume custody and control of President Clinton's audiotapes. Def's Mem. at 12. Of course, this assumes that Defendant was correct in determining that the audiotapes are not presidential records. Assuming, as Plaintiff's Complaint alleges, that the audiotapes are presidential records and Defendant's determination was erroneous, Section 2203(f)(1) of the PRA could not be more clear:

> Upon the conclusion of a President's term of office, or if a President serves consecutive terms upon the conclusion of the last term, the Archivist of the United States *shall assume responsibility for the custody, control, and preservation of, and access to, the presidential records* of that President.

44 U.S.C. § 2203(f)(1) (emphasis added). The PRA would plainly require Defendant to take action.

Therefore, assuming, as Plaintiff's Complaint alleges, that the audiotapes are presidential records, Defendant is simply wrong about not having to take any action with respect to the audiotapes.[1] Indeed, it is clear that Defendant "failed to take a *discrete* agency action that it is

---

[1] Contrary to Defendant's assertions, there is no exclusive "administrative enforcement scheme" that is "the exclusive method by which [Defendant] can recover records under the PRA." Def's Mem. at 13. Defendant argues that the PRA allows Defendant to invoke the

*required to take*." Def's Mem. at 12 (*quoting Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis in original)). The PRA contains a "specific, unequivocal command" (*Norton*, 542 U.S. at 63) directing Defendant to assume responsibility for the custody, control, and preservation of, and access to, presidential records, including the audiotapes. Moreover, the PRA also states that Defendant "shall have an affirmative duty to make [presidential records] available to the public as rapidly and completely as possible." 44 U.S.C. § 2203(f)(1). Not only did the PRA require Defendant to assume responsibility for the custody, control, and preservation of, and access to, the audiotapes, but it also requires Defendant to make the audiotapes available to the public as rapidly and completely as possible under FOIA. As is evident from the plain language of the statute, Defendant was legally required to assume custody and control of the audiotapes.

## 2. President Clinton is not the issue.

Rather than defend its decision that the audiotapes are not presidential records, Defendant tries to divert attention away from that decision by blaming President Clinton. Def's Mem. at 15 ("the alleged violator here is a former President of the United States"). Moreover, Defendant misconstrues Plaintiff's claim as a request to have this Court review Defendant's "decision not to enforce the PRA by seeking to recover specific materials" from President Clinton – a decision that Defendant never reached because it erroneously determined that the audiotapes are not presidential records. *Id.* Quite simply, whether President Clinton violated the PRA is not at issue. While Plaintiff's Complaint alleges at paragraph 16 that, "[o]n information and belief,

---

enforcement scheme of the Federal Records Act ("FRA") with respect to presidential records. However, Defendant cites no case or authority to support its position that enforcement mechanisms of the FRA are exclusive to the PRA. Def's Mem. at 14. Moreover, as Plaintiff demonstrates, the PRA mandates that Defendant assume responsibility for the custody, control, and preservation of, and access to, presidential records.

President Clinton unlawfully retained the requested audiotapes after leaving office," the purpose of that allegation is to identify the current, likely location of the audiotapes.  Complaint at ¶ 16. Defendant is the relevant violator.  Plaintiff's APA claim has nothing to do with a decision – which Defendant never made because it erroneously determined the audiotapes are not presidential records – committed to an agency's discretion.  Rather, Plaintiff's APA claim challenges Defendant's decision that the audiotapes are not presidential records and requests that Defendant take action that it was legally required to take, namely, to "assume responsibility for the custody, control, and preservation of, and access to," presidential records and to "make [those presidential records] available to the public as rapidly and completely as possible" under FOIA. 44 U.S.C. § 2203(f)(1).

> **B.     The PRA Does Not Preclude Judicial Review of Plaintiff's Claim.**

Defendant argues that judicial review of Plaintiff's claim is precluded by the PRA. Defendant's argument is based on a misconception.  Plaintiff is not requesting that the Court review President Clinton's recordkeeping practices or decisions.  Nor is Plaintiff challenging President Clinton's classification of the audiotapes as personal records, if in fact he ever classified them as such.  Plaintiff solely challenges Defendant's erroneous decision that the audiotapes are not presidential records and requests that the Court order Defendant to comply with the clear mandate of PRA.

> **1.     The *Armstrong* opinions do not apply in the instant matter.**

Contrary to Defendant's arguments, *Armstrong v. Bush*, 924 F.2d 282 (D.C. Cir. 1990) ("*Armstrong I*") and *Armstrong v. Executive Office of the President*, 1 F.3d 1274 (D.C. Cir. 1993) ("*Armstrong II*") do not apply.  As the D.C. Circuit explained in *Armstrong II*, "The *Armstrong I* court discusses only the 'creation, management, and disposal decisions' described in

the provisions of 44 U.S.C. § 2203." 1 F.3d at 1294 (internal citations omitted).  Plaintiff does

not challenging any "creation, management, and disposal decisions" of President Clinton.

Plaintiff does not request that the Court "review any decisions [of President Clinton]

regarding whether to create a documentary presidential record."  *Id.*  The audiotapes have

already been created.  Nor does Plaintiff ask that the Court review "the day-to-day process by

which presidential records are maintained" by President Clinton through a "presidential records

management system."  *Id.*  The presidential records management system used by President

Clinton between 1993 and 2001 has no bearing on Plaintiff's October 2009 request to Defendant

for the audiotapes.  Moreover, Plaintiff does not request that the Court review President

Clinton's decisions to dispose of any presidential records under the process outlined in 44 U.S.C.

§ 2203(c)-(e).  *Id.*  To Plaintiff's knowledge, disposal of the audiotapes is not an issue.

Complaint at ¶ 16.

Because Plaintiff is not challenging any creation, management, or disposal decisions of

President Clinton, Plaintiff's APA claim is not precluded by the PRA under *Armstrong I* or

*Armstrong II*.  *Citizens for Responsibility and Ethics in Washington v. Executive Office of the*

*President*, 587 F. Supp. 2d 48, 55 (D.D.C. 2008) (rejecting Defendant's motion to dismiss

because "[w]hile the PRA impliedly precludes judicial review of the President's decisions

concerning the creation, management, and disposal of presidential records during his term in

office, none of plaintiffs' claims seek such review.") (internal citations omitted).

Nor, as Defendant asserts, does *Armstrong II* require dismissal of Plaintiff's lawsuit

because Plaintiff's Complaint does not include any claims under the FRA or FOIA.  Def's Mem.

at 24.  Again, Defendant's argument misconstrues Plaintiff's claim.  According to Defendant,

"*Armstrong II* enables judicial review of guidelines defining presidential records, but only when

the Plaintiff is proceeding under FRA- or FOIA- based claims." *Id.* Yet, as is evident from the

Complaint, Plaintiff is not challenging President Clinton's guidelines for defining presidential

records. Plaintiff is challenging Defendant's erroneous determination that the audiotapes are not

presidential records and its resulting failure to assume custody of the audiotapes and make them

available to the public via FOIA. 44 U.S.C. § 2203(f)(1).

> **2.      Plaintiff is not challenging President Clinton's
>               classification of the audiotapes.**

Defendant argues that Plaintiff's claim is precluded because the PRA "evinces a clear

intent to preclude private litigants from challenging the President's classification of a particular

record as personal." Def's Mem. at 25. Not only is this argument wrong, but Defendant does

not even present any evidence or demonstrate in any way that President Clinton ever classified

the audiotapes as personal records. Defendant merely asserts, without any evidentiary support,

that President Clinton "presumably considers" the audiotapes "to be personal records." Def's

Mem. at 12. Consequently, it fails from both a legal and an evidentiary standpoint.

In *Armstrong II*, the D.C. Circuit explained that the Court in *Armstrong I* did not hold

"that the President could designate any material he wishes as presidential records, and thereby

exercise virtually complete control over it notwithstanding the fact that the material does not

meet the definition of presidential records in the PRA." *Armstrong II*, 1 F.3d at 1293-1294. In

other words, the PRA does not preclude courts from reviewing "the initial classification of

existing materials." *Id.* at 1294. Therefore, even if Plaintiff were challenging President

Clinton's classification of the audiotapes, judicial review of Plaintiff's claim would not be

precluded.

However, Plaintiff is not challenging President Clinton's classification of the audiotapes.

As discussed above, Plaintiff's APA claim solely challenges Defendant's erroneous decision that

the audiotapes are not presidential records and requests that Defendant take action that it was legally required to take, namely, to "assume responsibility for the custody, control, and preservation of, and access to," presidential records and to "make [those presidential records] available to the public as rapidly and completely as possible" under FOIA.  44 U.S.C. § 2203(f)(1).

In sum, judicial review of Plaintiff's claim is not precluded by the text of the PRA or the D.C. Circuit's decisions in the *Armstrong* cases.  In fact, the D.C. Circuit explicitly held in *Armstrong II* that its decision in *Armstrong I* only precluded judicial review of a President's "creation, management, and disposal decisions."  1 F.3d at 1294.  Because Plaintiff does not challenge any "creation, management, and disposal decisions" of President Clinton related to the audiotapes, Plaintiff's claim should not be dismissed.

> **C.     Defendant's Determination That the Audiotapes Are Not Presidential Records Was Arbitrary, Capricious, an Abuse of Discretion, and Otherwise not in Accordance with the PRA.**

Quite simply, Defendant's determination that the audiotapes are not presidential records was not in accordance with the PRA.  As alleged in its Complaint, Plaintiff has demonstrated that the audiotapes contain recordings of seventy-nine instances of President Clinton being President. More specifically, in its November 2, 2009 letter, Plaintiff presented extensive evidence that the audiotapes contained President Clinton conducting activities which related to or had an effect on his ability to carry out his constitutional, statutory, or other official or ceremonial duties of President.  Defendant, to date, has not disputed that the audiotapes recorded President Clinton's side of telephone conversations with members of Congress, Cabinet secretaries, and foreign leaders.  Nor has it disputed that Oval Office Operations had an active role in creating the audiotapes.

Instead, Defendant argues that its institutional expertise allowed it to determine that the audiotapes are not presidential records without gathering any evidence to support its conclusion or making any effort to review the audiotapes.  Defendant, in fact, did nothing but ignore the extensive evidence presented by Plaintiff.  Defendant did not inquire whether President Clinton ever classified the audiotapes as personal records.  Nor did Defendant review the audiotapes to determine whether Plaintiff's evidence was accurate.

Defendant has not presented any evidence demonstrating that President Clinton classified the audiotapes as personal records, nor would such a presentation of evidence be proper on a motion to dismiss for failure to state a claim.  Therefore, Defendant cannot assert that its decision that the audiotapes are not presidential records "uphold[] President Clinton's classification of the [audiotapes] as personal records."  Def's Mem. at 37.  By contrast, Plaintiff's Complaint plainly alleges that Defendant's decision that the audiotapes are not presidential records was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the PRA.  Therefore, Plaintiff's Complaint plainly states a claim for which relief can be granted.

## III.    CONCLUSION.

Plaintiff has satisfied the three requirements for standing.  Plaintiff plainly alleges an injury in fact that is fairly traceable to the challenged conduct and that will likely be redressed by a favorable decision on the merits.  Moreover, the PRA does not preclude Plaintiff's claim. Finally, Defendant's determination that the audiotapes are not presidential records was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the PRA.  For the foregoing reasons, the Court has subject-matter jurisdiction over Plaintiff's lawsuit and Plaintiff has stated a claim upon which relief can be granted.  Defendant's motion to dismiss therefore should be denied.

Dated:  February 22, 2011

Respectfully submitted,

Paul J. Orfanedes
(D.C. Bar No. 429716)

/s/  Michael Bekesha
Michael Bekesha
(D.C.  Bar No. 995749)
JUDICIAL WATCH, INC.
425 Third Street, S.W., Suite 800
Washington, DC  20024
(202) 646-5172

*Counsel for Plaintiff*