## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| JUDICIAL WATCH, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NATIONAL ARCHIVES AND )<br>RECORDS ADMINISTRATION, )<br>)<br>Defendant. )<br> ) | Civil Action No: 1:10-cv-01834 (PLF) |

---

## REPLY MEMORANDUM IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

Table of Authorities ................................................................................ ii

INTRODUCTION ...................................................................................... 1

ARGUMENT ............................................................................................... 2

    I.    PLAINTIFF HAS NOT ALLEGED A REDRESSABLE INJURY ........ 2

        A.    Section 2203(f)(1) Does Not Require NARA to Physically Seize The Audiotapes ........................................................... 2

        B.    NARA's Decision About How To Enforce The PRA Is Committed Solely to Its Discretion ............................................. 7

    II.    JUDICIAL REVIEW OF PLAINTIFF'S CLAIM IS PRECLUDED UNDER THE APA ................................................................... 8

        A.    The *Armstrong* Decisions Preclude Review ................................ 9

        B.    Private Litigants are Precluded from Challenging the Classification of Particular Records as Personal Ones ............ 11

    III.    PLAINTIFF'S LAWSUIT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM .......................................................... 12

CONCLUSION ........................................................................................ 16

# TABLE OF AUTHORITIES

## CASES

*Am. Friends Serv. Comm. v. Webster,*
    720 F.2d 29 (D.C. Cir. 1983) ................................................................. 4

*Amer. Hist. Ass'n v. Peterson,*
    876 F. Supp. 1300 (D.D.C. 1995) ....................................................... 12

*Armstrong v. Bush,*
    924 F.2d 282 (D.C. Cir. 1991) .................................................... passim

*Armstrong v. Exec. Office of the President,*
    1 F.3d 1274 (D.C. Cir. 1993) ................................................................. 9

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................ 13

*Block v. Sec. & Exch. Comm'n,*
    50 F.3d 1078 (D.C. Cir. 1995) ............................................................. 7

*CREW v. Exec. Office of the President,*
    587 F. Supp. 2d 48 (D.D.C. 2008) ..................................................... 10

*Chandris, Inc. v. Latsis,*
    515 U.S. 347 (1995) ............................................................................ 13

*Consumer Electronics Ass'n v. FCC,*
    347 F.3d 291 (D.C. Cir. 2003) ........................................................... 14

*Drake v. Fed. Aviation Admin.,*
    291 F.3d 59 (D.C. Cir.  2002) .............................................................. 7

*Heckler v. Chaney,*
    470 U.S. 821 (1985) .............................................................................. 7

*Judicial Watch, Inc. v. Dep't of Commerce,*
    583 F.3d 871 (D.C. Cir. 2009) ............................................................. 8

*New York v. EPA,*
    413 F.3d 3 (D.C. Cir. 2005) ............................................................... 14

*Newdow v. Roberts,*
    603 F.3d 1002 (D.C. Cir. 2010) ............................................................... 2

*Nixon v. Adm'r of Gen. Servs. Admin.,*
    433 U.S. 425 (1977) ..................................................................... 15, 16

*Nixon v. Freeman,*
    670 F.2d 346 (D.C. Cir. 1982) ............................................................ 15

*Norton v. S. Utah  Wilderness Alliance,*
    542 U.S. 55 (2004) ........................................................................... 2

*Pub. Citizen v. Carlin,*
    2 F. Supp. 2d 1 (D.D.C. 1997) ............................................................. 9

*Rempfer v. Sharfstein,*
    583 F.3d 860 (D.C. Cir. 2009) ........................................................... 14

*Russello v. United States,*
    464 U.S. 16 (1983) ......................................................................... 14

*Schlup v. Delo,*
    513 U.S. 298 (1995) ....................................................................... 11

*St. Mary's Honor Ctr. v. Hicks,*
    509 U.S. 502 (1993) ....................................................................... 11

*Switchmen's Union of North Am. v. Nat'l Mediation Bd.,*
    320 U.S. 297 (1943) ......................................................................... 3

*United States v. Mead Corp.,*
    533 U.S. 218 (2001) ....................................................................... 16

**STATUTES**

5 U.S.C. § 701 ..................................................................................... 8

44 U.S.C. § 2111 ................................................................................. 4

44 U.S.C. § 2112 ................................................................................. 3

44 U.S.C. § 2201 ................................................................ 2, 13, 14, 16

44 U.S.C. § 2202 ................................................................ 6

44 U.S.C. § 2203 ................................................................ passim

44 U.S.C. § 2204 ................................................................ 5

44 U.S.C. § 2904 ................................................................ 4

## MISCELLANEOUS

95 Cong. Rec. H11926 (Oct. 10, 1978) ........................................ 5

95 Cong. Rec. S19069 (Oct. 13, 1978) ........................................ 5

H.R. Rep. No. 95-1487 ....................................................... 6

## INTRODUCTION

Plaintiff Judicial Watch, Inc., continues to seek an extraordinary remedy from this Court: an order compelling the National Archives and Records Administration (NARA) to physically seize the audio diary of former President Clinton. But the Presidential Records Act of 1978 (PRA), 44 U.S.C. §§ 2201-2207, does not allow this Court to order such relief. Regardless of which doctrinal lens one views Plaintiff's lawsuit through—whether it is redressability, preclusion of judicial review, or action committed to agency discretion by law—the underlying defect is apparent: private litigants cannot compel the seizure and scrutiny of potential presidential records.

On the redressability front, Plaintiff does not explain how this Court has the authority to compel NARA to seize and inspect material to determine whether it should be treated as a presidential record. The statutory language that Plaintiff relies on does not impose a mandatory duty on NARA to engage in a never-ending search for presidential records. Moreover, NARA's decision here about how to enforce the PRA is committed to agency discretion by law. Plaintiff's response—that NARA only made an antecedent judgment about whether the PRA was violated—ignores binding precedent holding that this antecedent decision is also committed to agency discretion. Thus, Plaintiff lacks standing because this Court cannot redress Plaintiff's injury.

Even assuming that Plaintiff has standing, the D.C. Circuit's *Armstrong* decisions preclude judicial review over Plaintiff's claim here. Although *Armstrong II* may permit limited judicial review over the *guidelines* defining what constitutes a presidential record, Plaintiff has expressly disavowed any guidelines-related claims.

*See* Plaintiff's Br. at 11.  And even separate from the *Armstrong* decisions, the PRA also precludes judicial review over the decision at issue here—whether a particular record is presidential or personal.

Finally, Plaintiff's lawsuit should be dismissed for failure to state a claim upon which relief can be granted.  First, Plaintiff wholly ignores our final agency action argument, which itself provides a basis for dismissal.  Second, Plaintiff makes no attempt to explain why these audiotapes are not the "functional equivalent of a diary." *See* 44 U.S.C. § 2201(3)(A).  Indeed, Plaintiff fails even to acknowledge the PRA's statutory exception for diaries.  Even taking all factual allegations as true, therefore, Plaintiff has not shown that NARA's decision was arbitrary and capricious.

## ARGUMENT

## I.   PLAINTIFF HAS NOT ALLEGED A REDRESSABLE INJURY.

Because NARA currently does not possess President Clinton's audiotapes, the only way to remedy Plaintiff's injury—a lack of access to the tapes—is for this Court to order NARA to seize the tapes.  But this Court cannot order such relief, and thus Plaintiff's injury is not redressable.  *See Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010) (denying standing because "[t]he only apparent avenue of redress for plaintiffs' claimed injuries . . . is unavailable").

### A.   Section 2203(f)(1) Does Not Require NARA to Physically Seize The Audiotapes.

For a court to order NARA to seize President Clinton's audiotapes, Plaintiff must identify a "specific, unequivocal command" requiring NARA to do so.  *Norton v. S. Utah*

*Wilderness Alliance*, 542 U.S. 55, 63 (2004). Here, Plaintiff relies solely on § 2203(f)(1) as imposing that command. But Plaintiff's interpretation of § 2203(f)(1) ignores the PRA's structure, and misreads that provision's purpose and text.

Plaintiff reads § 2203(f)(1) as "requir[ing NARA] to take action" to seize the audiotapes. Plaintiff's Br. at 7. That reading cannot be reconciled with the PRA's administrative-enforcement mechanism, which grants NARA complete discretion over when to pursue the recovery of presidential records. *See* 44 U.S.C. § 2112(c) ("When the Archivist considers it to be in the public interest" he may invoke the enforcement scheme). This *discretionary* enforcement mechanism, therefore, precludes any *mandatory* duty to seize records.[1] Plaintiff's reading of § 2203(f)(1) cannot be correct.

Moreover, Plaintiff's interpretation misreads the purpose and text of § 2203(f)(1). That provision states:

> Upon the conclusion of a President's term of office . . . the Archivist of the United States shall assume responsibility for the custody, control, and preservation of, and access to, the Presidential records of that President. The Archivist shall have an affirmative duty to make such records available to the public as rapidly and completely as possible consistent with the provisions of this Act.

*Id.* Plaintiff's interpretation of this provision—that it requires NARA to seize and inspect all potential presidential records—is incorrect for two separate reasons.

---

[1] Plaintiff questions whether this administrative-enforcement mechanism is indeed the exclusive method for recovering records. *See* Plaintiff's Br. at 7-8 n.1. But that argument ignores the canon that "the specification of one remedy normally excludes another," *Switchmen's Union of North Am. v. Nat'l Mediation Bd.*, 320 U.S. 297, 301 (1943), along with D.C. Circuit precedent holding that the enforcement mechanism is exclusive under the Federal Records Act (FRA). *See Armstrong v. Bush*, 924 F.2d 282, 294-95 (D.C. Cir. 1991) [hereinafter *Armstrong I*]. Because the FRA's and PRA's enforcement mechanisms are actually the same provision, the mechanism must be exclusive under the PRA as well.

First, neither sentence of § 2203(f)(1) actually mandates that NARA physically seize any records.  Plaintiff repeatedly contends that § 2203(f)(1) requires NARA "to assume custody and control" of all presidential records.  But the text of § 2203(f)(1) requires NARA only to "assume *responsibility for* the custody [and] control" of the records.  44 U.S.C. § 2203(f)(1) (emphasis added).  In other words, § 2203(f)(1) simply says that once a President's time in office has concluded, it is NARA's prerogative to decide how best to provide for the "custody, control, and preservation of, and access to" presidential records.  *Id.*  Thus, this provision delegates decisionmaking authority to NARA; it does not impose any mandatory duties on NARA.

Indeed, a provision of the FRA contains nearly identical language, and the D.C. Circuit has concluded that it does not impose a mandatory duty on NARA.  *See* 44 U.S.C. § 2904(c)(7) ("[T]he Archivist . . . shall . . . have the responsibility . . . to conduct inspections or surveys of the records and the records management programs and practices within and between Federal agencies[.]"); *Am. Friends Serv. Comm. v. Webster*, 720 F.2d 29, 64 (D.C. Cir. 1983) ("In sum, we find that NARS," a predecessor to NARA, "*does not have a statutory duty* to inspect FBI records." (emphasis added)).

Moreover, Congress clearly knows how to require NARA to seize presidential records, as it did in the Presidential Recordings and Materials Preservation Act (PRMPA).  *See* Note following 44 U.S.C. § 2111 at § 101(b)(1) ("Notwithstanding any other law or any agreement[,] . . . the Archivist shall receive, retain, or make reasonable efforts to obtain, complete possession and control of . . . the Presidential historical materials of Richard M. Nixon[.]").  That unequivocal language contrasts

-4-

sharply with the tentative language found in § 2203(f)(1).  *See also Armstrong I*, 924 F.2d at 289 ("When Congress decides purposefully to enact legislation restricting or regulating presidential action, it must make its intent clear.").  Thus, the first sentence of § 2203(f)(1) does not contain a specific, unequivocal command that NARA actually seize any records.

Nor does the second sentence in § 2203(f)(1), which states that the Archivist has "an affirmative duty to make such records available to the public as rapidly and completely as possible[.]"  The provision's plain text says nothing of seizure; it simply requires the Archivist to make available the records in his possession.

The PRA's structure confirms this interpretation.  Absent any restrictions, *see* § 2204, NARA begins to make records available to the public after either five years or when "the Archivist completes the processing and organization of such records."  *Id.* § 2204(b)(2).  Section 2203(f)(1) complements this provision by instructing the Archivist to process the records as quickly as possible.  It does not, however, contain an unequivocal command requiring the seizure of any records.[2]

---

[2] The legislative history confirms that § 2203(f)(1) was designed only to complement § 2204(b)(2).  When the PRA was first introduced, there was no second sentence of § 2203(f)(1).  During one of the floor debates, Representative Brooks (a co-sponsor) stated that, after the expiration of the President's twelve-year restricted period, *see* § 2204(a), the Archivist should make records "available to the public as rapidly and completely as possible."  95 Cong. Rec. H11926 (Oct. 10, 1978).  Later, Senator Percy (also a co-sponsor) offered an amendment to add the second sentence of § 2203(f)(1).  He expressly agreed with Representative Brooks's statement, and thought that the PRA should explicitly "provide researchers and the public with maximum assurance that at the end of the restricted period documents will be opened as fully and completely as possible."  95 Cong. Rec. S19069 (Oct. 13, 1978).  Thus, the second sentence of § 2203(f)(1) simply requires the Archivist to process records quickly; it does not impose a duty to seize records.

There is still a second reason why Plaintiff's interpretation of § 2203(f)(1) is flawed.  To the extent that § 2203(f)(1) *does* require NARA to seize presidential records, that duty would apply *only* to the pre-existing collection of presidential records that the President filed separately from his personal records.  *See* NARA's Opening Br. at 13 n.1.  Congress expressly (and appropriately) granted the President and his staff the authority to create this pre-existing collection of presidential records.  *See* 44 U.S.C. § 2203(b).  NARA took possession of President Clinton's collection on January 20, 2001.  Plaintiff now seeks to impose a separate, new obligation on NARA: to seize and inspect material *outside that collection of records* to determine whether the President erred by not including it in the collection.  The PRA does not impose such an obligation on NARA.[3]  Thus, even assuming that § 2203(f)(1) requires NARA to seize *some* records, that provision would not require NARA to seize the audiotapes here, which were outside President Clinton's pre-existing collection of presidential records.  This Court cannot order NARA to seize the audiotapes, and therefore Plaintiff lacks standing.[4]

---

[3] The PRA's structure confirms that NARA, if required to seize anything at all, is required only to seize the President's pre-existing collection of records.  During a President's time in office, he is responsible for "assur[ing] . . . that [his records] are maintained as Presidential records[.]" 44 U.S.C. § 2203(a).  At the end of the President's term, responsibility for that collection of records shifts to NARA.  *See* H.R. REP. NO. 95-1487, pt. 1, at 13 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5732, 5744 (describing what is now § 2203(f)(1) as "provid[ing] that immediately upon the conclusion of a President's tenure in office *responsibility for* custody, control, preservation, and accessibility of Presidential records *transfers to the Archivist*" (emphasis added)).  The PRA, therefore, imposes only a duty to maintain and care for the collection of records transferred to NARA—not a duty to engage in a never-ending search for potential presidential records outside that collection.

[4] Although not cited by Plaintiff, 44 U.S.C. § 2202 provides: "The United States shall reserve and retain complete ownership, possession, and control of Presidential records[.]" This provision also does not require NARA to seize all potential presidential records.  For one thing, it speaks of *reserving* and *retaining* records—not seeking them out and forcibly appropriating

-6-

B.     NARA's Decision About How To Enforce The PRA Is Committed
       Solely to Its Discretion.

Additionally, Plaintiff's injury is not redressable because NARA's decision not
to seize the tapes—a quintessential enforcement decision—is unreviewable under the
APA.  Plaintiff does not dispute this point.  Instead, Plaintiff argues that NARA "never
reached" this enforcement decision, "because [NARA] erroneously determined that the
audiotapes are not presidential records."  Plaintiff's Br. at 8.  But that determination,
too, is committed to agency discretion by law, and thus Plaintiff's claim is precluded.

As the Supreme Court explained in *Heckler v. Chaney*, 470 U.S. 821 (1985),
agencies are in the best position to determine when enforcement proceedings are
warranted.  Part of that determination, of course, is whether a violation has even
occurred.  *See id.* at 831 (listing "a number of factors" agencies must consider when
deciding not to enforce, including "assess[ing] whether a violation has occurred").  The
D.C. Circuit has twice confirmed this holding.  *See Block v. Sec. & Exch. Comm'n*, 50
F.3d 1078, 1081 (D.C. Cir. 1995) (unreviewable decisions include "not only an agency's
determination not to proceed against a recognized violation, but also its antecedent
judgment upon the question whether a violation has occurred" (internal quotation
marks omitted)); *see also Drake v. Fed. Aviation Admin.*, 291 F.3d 59, 71 (D.C. Cir.

_____

them.  Moreover, this provision was designed only to assert ownership over future presidential
records.  The provision's title—"Ownership of Presidential records"—confirms as much.  In this
context, then, the word "possession" refers not to physical possession, but rather *legal*
possession—*i.e.*, a concept similar to ownership.  *See* BLACK'S LAW DICTIONARY (9th ed. 2009)
(defining "possession" as "[t]he right under which one may exercise control over something to
the exclusion of all others").  Interpreting this provision to require physical possession would
significantly interfere with NARA's mission; for instance, it would prevent NARA from lending
out records to museums and other educational institutions.

2002).  Thus, an agency's assessment of whether a violation has occurred is part of the unreviewable decision whether to enforce.

Plaintiff's characterization of its claim as  "challeng[ing NARA]'s decision that the audiotapes are not presidential records" is therefore unavailing.  Plaintiff's Br. at 9.  At bottom, such a claim is simply a challenge to NARA's determination that no violation occurred—which is still unreviewable under the APA.  Thus, this Court cannot compel NARA to undertake an enforcement action.  Plaintiff's injury cannot be redressed by this Court and therefore Plaintiff lacks standing.

In light of these redressability problems, Plaintiff's reliance on *Judicial Watch, Inc. v. Dep't of Commerce*, 583 F.3d 871 (D.C. Cir. 2009), is misplaced.  There, the court clearly had the legal authority to order relief that would remedy Plaintiff's injury.  *See id.* at 873-74 ("[T]he court could order that Commerce conduct any prospective encounters between itself and the Council . . . in compliance with FACA's require-ments.").  Thus, the court was not confronted with a situation, like the one here, where it lacked the legal authority to provide Plaintiff's desired remedy.

## II.   JUDICIAL REVIEW OF PLAINTIFF'S CLAIM IS PRECLUDED UNDER THE APA.

Even assuming that Plaintiff has established standing, this lawsuit must be dismissed because the PRA is a statute that "preclude[s] judicial review" under the APA.  5 U.S.C. § 701(a)(1).  That is true for two separate reasons: first, the *Armstrong* decisions have already held that review is precluded; and second, private litigants may not challenge the classification of particular records as personal.

-8-

A.    The *Armstrong* Decisions Preclude Review.

The D.C. Circuit's *Armstrong* line of decisions stand for the proposition that the PRA precludes judicial review under the APA, except when a plaintiff is proceeding under the FRA or FOIA, and is asking the court to engage in "limited review to assure that guidelines defining presidential records do not improperly sweep in nonpresidential records." *Armstrong v. Exec. Office of the President (EOP)*, 1 F.3d 1274, 1278 (D.C. Cir. 1993) [hereinafter *Armstrong II*].   Here, Plaintiff makes two critical concessions, either of which is a sufficient basis for dismissing Plaintiff's lawsuit.

First, Plaintiff expressly disavows any guidelines-related claims: "[A]s is evident from the Complaint, Plaintiff is not challenging President Clinton's guidelines for defining presidential records.   Plaintiff is challenging Defendant's erroneous determination that the audiotapes are not presidential records[.]" Plaintiff's Br. at 11. This Court need not go any further: to our knowledge, no plaintiff has ever been permitted to challenge the classification of *particular* records, as opposed to general *guidelines* defining the categories of records.   Even under the FRA, plaintiffs cannot challenge how particular documents are categorized.   *See, e.g.*, *Pub. Citizen v. Carlin*, 2 F. Supp. 2d 1, 9 (D.D.C. 1997) (Friedman, J.) ("While judicial review is precluded to the extent that allegations are made that agency officials are not acting in compliance with their duties under recordkeeping guidelines, the Court has a role to play in reviewing the guidelines themselves under the APA."), *overruled on other grounds by Pub. Citizen v. Carlin*, 184 F.3d 900 (D.C. Cir. 1999); *see also* NARA's Opening Br. at 24 n.4 (collecting cases).   Plaintiff's concession is fatal to its claim.

-9-

Even apart from the guidelines issue, Plaintiff makes a second decisive concession. Specifically, Plaintiff states that its lawsuit "does not include any claims under the FRA or FOIA." Plaintiff's Br. at 10. The *Armstrong* decisions, however, permit judicial review *only* for claims under those statutes. *Armstrong II* could not have permitted review for stand-alone PRA claims, like Plaintiff's claim here, because that issue was not before the court. *See* NARA's Opening Br. at 18-24. The only case cited by Plaintiff—*CREW v. EOP*, 587 F. Supp. 2d 48 (D.D.C. 2008)—actually proves the point. There, the plaintiffs made unambiguously clear that they were proceeding solely under the FRA and FOIA, and were seeking relief only under those statutes. *Id.* at 55 (stating that plaintiffs "are not challenging the defendants' failure to comply with PRA obligations nor seeking relief for any records covered by the PRA"). Thus, review of Plaintiff's freestanding PRA claim is precluded under the APA.

Plaintiff seeks to avoid that conclusion by focusing on the *Armstrong II* panel's discussion of "creation, management, and disposal decisions." *See* Plaintiff's Br. at 10. But *Armstrong II* should not be read so narrowly as to preclude review for *only* those types of decisions. In *Armstrong I*, the court also rejected other types of claims—including the exact type of claim that Plaintiff brings here. *Compare* Compl. at 5 (requesting the court to "declare the requested records to be presidential records"), *with Armstrong I*, 924 F.2d at 286-87 (describing plaintiffs' lawsuit as seeking, in part, a "declaration that many of the documents . . . are . . . presidential records").

Plaintiff's excessive focus on these five words—"creation, management, and disposal decisions"—falls into the trap of treating a "discursive judicial opinion" as if

it were a statute.  *Schlup v. Delo*, 513 U.S. 298, 343 (1995) (Scalia, J., dissenting); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) ("[W]e think it generally undesirable, where holdings of the Court are not at issue, to dissect the sentences of the United States Reports as though they were the United States Code.").  Such a narrow interpretation of *Armstrong II* would sharply limit the holding of *Armstrong I*, and would ignore the larger context of the PRA itself.  It would be very odd if the PRA precluded judicial review over a President's recordkeeping practices, but not his personal diary.  The *Armstrong* decisions should be read to preclude review over both.

## B. Private Litigants are Precluded from Challenging the Classification of Particular Records as Personal Ones.

Even if some measure of judicial review were appropriate for freestanding PRA claims challenging the designation of particular documents, plaintiffs cannot challenge the decision at issue here—whether a record is a personal one.  As discussed in our opening brief (at 25-30), the PRA's text, history, structure, and purpose all confirm that private litigants cannot challenge the classification of a record as personal.

Plaintiff's only response is one of semantics.  We improperly characterized its challenge, Plaintiff says, as one to President Clinton's classification of the audiotapes (as opposed to a challenge to NARA's classification of the tapes).  But Plaintiff was clearly on notice as to what our argument was.  *See, e.g.*, NARA's Opening Br. at 2 ("[T]he PRA precludes judicial review for the particular decision that Plaintiff is challenging here—NARA's determination that President Clinton properly classified particular records as 'personal' rather than 'presidential.'"); *id.* at 25 ("[T]he PRA's text

-11-

supports the view that private litigants may not challenge the designation of a record as personal.").  Plaintiff's decision not to respond to the substance of this argument cannot be excused based on purported confusion.

Regardless of how Plaintiff prefers to characterize its claim—whether it is a challenge to NARA's classification, to President Clinton's classification, or to NARA's upholding of President Clinton's classification—the underlying legal issue is the same. The PRA does not permit private litigants to challenge whether a particular record is properly categorized as a personal one (regardless of who actually makes that classification).  Judicial review over Plaintiff's claim is precluded.[5]

## III.   PLAINTIFF'S LAWSUIT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.

There are two independent reasons why Plaintiff's lawsuit must be dismissed for failure to state a claim upon which relief can be granted.  First, Plaintiff responds to our final agency action argument with only a single sentence: "Regardless of what Defendant now attempts to argue, Defendant's decision that the audiotapes are not presidential records was a final agency action."  Plaintiff's Br. at 5.  That sentence, moreover, is a tautology, not an argument.  Plaintiff's lawsuit should be dismissed on this basis alone.

---

[5] Plaintiff does not rely on *Amer. Hist. Ass'n v. Peterson*, 876 F. Supp. 1300 (D.D.C. 1995), though that decision deserves mention.  Although that case nominally involved the distinction between presidential and personal records, *id.* at 1313-14, that case was really about who should be making the classification decisions after a President's term ends—the Archivist or the former President.  *See id.* at 1315, 1319-20.  Moreover, that case involved guidelines defining the categories of records, not a challenge to the classification of particular records.  *See id.* at 1314.  Thus, *Peterson* has little relevance here.

Second, Plaintiff has not shown, nor could it show, that NARA acted arbitrarily or capriciously in classifying the audiotapes as personal records. Critically, Plaintiff cannot rely solely on its allegation that the audiotapes are "presidential records." That is simply "a legal conclusion couched as a factual allegation," which a court is "not bound to accept as true" even on a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Chandris, Inc. v. Latsis*, 515 U.S. 347, 369 (1995) ("Because statutory terms are at issue, their interpretation is a question of law[.]").

More fundamentally, Plaintiff's entire discussion of the merits is based on a false premise: that the audiotapes are presidential records if they include content related to President Clinton's official duties. That premise ignores the fact that the PRA expressly includes diaries within the definition of personal records. *See* 44 U.S.C. § 2201(3)(A) (defining the term "personal records" and stating that "[s]uch term includes . . . diaries, journals, or other personal notes serving as the functional equivalent of a diary or journal"). The issue, therefore, is not whether the audiotapes "related to or had an effect on [President Clinton's] ability to carry out his constitutional, statutory, or other official or ceremonial duties of President," Plaintiff's Br. at 12, which is the general definition of a presidential record. Rather, the sole question is whether the audiotapes constitute a diary or the functional equivalent of one.[6]

---

[6] The test is not a conjunctive one, requiring that the audiotapes be *both* a diary *and* unrelated to the President's official duties. That is made clear by other provisions within 44 U.S.C. § 2201(3). Section 2201(3)(B), for instance, states that the term "personal records" includes "materials relating to private political associations, and having no relation to or direct effect upon the carrying out of constitutional, statutory, or other official or ceremonial duties of the President[.]" That latter phrase—"having no relation to" the President's official duties—would be superfluous if the test was conjunctive within § 2201(3). Another provision,

NARA properly concluded that the audiotapes are the equivalent of a diary. President Clinton created the tapes "for use, at his discretion, in personal endeavors following his presidency."  NARA's Motion to Dismiss Ex. 4 at 2 (Letter from Deputy Archivist Adrienne C. Thomas).  The tapes were not "circulated to anyone or relied on for policy determinations of the Clinton administration."  *Id.*  And President Clinton himself viewed the audiotapes as personal records, as demonstrated by his decision not to "transfer the materials to the National Archives at the end of his Presidency."[7]  *Id.*  All of these facts highlight why NARA correctly concluded that the audiotapes are personal records—or, at the very least, why NARA's decision was not arbitrary and capricious.  *See Consumer Electronics Ass'n v. FCC*, 347 F.3d 291, 300 (D.C. Cir. 2003) (under arbitrary and capricious standard of review, a court "will not intervene unless the [agency] failed to consider relevant factors or made a manifest error in judgment").

The audiotapes' inclusion of content relating to President Clinton's official duties does not cause the tapes to lose their personal character.  Indeed, one would naturally

---

§ 2201(3)(C), also contains the same latter phrase.  The implication, therefore, is that diaries qualify as personal records, regardless of whether they relate to a President's official duties.  *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks and modifications omitted)).

[7] Plaintiff asserts that this fact cannot be considered, because NARA "has not presented any evidence demonstrating that President Clinton classified the audiotapes as personal records[.]" Plaintiff's Br. at 13.  This is an APA case, however, and thus NARA is not required to submit any evidence to the Court.  Rather, the only issue is whether NARA's factual determinations "were rational and supported by the record."  *New York v. EPA*, 413 F.3d 3, 31 (D.C. Cir. 2005); *see also Rempfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009).  Based on the explanation given in NARA's letter, NARA clearly acted rationally in presuming that President Clinton designated these records personal ones.

*expect* a President's diary to include significant discussions of his official duties.  The D.C. Circuit has already embraced this principle with respect to President Nixon's audio diary: "[W]e assume, and were assured at oral argument . . . , that the archivists will not act according to a definition [of "personal"] that would deny diary classification to a purely personal tape simply because the tape recounts some events related to a President's official duties."  *Nixon v. Freeman*, 670 F.2d 346, 361 (D.C. Cir. 1982).[8]  Moreover, even a brief examination of President Reagan's diary shows how a President's official duties permeate his daily life, and thus would be impossible to avoid discussing in a personal diary.[9]

The recording of a President's side of telephone conversations also does not deprive a diary of its personal character.  The end result is no different than if the President simply wrote in his diary what he said on the phone call.  And President Clinton's alleged enlisting of the Oval Office Operations team is likewise irrelevant, since personal materials may be created with the assistance of government property or personnel.  President Nixon's audio diary, for instance, was created on equipment

---

[8] Justice White's concurring opinion in *Nixon v. Adm'r of Gen. Servs. Admin.*, 433 U.S. 425 (1977),  also embraced the idea that a discussion of official duties does not make a diary any less personal: "Purely private materials, *whether or not of historical interest*, are to be delivered to Mr. Nixon."  *Id.* at 488 (White, J., concurring in part and concurring in the judgment) (emphasis added).

[9] President Reagan's personal diary, which he later donated to the Reagan Presidential Library, is available through the Library's website.  *See* RONALD REAGAN: WHITE HOUSE DIARY, *available at* http://www.reaganlibrary.com/white-house-diary.aspx (last accessed March 15, 2011).

that had been purchased from official White House appropriations.  *See Nixon v. Adm'r*, 433 U.S. at 489-90 n.* (quoting from oral argument).

Finally, Plaintiff does not contest that NARA is entitled to deference on this issue.  Given NARA's significant institutional expertise under the PRA, its interpretation of the statutory phrase "diaries, journals, or other personal notes serving as the functional equivalent of a diary or journal," § 2201(3)(A), is entitled to great weight from this Court.  *See generally United States v. Mead Corp.*, 533 U.S. 218 (2001).

At bottom, even taking all of Plaintiff's factual allegations as true, NARA correctly concluded that the audiotapes here are personal records.  NARA addressed all of Plaintiff's arguments, and provided a rational—if not compelling—explanation for why the tapes are the equivalent of a diary.  Plaintiff's assertion that NARA "did nothing but ignore the extensive evidence presented by Plaintiff," *see* Plaintiff's Br. at 13, is belied by NARA's three-page, single-spaced letter responding to Plaintiff's arguments.  NARA's discussion of the issues, and its eventual conclusion, was not arbitrary and capricious.  Plaintiff has therefore failed to state a claim upon which relief can be granted.

## CONCLUSION

Plaintiff's complaint should be dismissed for lack of subject-matter jurisdiction, or, in the alternative, for failure to state a claim upon which relief can be granted.

Dated: March 15, 2011                    Respectfully submitted,

                                         TONY WEST
                                         Assistant Attorney General

RONALD C. MACHEN JR.
United States Attorney

ELIZABETH J. SHAPIRO
Deputy Branch Director

*/s/    Daniel Schwei*
DANIEL SCHWEI
Trial Attorney (N.Y. Bar)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, DC 20530
Tel.:      (202) 305-8693
Fax:      (202) 616-8470
Email:    daniel.s.schwei@usdoj.gov

*Attorneys for Defendant*

-17-