—1—

1                    UNITED STATES DISTRICT COURT

2                    FOR THE DISTRICT OF COLUMBIA

3    JUDICIAL WATCH, INC.,     )  Civil Action No.
              Plaintiff.       )  10-cv-1834
4         v.                   )
     NATIONAL ARCHIVES AND     )  October 14, 2011
5    RECORDS ADMINISTRATION,   )  10:03 a.m.
                               )
6          Defendant.          )  Washington, D.C.
     ------------------------

7

8

9

10                   TRANSCRIPT OF MOTION HEARING

11          BEFORE THE HONORABLE AMY BERMAN JACKSON
                 UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22   COURT REPORTER:    PATRICIA A. KANESHIRO-MILLER, RMR
                        Certified Realtime Reporter
23                      Official Court Reporter
                        Room 4704B, U.S. Courthouse
24                      Washington, D.C. 20001
                        202-354-3243
25

2

1                          APPEARANCES

2     FOR THE PLAINTIFF:
      MICHAEL BEKESHA, ESQ.
3     Judicial Watch
      425 Third Street, S.W.
4     Suite 800
      Washington, D.C. 20024
5
      FOR THE DEFENDANT:
6     DANIEL SCHWEI, ESQ.
      ELIZABETH SHAPIRO, ESQ.
7     U.S. Department of Justice
      Civil Division
8     20 Massachusetts Avenue, N.W.
      Washington, D.C. 20001
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                           PROCEEDINGS

2              THE CLERK:  Your Honor, calling Civil Action 10-1834,

3    Judicial Watch, Incorporated v. National Archives and Records

4    Administration.

5              Will all counsel please approach the podium and

6    identify yourselves for the record and the parties you

7    represent.

8              MR. BEKESHA:  Good morning, Your Honor.  Michael

9    Bekesha on behalf of the plaintiff, Judicial Watch.

10             THE COURT:  Good morning.

11             MR. SCHWEI:  Good morning, Your Honor.  Daniel Schwei

12   on behalf of the defendant, the National Archives and Records

13   Administration.

14             THE COURT:  Good morning.

15             MS. SHAPIRO:  Good morning, Your Honor.  Elizabeth

16   Shapiro on behalf of the Archives.

17             THE COURT:  Good morning.

18             This is the defendant's motion, so I think we ought to

19   start with the defendant.

20             MR. SCHWEI:  Good morning, Your Honor, and may it

21   please the Court, plaintiff's requested relief is both

22   extraordinary and unprecedented.  Plaintiff is attempting to

23   compel the National Archives to physically seize and then

24   publicly scrutinize the personal audio diary of a former

25   president of the United States.  This Court lacks the

—4—

1    authority to provide such relief.  Neither the Presidential

2    Records Act nor the Administrative Procedure Act authorizes

3    such an order.  Under those statutes, a private litigant

4    cannot compel the seizure and scrutiny of a potential

5    presidential record.  This fundamental defect underlies each

6    of the threshold reasons why plaintiff's complaint must be

7    dismissed.

8            First, plaintiff's alleged injury is not redressable.

9    Plaintiff's only alleged injury here is a lack of access to

10   the audiotapes, but the Court cannot require NARA to go seize

11   those audiotapes, and NARA does not currently possess the

12   audiotapes; therefore, the injury cannot be redressed under

13   the PRA.  Moreover, NARA's decision about how to enforce the

14   PRA cannot be overruled by this Court.

15           THE COURT:  Can I determine from the face of the

16   pleadings from the point where we are at the moment that you

17   don't actually have them?

18           MR. SCHWEI:  According to the allegations in

19   plaintiff's complaint, NARA does not currently possess the

20   tapes.

21           THE COURT:  I think he says, upon information and

22   belief, the president took them with him.  And I think it's in

23   one of your -- the second letter, the appeal letter,

24   Exhibit 4, that the archivist says, we don't have them.  You

25   would have thought that would have been the response to the

1    first -- in the first letter, but at that point they say, we

2    don't have them.  Is that a given for purposes of this

3    hearing?  I'm going to ask the plaintiff the same thing.  Does

4    everybody agree that they're not there?

5            MR. SCHWEI:  Yes, Your Honor --

6            THE COURT:  All right.

7            MR. SCHWEI:  -- I think everybody does agree that

8    they're not there.  That's based both on the complaint and the

9    letter that you referenced --

10           THE COURT:  Okay.

11           MR. SCHWEI:  -- which is incorporated into the

12   complaint.

13           THE COURT:  Okay.

14           MR. SCHWEI:  With those allegations, because NARA does

15   not possess the tapes and because the Court can't order NARA

16   to go out and seize the tapes, there is simply no way to

17   redress the only injury alleged in plaintiff's complaint,

18   which is a lack of access to the audiotapes.

19           The second threshold reason which is tied to that same

20   fundamental defect is that the PRA is the statute that

21   precludes judicial review under the PRA.  That's true both

22   because of the D.C. Circuit's *Armstrong* line of decisions and

23   because the particular action here, namely the classification

24   of particular records as personal, is precluded by the PRA.

25           The third threshold reason is the lack of final agency

1    action.  The letters that Your Honor referenced earlier were a

2    response to a FOIA appeal, not to anything related to the PRA.

3         And the final reason, which is not a threshold reason

4    why this Court must dismiss the complaint, is that it fails to

5    state a claim upon which relief can be granted.  Even assuming

6    all of the factual allegations, the particular records here

7    were not -- NARA's action in responding to those letters was

8    not an arbitrary and capricious action.

9         THE COURT:  Let me start with kind of the fundamentals

10   here.  Basically, you are beyond the redressability issue,

11   which goes to the scope of the archivist's authority.  I guess

12   your third position is that -- the second issue that you

13   raised is that the classification decision is not reviewable

14   by the Court.

15        Who made the classification decision here?

16        MR. SCHWEI:  I think there are two classification

17   decisions, only one of which the plaintiff is challenging.

18   President Clinton initially classified the audiotapes as --

19   presumably classified the tapes as personal records by not

20   transferring them to the archives at the conclusion of his

21   administration.

22        There's then the second classification determination,

23   setting aside the final agency action problem, of course, but

24   assuming that there is a final determination on that issue,

25   NARA then would be presented with the issue:  Do we agree with

1    the president's classification?  If NARA does not agree, then

2    they can invoke their enforcement mechanism, which we discuss;

3    or if they do agree, then they are not required to do anything

4    further.  And so there's really -- there are two

5    classification decisions, but the issue in front of this Court

6    is did NARA act arbitrarily or capriciously in making their

7    own decision or responding to the plaintiff's own letter.

8         THE COURT:  Well, I don't understand -- the judicial

9    review issue seems to be based on the president's

10   classification decision.  Once archives takes it upon itself

11   to make its own classification decision, why isn't that

12   reviewable?  What was it even doing at that point?

13        MR. SCHWEI:  Because the issues are exactly the same,

14   are these presidential records or are these personal records,

15   and so for this Court to review the archivist decision, it

16   would necessarily have to decide did the president correctly

17   classify these materials.  And plaintiff's own complaint bears

18   that out when they allege that President Clinton unlawfully

19   retained these materials.  So the rationale for why judicial

20   review is precluded, namely a sensitivity for the president's

21   personal papers, applies both to the president's own

22   classification decision as well as the archivist decision

23   because that issue, the examination of are these presidential

24   or personal, that is the rationale for precluding judicial

25   review, and the Court would have to answer that question

1     regardless of whether it is the archivist or the president.

2          THE COURT:  Well, all the arguments for why I can't

3     review a decision of the president don't apply to the

4     archivist, so my first question:  What was -- under what

5     authority was the archivist even purporting to reclassify or

6     to classify at all the tapes?  I mean the -- the letter says I

7     have to consider the nature of the audiotapes, the purpose for

8     which they were created, how they were utilized.  Based on the

9     record before me, I am of the opinion that the tapes are

10    personal.

11         Now, under the statute, differentiation between

12    presidential records and personal records is made by the

13    president.  At the close of the presidency, the presidential

14    records become -- fall within the custody of the archivist.

15    What was the archivist doing when it purported to make a

16    classification decision?  What portion of the statute even

17    permitted that exercise to go on?

18         MR. SCHWEI:  Right, I think the statute would be

19    Section 2112(c), which is the enforcement mechanism, which

20    allows the archivist to go after records that it believes are

21    improperly classified or that are outside of its control and

22    that it believes should be within its custody and control, and

23    so that is exactly what happened in the *McIlveney* decision,

24    the *United States v. McIlveney* lawsuit in which the archivist

25    and the Department of Justice jointly brought a lawsuit to

1    recover a map of Cuba that was annotated by President Kennedy

2    because they believed it belonged in the Kennedy Presidential

3    Library.

4         THE COURT:  So the decision before this Court to

5    review, in your view, is the archivist's refusal to invoke the

6    enforcement mechanism under 2112?  Is that even alleged in the

7    complaint?

8         MR. SCHWEI:  No, the action as alleged in the

9    complaint is an arbitrary and capricious challenge to the

10   merits decision, are these presidential or personal; but

11   there's a separate question of redressability.  And a

12   necessary action to redress plaintiff's injury would be to

13   order the archivist to initiate this enforcement action.  So

14   even before we deal with the complaint, the actual claim in

15   the complaint, the Court needs to examine the threshold

16   inquiry of redressability.  Under that inquiry, the relevant

17   decision is did the archivist fail to invoke the enforcement

18   mechanism or is that something the Court can review.  And the

19   answer is no.  And so it's not necessarily what is alleged in

20   the complaint, but it is a separate inquiry under the

21   redressability.  And so because this Court cannot review the

22   archivist's failure to enforce the discretionary -- or the

23   failure to bring the discretionary enforcement action, that's

24   why redressability fails here.

25        THE COURT:  What's your basis -- I understand the

1    basis for saying I can't review what the president did.   What

2    is your basis for your claim that I can't review the

3    archivist's decision of whether or not to invoke the

4    enforcement mechanism?

5        MR. SCHWEI:   I think it starts with heck *Heckler v.*

6    *Chaney*, the Supreme Court's decision stating that

7    presumptively, a failure to bring an enforcement action is not

8    reviewable by this Court.   And then the second thing is when

9    one looks at the actual statutory text of the enforcement

10   mechanism, it says that when the archivist considers it to be

11   in the public interest, he may initiate an enforcement action.

12   And that type of language, when an agency, individual, or

13   representative considers it to be in the public interest, has

14   already been construed by the D.C. Circuit to constitute

15   unreviewable discretion by the agencies because there is no

16   law to apply for this Court in determining whether the agency

17   had properly determined whether something is or is not in the

18   public interest.

19       THE COURT:   Can I review it under the APA as arbitrary

20   and capricious exercise of the discretion?   The discretion is

21   so unfettered that I can't even review it under that standard?

22       MR. SCHWEI:   Correct, Your Honor, which is what both

23   *Heckler v. Chaney* and the line of D.C. Circuit decisions hold,

24   which is that APA review has a carve-out stating that this

25   statute of the APA does not apply to agency action committed

1    to agency discretion by law, and that is exactly what the

2    Supreme Court held in *Heckler v. Chaney*; that an agency's

3    failure to initiate an enforcement action is unreviewable

4    because that decision is committed to agency discretion by

5    law.  And the particular statutory text we have here, the D.C.

6    Circuit already construed nearly identical statutory text and

7    also agreed that that language constitutes unreviewable

8    discretion, so no APA review is available.

9         THE COURT:  What you're saying makes it -- when you

10   read the letter, it doesn't give you any indication that what

11   the archivist is talking about is whether or not it's going to

12   invoke the enforcement mechanism.  It sounds like the

13   archivist is making a classification decision, which is not

14   committed to the archivist in the first place.

15        MR. SCHWEI:  According to the D.C. Circuit's case

16   laws, I think it is, and the reason why is because part of the

17   decision whether to enforce is the antecedent judgment whether

18   a violation has even occurred, and those are the cases that we

19   cite in our reply brief, such as *Block v. SEC*, that even if

20   the Court -- even if the agency declines not to enforce on the

21   basis of there being no violation, that antecedent

22   determination whether there is or is not a violation is part

23   of the decision to enforce and thus cannot be reviewed.  And

24   that's true both under the D.C. Circuit's law and it was the

25   case in *Heckler v. Chaney*.

1        THE COURT:  Well, doesn't *Armstrong II* specifically

2    contemplate that the one thing that is reviewable is the

3    classification decision of what's presidential and what's not.

4        MR. SCHWEI:  Only in very narrow circumstances, which

5    are not present here.  The *Armstrong II* decision creates -- it

6    allows for review of guidelines defining what constitutes a

7    presidential record but only if there is a Federal Records Act

8    or a Freedom of Information Act claim at issue.  And here

9    plaintiff, in their brief, concedes both of those points.

10   Number one, plaintiff concedes that it is not challenging any

11   guidelines; and number two, plaintiff concedes that it is not

12   bringing an FAR or a FOIA-based claim.  And so for those

13   reasons, it fails under both preconditions for an *Armstrong II*

14   type of claim.  The *Armstrong II* type of claim would allow

15   someone under the APA to argue that bringing an FAR claim

16   only, not a PRA claim, which is the only statute at issue

17   here, it would allow someone bringing an FAR claim to argue

18   that the guidelines defining what is a federal record are at

19   issue, and in order to determine whether those guidelines are

20   accurate, the Court would also be able to determine whether

21   guidelines defining presidential record are accurate and

22   conform to the statute.

23       THE COURT:  Right.  I mean, *Armstrong II*, the holding

24   is much narrower than some of the language in it.

25   *Armstrong II* was dealing with a situation where presidential

1    agencies were trying to sweep what are agency records

2    otherwise covered by FOIA and the FAR into the Presidential

3    Records Act and, therefore, narrow access to them; and

4    *Armstrong II* said, no, you can't do that.  But there are

5    snippets in there that this Court has read subsequently as

6    saying, well, the Court was concerned about over classifying

7    in general, and there's a concern that a president could

8    shield all sorts of things that should be open to the public

9    by simply designating them as private.

10         What is the -- what is to prevent a president from

11   frustrating the balance that the statute was trying to strike

12   between his privacy and public access and given the fact that

13   the Court recognizes that just about nothing that a president

14   does is private?  Let's say a president kind of maliciously

15   over classifies, what is the remedy?

16         MR. SCHWEI:  I think there are three answers to that,

17   Your Honor.  The first one and the primary remedy is that it

18   always lies with the archivist and the attorney general, who

19   have the authority if they believe that the president has

20   misclassified something that they can invoke the discretionary

21   enforcement mechanism and pursue recovery of those records.

22   So there's always the possibility for the archivist to act as

23   the check, and that's what Congress chose, and that's the

24   remedy that this Court is bound by.  The Congress did not

25   choose to allow private litigants to try to compel the

1    archivist to pursue those records.  Congress left the decision

2    in the archivist's and the attorney general's hands.

3            The second answer --

4            THE COURT:  Is that a remedy that the archivist even

5    has available once the president is no longer the president?

6    And what it says in the Presidential Records Act is you have

7    the remedies available to you under the records act.  So you

8    go to the records act, and it says you can ask the attorney

9    general to go after an agency.  But we're now talking about a

10   former president.  Can he go after a former president?

11           MR. SCHWEI:  Yes, and that would be a very serious

12   consideration for the archivist to make, but that is exactly

13   what Congress intended, is leaving it to the archivist and the

14   attorney general to decide when it is appropriate under

15   serious considerations in situations like that to seek

16   recovery of those records.  It is a very different situation

17   what plaintiff is attempting here, which is a private litigant

18   trying to compel the archivist to sue a former president, and

19   there are good reasons why Congress would leave the decision

20   to experts like the archivist and the attorney general.

21           And the second answer, I think, going back to Your

22   Honor's earlier question about the checks on the president, is

23   that *Armstrong I* already addressed this issue and said, quote,

24   "Congress presumably relied on the fact that subsequent

25   presidents would honor their statutory obligations to keep a

1       complete record of their administration."  And that's on page

2       20 of our initial brief, that the D.C. Circuit in *Armstrong* --

3                THE COURT:  Given some of the litigation that's

4       occurred subsequently, that may or may not have been a good

5       thing to do.

6                MR. SCHWEI:  Well, that was Congress's judgment, which

7       the D.C. Circuit upheld in *Armstrong I*.

8                And the third check on a president is always Congress,

9       because if Congress believes that a president is wildly

10      misclassifying information, it can pass a law to change the

11      statutory structure or to seize some of those records, which

12      it has done in the past.  That's exactly what happened with

13      President Nixon and the Presidential Recordings and Materials

14      Preservation Act, or the PRMPA, which was the predecessor to

15      the Presidential Records Act.  Congress felt that there was a

16      real danger of losing some of these documents, and so they

17      passed a new statute seizing those documents.

18               THE COURT:  Well, and the statute we're dealing with

19      came after that, so the whole point is to have to avoid that,

20      that's why we have this statute.

21               MR. SCHWEI:  Correct.  Hopefully, this statute will

22      avoid that through enforcement mechanisms like the archivist,

23      but in the event that it does not, then it is always up to

24      Congress.

25               And a second historical instance of Congress acting is

1    with records relating to President Kennedy's assassination,

2    which Congress passed a law in 1992 to preserve all of those

3    records and make them publicly available.

4            So even aside from the archivist's own enforcement

5    discretion and the presumed good faith of the president to

6    honor the PRA, there is always the possibility that Congress

7    could act to correct an instance where a president is not

8    following the PRA.

9            THE COURT:  Well, what's -- how do you distinguish the

10   American Historical Association case?

11           MR. SCHWEI:  Right.  That case was really about

12   whether after a president's term ends the president still

13   retains legal authority to make certain classification

14   decisions, and there the archivist had essentially delegated

15   the authority to the former president.  And so before the

16   Court in that case was the legality of that agreement.  So

17   it's not really a case like this one, where a private litigant

18   is trying to compel the archivist to seize and reclassify

19   certain records.  Peterson was simply a case about who the

20   relevant decision maker was, and that issue is not present

21   here because the archivist clearly is the relevant decision

22   maker here and plaintiff is not alleging otherwise.

23           THE COURT:  Well, but the Court said it had the

24   authority to look at what the archivist was doing, whether the

25   archivist was doing what it was doing because it was bound by

1    a contract with the former president or because it was just

2    simply acceding to the judgment of a former president.  The

3    Court determined after reading *Armstrong I* and *Armstrong II*

4    that there was a little window open for it to look at the

5    classification process and to review what the archivist was up

6    to.

7              MR. SCHWEI:  Right.

8              THE COURT:  So do you think that that part of the

9    decision was wrong?

10             MR. SCHWEI:  The part that read *Armstrong I and II* and

11   concluded that the Court could enforce a freestanding PRA

12   claim under the APA, yes, we believe that part of the decision

13   was wrong; but I will also note that the Peterson decision

14   involved guidelines.  And so still whatever *Armstrong I and II*

15   might mean or whatever other courts have construed them to

16   mean, it is always in the context of reviewing guidelines

17   defining presidential records, and here that is not what

18   plaintiff is attempting to do, as they concede in their brief.

19   They are attempting to reclassify particular records as

20   presidential records; and even under the Federal Records Act,

21   which by all accounts permits more judicial review, litigants

22   are precluded from challenging a particular classification

23   decision, and the reason why is because that is the

24   administrative enforcement mechanism that Congress chose.

25   They chose to give it to the archivist to choose whether to

 1   reclassify or pursue the recovery of missing records.  They

 2   did not want private litigants in control of that, which is

 3   consistent with the rationale of *Heckler v. Chaney*, which is

 4   that agencies are in the best position to determine how to

 5   spend their resources and to chose how to enforce their

 6   statutes.

 7          THE COURT:  Well, if, in fact, the president was not

 8   just chatting up Taylor Branch and musing about why he did

 9   what he did but they literally kept the tapes running while he

10   went about conducting his business and he is talking on the

11   phone to foreign leaders and he's making appointments, doesn't

12   that sort of take it out of the realm of what you started

13   with, which is this is a personal audio diary?  Aren't we

14   really talking about records, or at least in part, that track

15   his official presidency?

16          MR. SCHWEI:  Right, so just to be clear, our position

17   is that Your Honor could only reach that issue if Your Honor

18   disagrees with all of our threshold arguments but --

19          THE COURT:  I understand that, but it's an interesting

20   issue.

21          MR. SCHWEI:  Right.  But here those tapes that

22   President Clinton allegedly recorded are the functional -- or

23   NARA rationally responded to the plaintiff and said those

24   tapes are the functional equivalent of a diary or other

25   personal notes because those tapes were not prepared for use

19

1    in official business, they were not communicated throughout

2    the government.  They were simply President Clinton's personal

3    record --

4         THE COURT:  How does the archivist know what they were

5    without asking President Clinton?

6         MR. SCHWEI:  Because based on the facts provided by

7    the plaintiff in the letter, and which are again alleged here

8    in the complaint, NARA responded rationally to the letter by

9    saying, based on the facts that you have provided in your

10   letter, those sound more like personal records rather than

11   presidential records.

12        THE COURT:  Even the ones where it is literally a tape

13   recording of him on the phone talking to someone else as

14   opposed to a recording of his expounding on his presidency to

15   a historian?

16        MR. SCHWEI:  But that would be no different than if

17   the president sat down and simply wrote in their diary, this

18   is what I said on a telephone conversation earlier --

19        THE COURT:  Well, no, one is filtered through

20   someone's memory and perception and the other is a raw tape.

21        MR. SCHWEI:  It would be the equivalent of either the

22   post hoc recollection or personal notes, which are also

23   included in the statute, which is the mere fact of

24   contemporaneousness would not take it outside the realm of

25   personal records because, again, the statute recognizes that

1    its diaries and papers and personal notes, or the functional

2    equivalent thereof, and so personal notes would likely be

3    created contemporaneously but --

4         THE COURT:  I'm not focusing on the timing; I'm

5    focusing on the exact duplication, the capturing of the

6    conduct of official business, it is different.  The transcript

7    that is being created at this moment is different than the

8    notes he is sitting there taking.

9         MR. SCHWEI:  Because the transcript is a public record

10   that will be communicated, you know -- it might be posted on

11   the docket and it is available to everyone, but here the

12   audiotapes were allegedly created solely by President Clinton

13   solely for his use after the presidency, solely to act as

14   memory joggers about what happened during his presidency.

15        THE COURT:  How can you say that?  How do you know it

16   was prepared solely to be a memory jogger?  Aren't you making

17   factual findings about what was in President Clinton's mind?

18        MR. SCHWEI:  No.  It's based on the facts provided by

19   the plaintiff in their letter.  NARA rationally concluded that

20   President Clinton created these solely as memory joggers for

21   his post-presidency.

22        THE COURT:  The definition of personal records

23   includes diaries, journals, or other personal notes serving as

24   the functional equivalent of a diary or a journal -- yes --

25   which are not prepared or utilized for transacting government

1    business -- correct -- but it also says not communicated in

2    the course of transacting government business.

3            Now, isn't pressing the "on" button on a tape recorder

4    while you pick up the phone and talk to a foreign leader

5    communicated in the course of transacting government business?

6            MR. SCHWEI:  That was not plaintiff's argument in

7    their letter, and NARA could rationally conclude that it was

8    not communicated in the course of transacting government

9    business, because the focus is not on the -- perhaps the audio

10   of President Clinton's voice, it would be on the records

11   themselves, so the records were not communicated in the course

12   of transacting government business.

13           THE COURT:  I think his letter clearly cites those

14   instances where Taylor Branch pointed out that the president

15   kept the tape running while he conducted business, and they

16   specifically asked the archivist to segregate those portions.

17   So I don't see how you can't say that's not in the letter.

18           MR. SCHWEI:  But there is no allegation in the letter

19   or the complaint that the records were communicated in the

20   course of transacting government business, because the

21   relevant record is the audiotapes, not the sound of President

22   Clinton's voice as he's speaking.

23           THE COURT:  Okay.  So the way you parse the statute is

24   he had to take the tape out of the tape recorder after Branch

25   made it and hand it to someone in the course of official

1    business to make it a presidential record.  The fact that it

2    captured the conduct of official business doesn't bring it

3    under the statute.

4         MR. SCHWEI:  Right, and there are a couple of further

5    points to add to that, which is that is certainly a reasonable

6    reading of the statute, and NARA would be entitled to

7    deference on that reading, which is something that the

8    plaintiff does not contest here.  And the second point is that

9    presidential diaries have historically, and almost certainly

10   will in the future, contain information relating to official

11   business.  The president is so busy that it's almost certain

12   that every presidential diary will contain information about

13   what the president did, and that's borne out by President

14   Reagan's diary, which is almost exclusively about official

15   business, and also by the Supreme Court's decision in the

16   Nixon case and in the D.C. Circuit's subsequent decision where

17   they say, simply because a record has official business or

18   historical interest does not take it outside the realm of a

19   personal record.

20        And Congress was very cautious in drafting this

21   protection for personal records.  I think that goes to one of

22   our other preclusion arguments about how Congress would not

23   have intended to allow a private litigant to challenge the

24   classification of a particular record as presidential or

25   personal, and one of the reasons why is the history of the

1    president -- that led up to the passage of the Presidential

2    Records Act.  At the time when Congress passed this act, the

3    scope of a president's personal privacy right was still

4    undefined and was still being litigated by President Nixon,

5    and so Congress, when drafting this statute, was very cautious

6    to avoid a potential challenge on personal privacy grounds,

7    which was one of the main arguments that President Nixon made

8    to the Supreme Court and then later to the D.C. Circuit.

9    That's borne out both by this expressed exemption for personal

10   records, as well as the legislative history which talks about

11   why it's important to avoid some of the challenges presented

12   by the Nixon litigation.

13            THE COURT:  Well, but all of that goes back to where

14   we started, which is Congress and the Courts recognizing a

15   strong presumption that it should -- it is committed to the

16   discretion of the president to say, this is mine and this is

17   public, and that's why I don't quite understand the way the

18   archivist went about answering the letter.  Instead of saying

19   the president designated these as personal, it said, I think

20   they're personal.  And once the archivist purports to be

21   acting, making this classification decision, then it seems to

22   be it's making a decision that might be a reviewable agency

23   action.

24            MR. SCHWEI:  But it is not reviewable because it is

25   inherently part of the enforcement decision, which is

1    delegated to the archivist's complete discretion.  And so

2    that's why the archivist responded making -- responding with

3    its own independent evaluation and characterization, because

4    the archivist could -- could, theoretically, go after records

5    that it believes are presidential records but not within its

6    custody and control.  And so there is a role for the archivist

7    in this statutory scheme, which is what Congress intended, but

8    there is not a role for the Court to evaluate the archivist's

9    decisions within that statutory scheme.

10            THE COURT:  It certainly didn't make it clear at any

11    point in its letter that that's what it was doing.  There

12    might have been a more helpful way to get this teed up the way

13    you now read it.

14            MR. SCHWEI:  But it is not the way I'm reading it, and

15    I think a lot of the confusion is because this entire case was

16    initially teed up as a FOIA case, which is that the letters

17    all were FOIA requests pursuant to the PRA, and so the genesis

18    of those letters led the archivist to respond in the way it

19    did, and then only when this complaint was filed does the

20    plaintiff add these additional dimensions of, oh, the

21    archivist is required to go seize these tapes and provide me

22    access to them.  And so the reason why the issues that we're

23    discussing now are perhaps not completely borne out in this

24    letter is because they were never raised in the appeal by

25    plaintiff and, therefore, the archivist had no occasion to

1    respond to them, and I think that goes to the core of our

2    final agency action argument, which is that the letter that

3    plaintiff is focusing on here was certainly a final agency

4    action with respect to the FOIA appeal but it did not present

5    the PRA type issues that we are now discussing and, therefore,

6    it did not create binding legal consequences under the PRA,

7    and it did not represent the consummation of the agency's

8    decision-making process under the PRA.

9         THE COURT:  Well, it certainly seems final when you

10   look at it.  The archivist says, I'm done, go to District

11   Court now.  And since now you've just explained that the whole

12   point of making the classification decision in the letter was

13   as a predicate to whether it was going to invoke the

14   enforcement mechanism or not, why isn't the letter a final

15   decision that is not going to invoke the enforcement

16   mechanism?  I understand you're saying that even if it is that

17   is not a reviewable decision --

18        MR. SCHWEI:  Right.

19        THE COURT:  -- but why doesn't the letter clearly say,

20   we're done with this from the archive's perspective?

21        MR. SCHWEI:  Because it only says we are done with

22   this with respect to the FOIA claim that was actually

23   presented in the letter.  It says, first and most

24   fundamentally, we don't have these audiotapes, so your FOIA

25   claim is over; but oh by the way, here's an additional

1     explanation about why we do not think -- or we do not think

2     that these -- we probably view these records as personal

3     records rather than presidential.

4          THE COURT:  Well, "probably" is a little softer than

5     what they said.  It said, "I decide."

6          MR. SCHWEI:  They say, based on the facts made

7     available to me, I believe that these are personal records,

8     which is -- which has nothing to do with the actual FOIA claim

9     that was presented.

10         THE COURT:  So to tee up the claim that you would

11    ultimately be standing here and telling me is unreviewable,

12    they would have had to write a letter to the archivist and

13    say, please exercise your authority under 2112 to ask the

14    attorney general to go after the records, and the archivist

15    write back and say no, and then they were supposed to sue

16    under the APA and say that was arbitrary and capricious so

17    that you could come back and say it's within its unfettered

18    discretion so you have to dismiss this.

19         MR. SCHWEI:  Which is the point of requirements like

20    final agency action, to give the agency the opportunity to

21    actually consider the issues that are going to then be

22    litigated.  So it makes sense to give the agency the first

23    opportunity to consider those issues and resolve them before a

24    lawsuit is filed against that agency.

25         THE COURT:  So you're telling him that if he thinks he

 1   can make a better case than he's made already for the fact

 2   that these might be presidential records and not personal

 3   records, he can write another letter asking the archivist to

 4   consider invoking the enforcement mechanism and the archivist

 5   hasn't already decided whether it would or it wouldn't?

 6          MR. SCHWEI:  I think that lawsuit would present all of

 7   the same --

 8          THE COURT:  I'm not talking about the lawsuit.  Is

 9   that letter dead on arrival, or is that a letter he could

10   write?

11          MR. SCHWEI:  I can't speak to whether that would be

12   dead on arrival.  It's the agency's decision.

13          THE COURT:  But your position on final agency action

14   is that that decision has not yet been made?

15          MR. SCHWEI:  That the letter at issue here does not

16   represent a final agency action with respect to that decision.

17          THE COURT:  Okay.  All right.  Well, that's

18   interesting.

19          MR. SCHWEI:  But that lawsuit, the eventual lawsuit

20   would present all of the same other threshold --

21          THE COURT:  That would be dead on arrival, in your

22   view?

23          MR. SCHWEI:  Yes, Your Honor.

24          THE COURT:  All right.  I think you've covered all of

25   your points, but if I interrupted you too early and there is

1      something else you want to cover, you can do so.

2              MR. SCHWEI:  No, Your Honor, I think we've covered all

3      of the issues.

4              THE COURT:  Okay.  Thank you very much.

5              MR. BEKESHA:  Good morning, Your Honor.

6              Since you guys just -- since you just concluded with

7      talking about the agency action, the first letter in response

8      to our FOIA request did not say anything about we don't have

9      the records.  It just said these are not presidential records.

10     So we wrote another letter, and in response we received the

11     same response.  So we believe it is a final agency action

12     because you had a first letter.  We asked for -- you know, we

13     provided more evidence, more guidance on why we believed the

14     tapes were presidential records, and archives came back and

15     still said, once again, in a final agency action, these are

16     not presidential records.

17             THE COURT:  But your suit is certainly premised on the

18     assumption that they do not have them; is that correct?

19             MR. BEKESHA:  We don't know whether or not they have

20     them.  We assume that they don't have them on information and

21     belief because archives has told us they don't have them.

22             THE COURT:  And if I'm assuming the complaint to be

23     true for purposes --

24             MR. BEKESHA:  Then --

25             THE COURT:  -- it's not your allegation that they do

1    have them and they're hiding them from you --

2         MR. BEKESHA:  Correct.

3         THE COURT:  -- because you've asked me to order them

4    to go get them?

5         MR. BEKESHA:  We've asked you to determine that the

6    records are presidential records; and once --

7         THE COURT:  Well, you've asked me to order them to go

8    get them.

9         MR. BEKESHA:  To an extent.  We asked the Court to

10   require them to assume custody and control of them.  We're not

11   asking for seizure.  I mean it sounds awful that they think

12   we're asking for this Court to bang down President Clinton's

13   door and seize these audiotapes.  I mean archives could make a

14   phone call, they could write a letter.  There is nothing in

15   the record stating that President Clinton wouldn't just give

16   them the records.  So we're asking that they assume custody

17   and control of them.  We're not specifically saying they have

18   to go seize.

19        THE COURT:  They can call and ask, but ultimately

20   you're asking them to assume control to get something they

21   don't have.

22        MR. BEKESHA:  That's correct, Your Honor.

23        THE COURT:  All right.  What authority under the

24   statute do they have to do that?

25        MR. BEKESHA:  Under the Presidential Records Act, they

1    are required to assume custody and control of the records and

2    then make them immediately available.

3              THE COURT:  They're required to assume custody and

4    control of the presidential records after the president

5    designates which are which?

6              MR. BEKESHA:  Possibly.

7              THE COURT:  Where do they have the authority to go

8    behind that and demand something else?

9              MR. BAKESHA:  Well, first, it is not in the record and

10   no one knows how President Clinton classified these records,

11   nor is that an issue here today.  But the second --

12             THE COURT:  Why not?

13             MR. BEKESHA:  Why isn't it an issue?

14             THE COURT:  Right.  Aren't we missing an indispensable

15   party here?

16             MR. BEKESHA:  We're not because the definition of

17   presidential records doesn't talk about how the president

18   classifies the records; it talks about the substance of the

19   records.  So regardless of how the president classifies the

20   records, if it is a presidential record based on substance,

21   they're still presidential records.

22             THE COURT:  No, the president is given the specific

23   authority to categorize the records as presidential or

24   personal, and the ones that are personal are filed separately.

25   Then when the presidency ends under the statute, the

1    presidential records go within the custody and the control of

2    the archivist.  So where under that statutory scheme does the

3    archivist have any control over something that has already

4    been separated as personal?

5           MR. BEKESHA:  Well, the plaintiff -- we would argue

6    that there is that classification that goes on initially, but

7    that's not -- that's just to help the White House and the

8    president sort out which records is going to be turned over to

9    archives.  It's not the final decision.  It's not absolute.

10   The definition of a presidential record doesn't include a

11   presidential record is what the president says it is.  A

12   presidential record --

13          THE COURT:  Well, actually, I think that's exactly

14   what the statute says.  Where does the statute give the

15   archivist the authority to decide what a presidential record

16   is?

17          MR. BEKESHA:  The archivist -- all the statute says is

18   that the archivist of the United States shall assume

19   responsibility for the custody, control, and preservation of

20   and access to presidential records of that president.

21          Our argument is that these records, as we've alleged,

22   are presidential records and, therefore, archives is to assume

23   custody and control of the records --

24          THE COURT:  That's upon conclusion of the president's

25   term of office.

1          MR. BEKESHA:  Correct, and he has been out of office.

2          THE COURT:  Right.  And that's Section (f).

3          MR. BEKESHA:  Correct.

4          THE COURT:  But if you go up to Section (b),

5    documentary materials produced or received by the president

6    and his staff or units or individuals in the executive office

7    of the president shall -- shall -- to the extent possible, be

8    categorized as presidential records or personal records upon

9    their creation or receipt and be filed separately.  That's

10   (b).  That's during the presidency.  It's only after the

11   presidency is over and there is a category -- you know, let's

12   say he had two boxes, he's leaving the White House; personal,

13   presidential, personal, presidential.  They get this box, they

14   don't get the other box.  This is what they assume custody and

15   control over.  So where do they get to classify anything?

16         MR. BEKESHA:  Your Honor, if you go to section or

17   subsection (b), it says, shall to the extent practical be

18   categorized.  It does not say that if it is not categorized by

19   the president as a presidential record that it is not a

20   presidential record.

21         For example, if you go to the archive's website about

22   the Clinton Library --

23         THE COURT:  It says it shall be classified as

24   presidential or personal and filed separately.

25         MR. BEKESHA:  Correct.  The president is supposed to

—33—

1     categorize his records but that doesn't make it a presidential

2     record; that is just how the president categorizes the record.

3              THE COURT:  Well, who exercises the authority to

4     classify?

5              MR. BEKESHA:  Archives, in response to two of our

6     letters, states that it has the authority to make that

7     determination.

8              THE COURT:  Well, and I'm not sure that it does, and

9     I'm asking you where is that authority found in the statute.

10    There is no reference to presidential versus personal anywhere

11    in the statute except in subsection (b).

12             MR. BEKESHA:  No, Your Honor, but the other parts of

13    the statute talk about presidential records --

14             THE COURT:  Right.

15             MR. BEKESHA:  -- and once -- a presidential record is

16    not because somebody classified it as so but because it fits

17    the criteria.  We have alleged that these records are

18    presidential records based on the information and belief

19    listing, as you were speaking about before, you know,

20    conversations with foreign dignitaries, conversations with

21    congressmen, and the recording kept going.

22             So our position is these records are clearly

23    presidential records and they should be made available to the

24    public as quickly as possible.

25             THE COURT:  Well, let's say you're right.  What

1    authority do I have to tell the archivist to do anything about

2    it?  And what authority do you have to sue, to ask them to do

3    anything about it?

4         MR. BEKESHA:  Well, first off, if you look at the

5    enforcement mechanisms that the archives keeps talking about,

6    section 2112(c), as well as the separate provision about the

7    attorney general.

8         THE COURT:  Right.  And 2112(c) states the archivist

9    may.

10        MR. BEKESHA:  Correct, but it also talks about records

11   being deposited with them.  It doesn't talk about necessarily

12   enforcement actions to go get records they don't have.  I

13   think what 2112(c) talks about is, once archives is provided

14   with personal records, other records, they may treat them as

15   though they were received as presidential records, which is

16   important when they're prior presidents, not as much the case

17   anymore, but I mean prior to the Presidential Records Act, if

18   they received these materials from a former president, what do

19   they do with them.  And all 2112(c) talks about is, once they

20   receive them, they can treat them as presidential records.

21        And then with regard to the attorney general

22   provision, that only applies to the Federal Records Act.  I

23   mean there is no statutory authority or any case authority

24   talking about --

25        THE COURT:  Well, the Presidential Records Act says,

1    if they think it is in the public interest, they can invoke

2    the remedies available in the Federal Records Act, and then

3    you have to go and read the Federal Records Act to see what

4    they're talking about.  But if you're saying neither one of

5    those applies here, where is the statutory authority -- let's

6    put aside the question of whether I can even order them to do

7    it -- where is the statutory authority that they get to call

8    up -- we're not going to go knock on the door now -- and say,

9    President Clinton you've got something that you shouldn't

10   have?

11          MR. BEKESHA:  The authority would be under the

12   Presidential Records Act and the idea that the records -- that

13   archives is required to assume custody and control of the

14   records and make them available.  If they don't have the

15   records, they cannot make them available to the public under

16   FOIA or under any other provision or in any other way.  So the

17   authority rests with what the statute says; that they are

18   required to assume custody and control and then required to

19   make those available to the public.

20          In this instance, if they don't have the records, they

21   will then have an obligation to try to obtain and try to get

22   the records, and that's what we're asking.  We're asking for a

23   determination that the records are presidential records and

24   that archives assumes custody and control of the records.

25          THE COURT:  But you can only read that section the way

1    you're reading that section if you read that section without

2    reading the rest of the statute, that something happens before

3    the end of the presidency, and what happens before the end of

4    the presidency is the president classifies his records.

5         MR. BEKESHA:  Well, we don't know -- that's the other

6    problem.  We don't know what the president did.  We do not

7    know if President Clinton classified these records as personal

8    records or as presidential records.  Archives doesn't know.

9    Archives, in the letter, assumed that these records were

10   classified one way, but they don't know.  I mean there's --

11        THE COURT:  So why aren't -- are we missing a party

12   here?  American Historical Association sued George Bush.

13        MR. BEKESHA:  We're challenging -- we don't think

14   President Clinton is a necessary party because we're

15   challenging the determination by archives; and archives, at

16   that time, didn't reference President Clinton.  They said, as

17   this Court has already stated, they said based on information,

18   I determine.

19        Now, there may be information that President Clinton

20   has that he may be able to provide to the Court to clarify how

21   he classified the records, what happened to the records, maybe

22   even where the records are; but in the motion to dismiss, that

23   is not an issue.  Maybe we need to take the next step and

24   see -- have very limited discovery on that issue if the idea

25   of the classification is important, let the case go forward at

—37—

1    this point, and then figure out what the next step is.

2    Limited discovery of some sort may resolve those issues.

3          THE COURT:  Well, what do you do with the holding in

4    *CREW vs. Chaney* that there is no cause of action against the

5    archivist under this statute?

6          MR. BEKESHA:  We would turn the Court's attention to

7    the *Judicial Watch v. Commerce Department* case about -- which

8    was FACA, so slightly different -- but how -- you know, the

9    prevention of making this determination prevents any possible

10   remedy, any action.  I mean this relies solely on the

11   determination that these were not presidential records.

12   Because they're not presidential records, archives argues, you

13   know, it's outside the scope of FOIA.  There would be

14   no -- because it is outside the scope of FOIA, we couldn't

15   bring a FOIA lawsuit against the Court -- I'm sorry -- against

16   archives.  So we're stuck.  We have no way to challenge their

17   determination.  And so we believe in this instance, which is

18   different circumstances, that APA allows, and this Court has

19   authority, to make a determination under the APA about the

20   decision that archives made in this instance.

21         THE COURT:  What is the decision that you're asking me

22   to review?  The failure to invoke the enforcement mechanisms

23   or the classification?

24         MR. BEKESHA:  Well, the determination that these

25   records are not presidential records.

1          THE COURT:  And again, why -- why is there a cause of

2     action against them?  How do you distinguish *CREW v. Chaney*?

3     What the Court found in that situation is she could mandamus

4     the vice president, but there wasn't really anything she could

5     do about the archivist.  Why isn't that the answer here?

6          MR. BEKESHA:  If I recall correctly, *CREW* was -- *CREW*,

7     very similar to *Armstrong*, was during the presidency.

8          THE COURT:  Right.

9          MR. BEKESHA:  President Clinton is no longer in

10    office.  These are different circumstances.  There is -- a lot

11    of those issues talk about separation of powers and courts and

12    even Congress interfering with the president's day-to-day

13    activities while the president or vice president is in office.

14    We don't have that issue here.

15          THE COURT:  Right.  What she said in *CREW* is, at this

16    point before the presidency is over, they don't have any

17    authority.  They don't get to classify, the vice president is

18    doing all the classifying.  So there is nothing in the

19    statute, there is no statutory hook for me to hold them

20    responsible.  So she lets them out of the lawsuit.

21          Here you're saying the presidency is over, but I see

22    even less of a statutory hook at this point because they get

23    what's given to them at the end of the presidency.  They don't

24    get anything else under the statute, and you're saying there's

25    something they didn't get that was misclassified and I want

1    it.

2         MR. BEKESHA:  Well, we don't know if they're

3    misclassified.  All we know is that archives does not have

4    these audiotapes at this moment.  And based on their letters,

5    they made a determination that they don't have the audiotapes

6    because they're not presidential records.  That's all that's

7    before the Court right now.  You know, we don't know if they

8    may have received the audiotapes at one point.  We don't know

9    that.  They haven't alleged that they never received them;

10   just that they don't have them right now.  They may have been

11   reviewed by archives.  We don't know.  We've alleged that

12   these are presidential records, that they have a requirement

13   to assume custody and control of these records, that they have

14   a responsibility and obligation to make these records

15   available to the public.  Their response, archives' response

16   was they're not presidential records, you don't get them, and

17   that's what we're stuck with, that's what we're faced with.

18        THE COURT:  Well, the Presidential Records Act,

19   according to *Armstrong I*, accords the president virtually

20   complete control over his records during the term of his

21   office.  And the archivist and Congress can't even veto him if

22   he actually starts disposing of records, much less saying, you

23   know, this is private.

24        How do you square that language with your claim that

25   the decision to classify these records is subject to judicial

1    review?

2            MR. BEKESHA:  Well, both the *Armstrong* cases were

3    extremely focused and they were during the presidency and now

4    we're after the presidency; but how we view *Armstrong* was the

5    creation, the management, and disposal decisions; and we're

6    not addressing any of the creation, management, or disposal

7    decisions made by President Clinton.

8            THE COURT:  But the only classification --

9            MR. BEKESHA:  He created --

10           THE COURT:  -- decision in *Armstrong II* said the Court

11   had to be able to review was the decision essentially to bring

12   things under the Presidential Records Act that don't belong

13   there as opposed to excluding something from the Presidential

14   Records Act that you think belongs there.  What right do you

15   have as a private party to say, I am not particularly happy

16   with the balance that has been struck under the Presidential

17   Records Act here?

18           MR. BEKESHA:  Well, the *Armstrong* cases were during

19   the presidency; and although I won't concede that point, I

20   would say that under *Armstrong*, if President Clinton was still

21   in office and making these audiotapes, at this point, under

22   *Armstrong*, we may not be able to go in and ask the Court to

23   deal with the creation, the management, and the disposal of

24   the records.  But these are different times.  We know these

25   records exist.  We know they've been created.  We don't know

 1    how they were necessarily managed during the presidency.  We

 2    don't know what happened to them when President Clinton's term

 3    ended.  All we know is that archives does not have the records

 4    and they don't believe they are presidential records, and

 5    we're trying to figure that out.  We're asking the Court to

 6    make a determination based on the evidence provided that these

 7    records are presidential records, and once they're

 8    presidential records, other obligations take effect.

 9         THE COURT:  How can I make that decision without the

10    information that would really only be in the president's head,

11    what they were created and utilized for?

12         MR. BEKESHA:  Well, that's the problem.  Archives

13    thinks they can still make that determination.  They, in fact,

14    make that determination, so we're challenging their

15    determination.  We're challenging that their decision was

16    arbitrary and capricious because they never reviewed the

17    records, they never asked President Clinton about the records.

18    They looked at our letter and said, no, we don't think these

19    are presidential records, they're not subject to FOIA, so

20    we're challenging that decision.

21         THE COURT:  Well, if a Court could review the decision

22    of presidential versus personal, how would it go about doing

23    that?  What is the standard of review?

24         MR. BEKESHA:  Well, first, the standard of

25    review -- the Court would be reviewing the determination.  It

1    wouldn't -- and once you get to that point --

2            THE COURT:  Right.  But am I supposed to defer?  Do I

3    get to do it de novo?  It depends on what it was prepared or

4    utilized for.  How would I make that determination without

5    input from the president?  And doesn't the lack of any mention

6    of any of this in the statute sort of point to the notion that

7    once it's done, it's done?

8            MR. BEKESHA:  I don't think so.  If once it's done,

9    it's done, the president could classify or not classify, do

10   nothing, and then take all his papers and records with him on

11   the last day.  And archives would say, oh, well, we can't do

12   anything about that.  We don't believe that was the intent

13   that Congress had in mind.

14           THE COURT:  All right.  Well, let's say President

15   Clinton took everything with him, and not just these tapes --

16           MR. BEKESHA:  Uh-huh.

17           THE COURT:  -- and there was essentially an abuse of

18   the Presidential Records Act, and it was a matter of history,

19   he held a press conference and he said, I am taking every

20   single piece of paper in the White House with me, so there,

21   and he leaves.  What can the archivist do under the statute?

22           MR. BEKESHA:  Under the statute, the archives is

23   required to assume custody and control.  Exactly how the

24   archives goes about doing that is part of the discretion that

25   archives has.  But we're not challenging the enforcement

1    mechanism of how they get somewhere.  If they're trying to get

2    C -- if we're at point A and they're trying to get to point D

3    and B and C is in the middle, we're not challenging whether

4    they choose point B or whether they choose point C, whether or

5    not they file a court action, have the attorney general file a

6    court action, whether they try to physically seize the

7    records, make a phone call.  All we're saying is they have a

8    requirement to do so.  How they go about doing it is for the

9    archives to choose, but they're required to do so.

10          THE COURT:  And you get all of that out of the

11   sentence in Section (f)?

12          I mean doesn't the fact that the Presidential Records

13   Act itself specifies the administrative enforcement remedy

14   available under the Federal Records Act indicate that that is

15   the enforcement mechanism and the only enforcement mechanism?

16          MR. BEKESHA:  We don't believe so, Your Honor.  I mean

17   also --

18          THE COURT:  What does "assume custody and control"

19   mean in your view?  What do you want them to do?

20          MR. BEKESHA:  Because they are also required to make

21   them available to the public, "assume custody and control"

22   would be to take control of the records or have somebody else

23   take control of the records, review the records, because if

24   there is personal information --

25          THE COURT:  How do they take control?  He's got them.

1    I have them.  He issues a press release, I've got them.  I'm

2    taking them to New York with Buddy.  Then what?  What are they

3    supposed to do?

4            MR. BEKESHA:  As I said, there are many options.

5    They --

6            THE COURT:  Tell me one.

7            MR. BEKESHA:  One option is they can call President

8    Clinton and ask.  There is nothing in the records --

9            THE COURT:  Okay.  He says no.  Now what?

10           MR. BEKESHA:  They write a nice letter.  They maybe

11   use one of these enforcement mechanisms.  Maybe they try

12   something else.  I mean the idea is, also, you know, Section

13   2202 says, the United States shall reserve and retain complete

14   ownership, possession, and control of presidential records.

15   Under the Presidential Record Act, these records are United

16   States property.  They are supposed to stay within the United

17   States government.  So if you take everything combined and you

18   take the Public Records Act and you look at all those sections

19   as a whole, archives is required to have custody and control

20   of presidential records because they're United States

21   government property and they're supposed to make them

22   available to the public, you know, 5 years, 10 years,

23   12 years, 20 years, if its designated as such, and they're

24   supposed to process them through FOIA, and if they process

25   them through FOIA, they can segregate.  We don't dispute that

1    some of these records could be more of an audio diary; but as

2    a whole, they're presidential records and archives is required

3    to process them as such.

4            THE COURT:  Well, what is your response to the Court's

5    holding in the CREW opinion that there is no private right of

6    action under the PRA?

7            MR. BEKESHA:  We have brought this claim under the

8    APA.

9            THE COURT:  Well, you've brought it under both.  Are

10   we only talking about APA?

11           MR. BEKESHA:  The decision whether or not these are

12   presidential records is our focus.

13           THE COURT:  Okay.

14           MR. BEKESHA:  So our focus is the APA and the

15   determination that archives made.  Where Presidential Records

16   Act and where FOIA comes into play is that the decision was

17   based on the Presidential Records Act; but the focus -- our

18   claim, our argument is solely on the APA, that it was -- that

19   the determination was arbitrary and capricious and that these

20   records are presidential records.

21           THE COURT:  Well, why is it arbitrary and capricious?

22   If you say the final agency action is the letter saying, in my

23   opinion, based on the record before me, these are private, and

24   you say that that is a final decision, and you say that that

25   is a reviewable decision, and that's a decision that the

1    archivist was entitled to make under the statute -- which I'm

2    not sure about, but let's assume you're right about all those

3    things and they made it, and I agree with you that it is

4    final -- what am I measuring it against to find it to be

5    arbitrary and capricious?  If I'm using the APA, doesn't that

6    mean that I have to give them deference?

7            MR. BEKESHA:  There is deference involved but -- and I

8    don't want to go ahead and read our five-page letter -- but if

9    the Court looks through the five-page letter that we wrote on

10   appeal --

11           THE COURT:  No, I read it.

12           MR. BEKESHA:  -- we pretty clearly establish that

13   these were presidential records.  We talk about all the

14   instances that these are presidential records, about

15   conversations President Clinton had with foreign dignitaries,

16   with congressmen, with senators, talking about policies,

17   trying to determine who is going to be his next secretary of

18   state, I believe.  These are all conversations about policy,

19   even in some instances where Taylor Branch went off to a

20   foreign country and came back and reported to the president

21   about what he saw there.  These are all discussions that

22   aren't like a diary.  A diary is something you usually write

23   at the end of the day, at the end of the week in your point of

24   view of what is -- of what occurred.  This is actually what

25   occurred as it was occurring.  It's no different than, you

1    know -- this is very similar -- counsel was talking about this

2    idea --

3            THE COURT:  Let's say you're right because I think

4    there is something to at least the portions of the tapes where

5    he's doing something else other than just chatting with Taylor

6    Branch.  Taylor Branch is watching him do his job.  It's a

7    record of his doing his job.  That still doesn't necessarily

8    fall within the definition because personal talks about what

9    you do with the record and whether you use the record in the

10   course of your government business.  And I don't believe there

11   is anything in your letter that suggests he used the

12   recordings for anything other than personal purposes.  But

13   let's say you are right and he -- after he got off the

14   phone -- took his tape with Taylor Branch and sent it to his

15   chief of staff and said, listen to this great conversation I

16   just had with the foreign leader, wasn't I brilliant, and do

17   you think I made the right decision or should I call them

18   back?  So let's say some portion of them fall within

19   presidential records.  Why is your injury redressable?  Why

20   doesn't that just sort of end the lawsuit?

21           MR. BEKESHA:  Well, under -- going back to the

22   *Judicial Watch vs. Commerce* case, the FACA case where it

23   talked about standing in the FACA context, in there -- I mean

24   I think we fall within there.  Because the records were

25   determined not to be presidential records, we fail

1    to -- archives doesn't have an obligation to process the

2    records; and because of that, we don't have access to the

3    records.  I think -- if the system worked and you went through

4    the checklist, once they're determined presidential records,

5    archives assumed custody and control of the records, and then

6    they make them available.  Because the determination was these

7    were not presidential records, therefore they fall outside the

8    context of FOIA, we don't get the records, and that's our

9    injury.  Our injury is that Judicial Watch as well as --

10           THE COURT:  But Judicial Watch said that the defendant

11   in that case was subject to statutory obligations under the

12   particular statute that were within the agency's power to

13   discharge.

14           MR. BEKESHA:  Yes.

15           THE COURT:  And what they're saying is it is just

16   simply not within our power to do what it is you want us to

17   do, to assume custody and control of the records, and you keep

18   repeating that phrase, and I keep asking you what does that

19   mean, what do they have the statutory authority to do other

20   than exercise their unfettered discretion to ask the attorney

21   general to try to go get them, and you haven't pointed to

22   anything in the statute that they have the authority to do,

23   and I think that's kind of where this sits at the moment.

24           What enforcement mechanism, what thing, what power can

25   they exercise under the statute that I can order them to do

1   that makes your injury redressable?

2          MR. BEKESHA:  Once the records are determined to be

3   presidential records, there is an obligation to assume custody

4   and control of them.  How -- and I will just say, once again,

5   how they go about doing that -- Judicial Watch is not

6   challenging how.  We're not challenging whether they use one

7   enforcement mechanism or another.  The statute --

8          THE COURT:  I just want you to tell me what they have

9   other than the one that they have that they don't have to do.

10         Under the APA, for instance, I can only order an

11  agency to do what it has to do.

12         MR. BEKESHA:  Yes.

13         THE COURT:  And under the statute, they don't have to

14  go after misclassified records.  They can choose to go after

15  misclassified records.  And so that's why I want to know what

16  is it that you see that they have the statutory power to do

17  that they also have the statutory obligation to do.

18         MR. BEKESHA:  We believe they have -- I keep repeating

19  myself.

20         THE COURT:  To assume custody and control of their

21  records?

22         MR. BEKESHA:  Yes, I sound like a broken record, but

23  this obligation will exist.  You know, once a determination is

24  that they are presidential records, this obligation is

25  created; and once that obligation is created, it sets

1    up -- there may be other options -- Judicial Watch is harmed

2    by that determination because it ends everything.  It's final,

3    it's determinative, and there is no redressability -- I mean

4    there is no other way to challenge this determination.  And

5    once the determination is made that's presidential records, it

6    opens the door.  It leaves for the possibility that archives

7    will go out and get the records.  It leaves the possibility

8    that they'll use one of their enforcement mechanisms or they

9    may use other avenues to get them.

10           We're challenging the determination.  We're not

11   challenging archives' failure to bring an enforcement action.

12   We didn't get there.  That's not before the Court.  What's

13   before the Court is --

14           THE COURT:  Why isn't that what should happen next?

15           MR. BEKESHA:  If this Court agreed and found that the

16   records were presidential records and ordered archives to, to

17   the best of it abilities, seek to assume custody and control

18   of the records, it would bring us to a next step.  If archives

19   didn't use their -- you know, all their powers to the best of

20   their ability, there would be --

21           THE COURT:  We're talking about very mushy

22   unenforceable orders at this point.  I mean I just don't think

23   I could issue an order that says try your best.  Then how

24   would anybody be able to ascertain whether they've complied.

25           MR. BEKESHA:  If archives did nothing, they wouldn't

1    be complying.  If they asked President Clinton to turn over

2    the records and he did, they would be complying.  It opens up

3    the door for Judicial Watch to be redressed, to have the

4    records determined to be presidential records and then

5    properly processed as presidential records are supposed to be.

6    Once again, you know, archives can pick and choose how they

7    can go about assuming custody and control, but they have to do

8    so under the statute.

9         THE COURT:  But to me the statute only has them assume

10   custody and control of what has been designated by the

11   president as presidential records.  Earlier in the statute

12   it's the president who exercises the authority to classify

13   them one way or the other and then they get what is

14   presidential, they don't get what's personal.  And so you're

15   basically asking me to enforce the definition section as

16   opposed to asking me to enforce the section that tells under

17   which the archivist has authority one way or the other.

18        MR. BEKESHA:  But once the definition section is

19   enforced, then the other sections fall into place.  If a

20   record is determined to be a presidential record, archives

21   can't sit back and do nothing.  I mean these are United States

22   government property.  They are supposed to be made available

23   to the public.  So the definition is important.  The

24   determination of what is a presidential record is important

25   because it leads to everything else.

1          THE COURT:  But the statute doesn't include a private

2    right of action.  The statute doesn't include a judicial

3    review provision.  Doesn't all of that suggest that

4    misclassified records are only subject to the

5    enforcement -- the one mechanism that is set forth in the

6    statute, which is that they can exercise their discretion to

7    go ask the attorney general and Congress to do something about

8    this?

9          MR. BEKESHA:  No, but it also leaves open the

10   opportunity to bring an APA claim for that because there is no

11   remedy, there is no avenue or vehicle to bring such a

12   challenge specifically under the PRA, and that's why we're

13   focusing on the determination made by archives in its two

14   letters.

15         THE COURT:  Well, they say that the determination they

16   make is essentially do we invoke the enforcement mechanism or

17   not and that that discretion is so broad that it is

18   unreviewable.  What is your response to that?

19         MR. BEKESHA:  That they didn't make a determination

20   about the failure to bring an enforcement action; they made

21   solely a determination about whether or not these records are

22   presidential records, and their determination was that it was

23   not.  There is nothing in their determination saying -- under

24   their theory, they could have said, these are presidential

25   records but we don't invoke the enforcement mechanism.  That

1    would have been a different determination and something else

2    we may have a possibility -- I don't know -- to challenge, but

3    that wasn't their determination.  Their determination was only

4    is this -- are these records presidential records.

5              THE COURT:  And what was the source of their authority

6    to make that determination at all?

7              MR. BEKESHA:  Their source would be the PRA and

8    their -- the overall objective to make presidential records

9    available to the public.

10             THE COURT:  What part of the PRA accords the archivist

11   as opposed to the president any authority whatsoever to

12   classify things as presidential versus personal?  Isn't that a

13   decision committed to the president under the act?

14             And I agree with you, the letter purports to make a

15   decision --

16             MR. BEKESHA:  Uh-huh.

17             THE COURT:  -- and I find that troubling, and I see

18   why you took the approach you took in light of receiving the

19   letter you received.  But where do they have the authority to

20   do any classifying or reclassifying?

21             I mean initially I thought this lawsuit was about your

22   asking them to sort of reclassify.  Now you're saying they

23   went ahead and classified and I think they're wrong and that

24   is a reviewable agency action --

25             MR. BEKESHA:  Uh-huh.

1          THE COURT:  -- and that has some force to it.  But I

2     don't know that they had the power to do that at all anywhere

3     under this statute.  I don't see anywhere where Congress gave

4     the archivist the opportunity to decide what of the

5     president's is personal or not.

6          MR. BEKESHA:  During his term there is no -- I mean

7     they have no -- archivist has no authority during the

8     president's term to make a classification.  That is solely up

9     to the president.

10         THE COURT:  Well, after his term, how does that

11    change?  What's personal is personal.  What he used it for,

12    what he thought it was for, what he created it for, and that's

13    why it says, under Section (b), they should be categorized as

14    presidential or personal upon their creation or receipt.

15         MR. BEKESHA:  Yes.  The president is required to

16    classify the records, if possible.  But it does not -- it does

17    not say that only those records classified by the president

18    are presidential records.  They're just saying he's supposed

19    to classify.  He holds one sheet of paper up, he puts one in

20    one box, one in the other.  That's what his requirement is.

21    If he takes, for example, his daily calendars or maybe his

22    notes on his speeches, a speech that he just -- one of his

23    speeches and puts that in the personal records box, that

24    doesn't make it a personal record, that just means that

25    President Clinton classified it as a personal record.

1          THE COURT:  Right.  And *Armstrong I* says, while he's

2     doing that, there is no judicial review whatsoever.  What he

3     does he has unfettered discretion to.  We're going to trust

4     him to do it right.  Congress trusted him to do it right.  He

5     has unfettered discretion to do it, though the archivist is

6     allowed to raise his hand and say, Mr. President, how about

7     this, how about that, but very, very limited authority to veto

8     what he is doing.  Even literally shredding presidential

9     records, he may dispose of presidential records, and there is

10    nothing we can do about it.

11          MR. BEKESHA:  Correct.

12          THE COURT:  And that, it seems to me, is even more

13    troubling than what you're talking about.  If he can do that,

14    why can't he do this?

15          MR. BEKESHA:  He could classify them as such and maybe

16    he did and maybe he didn't.  We don't know.  But it is still

17    under the obligation -- but archives is still under the

18    obligation to take possession of presidential records.

19          Now, they could -- Congress could have easily in the

20    definition of presidential records said a presidential record

21    is this and list what makes it a presidential record and then

22    said, and as classified by the president.  But they didn't.

23    They didn't focus on the president's classification in the

24    definition of a presidential record.  They focused on the

25    substance.

1          THE COURT:  Well, but they do in Section 2203

2     specifically talk about the classification process taking

3     place.

4          MR. BEKESHA:  Well, that talks about the management

5     and custody of the records.  I mean that's the section it is

6     in, section on how to manage these.  Congress was

7     concerned that --

8          THE COURT:  Well, as I said, Section (b) is the only

9     section I could find that talks about personal at all other

10    than the definition section, and so they have the

11    categorization of presidential versus personal taking place

12    during the presidency, which makes perfect sense.

13         MR. BEKESHA:  Right, but they didn't need to say

14    personal records there.  They could have just said, if it

15    falls in the presidential.  I mean if it is not a presidential

16    record --

17         THE COURT:  Right.

18         MR. BEKESHA:  -- then it is a personal record.

19         THE COURT:  Right.  And so that seems to vest

20    exclusive authority for saying this is personal on the person

21    who would know.

22         MR. BEKESHA:  It gives him that ability to classify at

23    that time, but it doesn't mean that something he classifies at

24    that time is, in fact, a personal or a presidential.  It just

25    means he needs to classify it to make it easier for management

during his term and then after his term for archives.  If the
president didn't classify and didn't manage his records, if he
didn't think about it, if there was no system set up, then
you'd have a problem.  At the end of the term, you'd have a
big stack of papers, one page personal, one page presidential,
and archives would have to sort it out and figure it out.  So
Congress here was trying to make it easy for archives.  They
were trying to say the president needs to classify records.
Just because he classifies it doesn't mean it's a presidential
record.  We're also not asking for archives to go on a fishing
expedition and try to find records that may or may not exist.
We informed archives that these records exist.  Based on the
letters, it almost seems to suggest that archives -- I'm
sorry -- not letters, audiotapes -- that these audiotapes
exist.  So we're not asking for a fishing expedition.

THE COURT:  Well, I feel like your entire theory works
if I ignore *Armstrong I* completely, and you say I can ignore
*Armstrong I* completely because that was during the presidency,
and *Armstrong II* is during the presidency, and CREW is during
the presidency, and American Historical Association is
different.  Are you hanging your hat on anything other than
*Judicial Watch v. Commerce*, or am I writing on a blank slate
here?

MR. BEKESHA:  None of these issues were before the
Court.  And that happens.  In Armstrong it was the first time

1     that it was before the Courts.

2          THE COURT:  I just want to know if I'm right that

3     you're saying I'm writing on a blank slate?

4          MR. BEKESHA:  Yes.

5          THE COURT:  Okay.

6          MR. BEKESHA:  Yes.  We don't think the current case

7     law discusses this issue at all, and that happens.  And so

8     yes, it's a blank slate with in mind what the PRA says and the

9     obligations that archives has.

10          THE COURT:  Okay.  So let's go back to my original

11     question:  What is the standard of review to be applied to a

12     classification decision?  Are you saying arbitrary and

13     capricious because I'm getting at it through the APA?

14          MR. BEKESHA:  Yes.  I mean that's our argument; that

15     the determination was arbitrary and capricious.  How to review

16     the audiotapes -- I mean it would be a -- I mean it's

17     difficult to answer.

18          THE COURT:  It's an important question --

19          MR. BEKESHA:  It is, and I appreciate that.  I just --

20     thinking, you know --

21          THE COURT:  You're telling me, Judge, you absolutely

22     get to review it.  And I'm saying, okay, what's the --

23          MR. BEKESHA:  Right.  I mean, it would be arbitrary

24     and capricious because it is under the APA.  Our claim is that

25     they acted arbitrarily and capriciously, and then you would

1    take into account the facts alleged and whether or not their

2    decision was merited based on the facts presented to them in

3    the letters and also in the complaint.

4         THE COURT:  Well, and am I giving them Chevron

5    deference because they're the agency given the authority to

6    implement this statute under the Presidential Records Act?

7         MR. BEKESHA:  I think because the decision was so

8    arbitrary it doesn't matter what standard you review it under.

9    The letters clearly establish that these records are

10   presidential records; that even with some deference, which the

11   agency doesn't even -- I mean they don't even discuss the

12   facts.  They just say these sound like personal diaries.  They

13   don't even -- it seems based on the letters that they didn't

14   even think about, well, if this is one end of the

15   conversation, you know, is that recordings made in the Oval

16   Office?  Those would be presidential records but why not

17   these.  Oval Office operations helped set up the meetings.

18   They were intimately involved in the recordings.  They set up

19   the appointments with Taylor Branch.  They escorted him

20   sometimes into the Oval Office, sometimes into other rooms in

21   the White House.

22        THE COURT:  Well, let's say you're right about every

23   single step of this:  They were wrong.  I have the authority

24   to tell them that they were wrong.  I have the authority to

25   say assume custody and control.  And they make a phone call,

1    write a nice letter.  They even head up to Observatory Circle

2    and knock on the door.  And he says, they're my records, and

3    he closes the door.  How is your injury something we can

4    redress?

5            MR. BEKESHA:  The injury there would be redressable

6    because by making a determination that the records are

7    presidential records, it falls under FOIA, and there would

8    be -- the FOIA statute would kick in.

9            THE COURT:  FOIA only has to give you what they have.

10           MR. BEKESHA:  Yes, unless it's in the possession of

11   another agency or --

12           THE COURT:  He's not an agency.

13           MR. BEKESHA:  It could be -- and I haven't --

14           THE COURT:  He is a private citizen.

15           MR. BEKESHA:  He is a private citizen, but he also

16   holds -- the former president has some type of office.

17           THE COURT:  Are you saying that my order to them, go

18   get them, binds him to give them to them when they knock on

19   the door --

20           MR. BEKESHA:  No, your order would not bind them.

21   However, they are --

22           THE COURT:  So even if you win, what do you get?

23           MR. BEKESHA:  We get the possibility to discuss that

24   when the time comes.  I mean we've been redressed -- I mean

25   the injury of the determination stops the proceedings.  I mean

1     it stops.  We win by now -- we now have --

2          THE COURT:  The opportunity to sue President Clinton,

3     which you haven't elected to do so far?

4          MR. BEKESHA:  We haven't elected to do so, so far, but

5     that could be a possibility, or the possibility could be that

6     he turns over the records.  It just opens the door to having

7     many -- redressability could be by simply having them declared

8     presidential records and then the ability to have the further

9     process under FOIA.  You know, there are many different

10    instances where an agency could go out and get records under

11    FOIA.

12         THE COURT:  This is not one of those.  This just does

13    not fall within -- if they don't have them, FOIA doesn't help

14    you.

15         MR. BEKESHA:  Most likely, yes.

16         THE COURT:  Okay.  All right.  Is there anything else

17    that you wanted to say that I took you off your outline and

18    you didn't get to say?

19         You can take a minute.

20         MR. BEKESHA:  Thank you.

21         I think we covered everything.

22         THE COURT:  All right.  Thank you very much.

23         MR. BEKESHA:  Thank you very much.

24         THE COURT:  All right.  Briefly, I think I understand

25    all the arguments you made initially, and I don't think we

1    need to repeat them.  The one thing that we haven't really

2    talked about is the only thing he talked about, which is the

3    mandatory nature of Section (f), where it says the archivist

4    shall assume responsibility for access to presidential

5    records, and he says presidential records is defined in the

6    definition section, these meet the definition, therefore you

7    do have a duty that is enforceable by this Court, reviewable

8    by this Court.  What do you say to that?

9            MR. SCHWEI:  We have two responses to that:  The first

10   is that, as Your Honor alluded to, we argue that whatever that

11   duty within Section 2203(f) is, it only applies to the

12   specific collection of presidential records designated by the

13   president as Section 2203(b) contemplates, which there are two

14   pre-existing collections that get -- one gets transferred at

15   the end of the term; personal records do not.

16            The second argument is that even the language of

17   2203(f) does not actually impose a duty to, quote, assume

18   custody and control.  What 2203(f) actually says is, quote,

19   to assume responsibility for assume custody and control, which

20   is very different, because as the D.C. Circuit stated in the

21   *American Friends Service Committee v. Webster case*, when a

22   statute says -- a statute there said NARA shall have

23   responsibility to conduct inspections of records; and the

24   D.C. Circuit, in that case, stated NARA does not have a

25   mandatory duty to conduct inspections.  NARA has the

1    responsibility and the prerogative, but it is not the type of

2    mandatory duty and certainly not the type of specific

3    unequivocal command that is required under the APA for this

4    Court to order NARA to actually comply with that section.

5              THE COURT:  Is that cited in your reply, the case you

6    just cited to me?

7              MR. SCHWEI:  Yes, Your Honor.

8              THE COURT:  Okay.  All right.  I think you said you

9    had two answers.  That was the second answer.  The first

10   answer was Section (b) --

11             MR. SCHWEI:  Correct.

12             THE COURT:  -- that he puts them in the two boxes.

13             All right.  Is there anything else you want to say in

14   response to what he said?

15             MR. SCHWEI:  I think we're content to rest on our

16   briefs, Your Honor.

17             THE COURT:  Okay.  Thank you very much.

18             I very much appreciate the quality of the arguments

19   this morning.  It is a very interesting case.  I think, based

20   upon everything I've read, that we are writing on a relatively

21   blank slate, which makes it interesting, but it also means I

22   need to think about it, and I'm going to take it under

23   advisement.  And thank you very much.

24             (Proceedings adjourned at 11:31 a.m.)

25

64

1          CERTIFICATE OF OFFICIAL COURT REPORTER

2

3          I, Patricia A. Kaneshiro-Miller, certify that the

4     foregoing is a correct transcript from the record of

5     proceedings in the above-entitled matter.

6

7

8     ----------------------------------     ------------------------

9     PATRICIA A. KANESHIRO-MILLER                    DATE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## 1

**10** [1] - 44:22
**11:31** [1] - 63:24
**12** [1] - 44:23
**1992** [1] - 16:2

## 2

**20** [2] - 15:2, 44:23
**2112** [2] - 9:6, 26:13
**2112(c** [5] - 8:19, 34:6,
   34:8, 34:13, 34:19
**2202** [1] - 44:13
**2203** [1] - 56:1
**2203(b** [1] - 62:13
**2203(f** [3] - 62:11,
   62:17, 62:18

## 4

**4** [1] - 4:24

## 5

**5** [1] - 44:22

## A

**a.m** [1] - 63:24
**abilities** [1] - 50:17
**ability** [3] - 50:20,
   56:22, 61:8
**able** [5] - 12:20, 36:20,
   40:11, 40:22, 50:24
**above-entitled** [1] -
   64:5
**absolute** [1] - 31:9
**absolutely** [1] - 58:21
**abuse** [1] - 42:17
**acceding** [1] - 17:2
**access** [8] - 4:9, 5:18,
   13:3, 13:12, 24:22,
   31:20, 48:2, 62:4
**according** [3] - 4:18,
   11:15, 39:19
**accords** [2] - 39:19,
   53:10
**account** [1] - 59:1
**accounts** [1] - 17:21
**accurate** [2] - 12:20,
   12:21
**Act** [29] - 4:2, 12:7,
   12:8, 13:3, 14:6,
   15:14, 15:15, 17:20,
   23:2, 29:25, 34:17,

34:22, 34:25, 35:2,
   35:3, 35:12, 39:18,
   40:12, 40:14, 40:17,
   42:18, 43:13, 43:14,
   44:15, 44:18, 45:16,
   45:17, 59:6
**act** [8] - 7:6, 13:22,
   14:7, 14:8, 16:7,
   20:13, 23:2, 53:13
**acted** [1] - 58:25
**acting** [2] - 15:25,
   23:21
**action** [33] - 5:23, 6:1,
   6:7, 6:8, 6:23, 9:8,
   9:12, 9:13, 9:23,
   10:7, 10:11, 10:25,
   11:3, 23:23, 25:2,
   25:4, 26:20, 27:13,
   27:16, 28:7, 28:11,
   28:15, 37:4, 37:10,
   38:2, 43:5, 43:6,
   45:6, 45:22, 50:11,
   52:2, 52:20, 53:24
**actions** [1] - 34:12
**activities** [1] - 38:13
**actual** [3] - 9:14, 10:9,
   26:8
**add** [2] - 22:5, 24:20
**additional** [2] - 24:20,
   25:25
**addressed** [1] - 14:23
**addressing** [1] - 40:6
**adjourned** [1] - 63:24
**administration** [2] -
   6:21, 15:1
**administrative** [2] -
   17:24, 43:13
**Administrative** [1] -
   4:2
**advisement** [1] -
   63:23
**agencies** [3] - 10:15,
   13:1, 18:4
**agency** [30] - 5:25,
   6:23, 10:12, 10:16,
   10:25, 11:1, 11:4,
   11:20, 13:1, 14:9,
   23:22, 25:2, 25:3,
   26:20, 26:22, 26:24,
   27:13, 27:16, 28:7,
   28:11, 28:15, 45:22,
   49:11, 53:24, 59:5,
   59:11, 60:11, 60:12,
   61:10
**agency's** [4] - 11:2,
   25:7, 27:12, 48:12
**agree** [7] - 5:4, 5:7,
   6:25, 7:1, 7:3, 46:3,
   53:14
**agreed** [2] - 11:7,

50:15
**agreement** [1] - 16:16
**ahead** [2] - 46:8, 53:23
**allegation** [2] - 21:18,
   28:25
**allegations** [3] - 4:18,
   5:14, 6:6
**allege** [1] - 7:18
**alleged** [12] - 4:8, 4:9,
   5:17, 9:6, 9:8, 9:19,
   19:7, 31:21, 33:17,
   39:9, 39:11, 59:1
**allegedly** [2] - 18:22,
   20:12
**alleging** [1] - 16:22
**allow** [4] - 12:14,
   12:17, 13:25, 22:23
**allowed** [1] - 55:6
**allows** [3] - 8:20, 12:6,
   37:18
**alluded** [1] - 62:10
**almost** [4] - 22:9,
   22:11, 22:14, 57:13
**American** [4] - 16:10,
   36:12, 57:20, 62:21
**annotated** [1] - 9:1
**answer** [8] - 7:25,
   9:19, 14:3, 14:21,
   38:5, 58:17, 63:9,
   63:10
**answering** [1] - 23:18
**answers** [2] - 13:16,
   63:9
**antecedent** [2] -
   11:17, 11:21
**APA** [19] - 10:19,
   10:24, 10:25, 11:8,
   12:15, 17:12, 26:16,
   37:18, 37:19, 45:8,
   45:10, 45:14, 45:18,
   46:5, 49:10, 52:10,
   58:13, 58:24, 63:3
**appeal** [5] - 4:23, 6:2,
   24:24, 25:4, 46:10
**applied** [1] - 58:11
**applies** [4] - 7:21,
   34:22, 35:5, 62:11
**apply** [3] - 8:3, 10:16,
   10:25
**appointments** [2] -
   18:11, 59:19
**appreciate** [2] - 58:19,
   63:18
**approach** [1] - 53:18
**appropriate** [1] -
   14:14
**arbitrarily** [2] - 7:6,
   58:25
**arbitrary** [12] - 6:8,
   9:9, 10:19, 26:16,

41:16, 45:19, 45:21,
   46:5, 58:12, 58:15,
   58:23, 59:8
**archive's** [2] - 25:20,
   32:21
**archives** [48] - 6:20,
   7:10, 28:14, 28:21,
   29:13, 31:9, 31:22,
   33:5, 34:5, 34:13,
   35:13, 35:24, 36:8,
   36:9, 36:15, 37:12,
   37:16, 37:20, 39:3,
   39:11, 41:3, 41:12,
   42:11, 42:22, 42:24,
   42:25, 43:9, 44:19,
   45:2, 45:15, 48:1,
   48:5, 50:6, 50:16,
   50:18, 50:25, 51:6,
   51:20, 52:13, 55:17,
   57:1, 57:6, 57:7,
   57:10, 57:12, 57:13,
   58:9
**archives'** [2] - 39:15,
   50:11
**archivist** [65] - 4:24,
   7:15, 7:22, 8:1, 8:4,
   8:5, 8:14, 8:15, 8:20,
   8:24, 9:13, 9:17,
   10:10, 11:11, 11:13,
   11:14, 13:18, 13:22,
   14:1, 14:4, 14:12,
   14:13, 14:18, 14:20,
   15:22, 16:14, 16:18,
   16:21, 16:24, 16:25,
   17:5, 17:25, 19:4,
   21:16, 23:18, 23:20,
   24:2, 24:4, 24:6,
   24:18, 24:21, 24:25,
   25:10, 26:12, 26:14,
   27:3, 27:4, 31:2,
   31:3, 31:15, 31:17,
   31:18, 34:1, 34:8,
   37:5, 38:5, 39:21,
   42:21, 46:1, 51:17,
   53:10, 54:4, 54:7,
   55:5, 62:3
**archivist's** [8] - 6:11,
   9:5, 9:22, 10:3, 14:2,
   16:4, 24:1, 24:8
**argue** [4] - 12:15,
   12:17, 31:5, 62:10
**argues** [1] - 37:12
**argument** [6] - 21:6,
   25:2, 31:21, 45:18,
   58:14, 62:16
**arguments** [6] - 8:2,
   18:18, 22:22, 23:7,
   61:25, 63:18
**Armstrong** [28] - 5:22,
   12:1, 12:5, 12:13,

12:14, 12:23, 12:25,
   13:4, 14:23, 15:2,
   15:7, 17:3, 17:10,
   17:14, 38:7, 39:19,
   40:2, 40:4, 40:10,
   40:18, 40:20, 40:22,
   55:1, 57:17, 57:18,
   57:19, 57:25
**arrival** [3] - 27:9,
   27:12, 27:21
**ascertain** [1] - 50:24
**aside** [3] - 6:23, 16:4,
   35:6
**assassination** [1] -
   16:1
**Association** [3] -
   16:10, 36:12, 57:20
**assume** [26] - 28:20,
   29:10, 29:16, 29:20,
   30:1, 30:3, 31:18,
   31:22, 32:14, 35:13,
   35:18, 39:13, 42:23,
   43:18, 43:21, 46:2,
   48:17, 49:3, 49:20,
   50:17, 51:9, 59:25,
   62:4, 62:17, 62:19
**assumed** [2] - 36:9,
   48:5
**assumes** [1] - 35:24
**assuming** [4] - 6:5,
   6:24, 28:22, 51:7
**assumption** [1] -
   28:18
**attempting** [3] - 14:17,
   17:18, 17:19
**attention** [1] - 37:6
**attorney** [11] - 13:18,
   14:2, 14:8, 14:14,
   14:20, 26:14, 34:7,
   34:21, 43:5, 48:20,
   52:7
**audio** [3] - 18:13,
   21:9, 45:15
**audiotapes** [17] - 4:10,
   4:11, 4:12, 5:18,
   6:18, 8:7, 20:12,
   21:21, 25:24, 29:13,
   39:4, 39:5, 39:8,
   40:21, 57:14, 58:16
**authority** [38] - 4:1,
   6:11, 8:5, 13:19,
   16:13, 16:15, 16:24,
   26:13, 29:23, 30:7,
   30:23, 31:15, 33:3,
   33:6, 33:9, 34:1,
   34:2, 34:23, 35:5,
   35:7, 35:11, 35:17,
   37:19, 38:17, 48:19,
   48:22, 51:12, 51:17,
   53:5, 53:11, 53:19,

54:7, 55:7, 56:20, 59:5, 59:23, 59:24
**authorizes** [1] - 4:2
**available** [19] - 11:8, 14:5, 14:7, 16:3, 20:11, 26:7, 30:2, 33:23, 35:2, 35:14, 35:15, 35:19, 39:15, 43:14, 43:21, 44:22, 48:6, 51:22, 53:9
**avenue** [1] - 52:11
**avenues** [1] - 50:9
**avoid** [4] - 15:19, 15:22, 23:6, 23:11
**awful** [1] - 29:11

**B**

**b)** [2] - 32:10, 33:11
**BAKESHA** [1] - 30:9
**balance** [2] - 13:11, 40:16
**bang** [1] - 29:12
**based** [19] - 5:8, 7:9, 8:8, 12:12, 19:6, 19:9, 20:18, 26:6, 30:20, 33:18, 36:17, 39:4, 41:6, 45:17, 45:23, 57:12, 59:2, 59:13, 63:19
**basis** [4] - 9:25, 10:1, 10:2, 11:21
**bears** [1] - 7:17
**become** [1] - 8:14
**behind** [1] - 30:8
**BEKESHA** [87] - 28:5, 28:19, 28:24, 29:2, 29:5, 29:9, 29:22, 29:25, 30:6, 30:13, 30:16, 31:5, 31:17, 32:1, 32:3, 32:16, 32:25, 33:5, 33:12, 33:15, 34:4, 34:10, 35:11, 36:5, 36:13, 37:6, 37:24, 38:6, 38:9, 39:2, 40:2, 40:9, 40:18, 41:12, 41:24, 42:8, 42:16, 42:22, 43:16, 43:20, 44:4, 44:7, 44:10, 45:7, 45:11, 45:14, 46:7, 46:12, 47:21, 48:14, 49:2, 49:12, 49:18, 49:22, 50:15, 50:25, 51:18, 52:9, 52:19, 53:7, 53:16, 53:25, 54:6, 54:15, 55:11, 55:15, 56:4, 56:13, 56:18, 56:22, 57:24, 58:4, 58:6,

58:14, 58:19, 58:23, 59:7, 60:5, 60:10, 60:13, 60:15, 60:20, 60:23, 61:4, 61:15, 61:20, 61:23
**belief** [3] - 4:22, 28:21, 33:18
**believes** [4] - 8:20, 8:22, 15:9, 24:5
**belong** [1] - 40:12
**belonged** [1] - 9:2
**belongs** [1] - 40:14
**best** [4] - 18:4, 50:17, 50:19, 50:23
**better** [1] - 27:1
**between** [2] - 8:11, 13:12
**beyond** [1] - 6:10
**big** [1] - 57:5
**bind** [1] - 60:20
**binding** [1] - 25:6
**binds** [1] - 60:18
**blank** [4] - 57:22, 58:3, 58:8, 63:21
**Block** [1] - 11:19
**borne** [3] - 22:13, 23:9, 24:23
**bound** [2] - 13:24, 16:25
**box** [4] - 32:13, 32:14, 54:20, 54:23
**boxes** [2] - 32:12, 63:12
**Branch** [8] - 18:8, 21:14, 21:24, 46:19, 47:6, 47:14, 59:19
**brief** [4] - 11:19, 12:9, 15:2, 17:18
**briefly** [1] - 61:24
**briefs** [1] - 63:16
**brilliant** [1] - 47:16
**bring** [10] - 9:23, 10:7, 22:2, 37:15, 40:11, 50:11, 50:18, 52:10, 52:11, 52:20
**bringing** [3] - 12:12, 12:15, 12:17
**broad** [1] - 52:17
**broken** [1] - 49:22
**brought** [3] - 8:25, 45:7, 45:9
**Buddy** [1] - 44:2
**Bush** [1] - 36:12
**business** [16] - 18:10, 19:1, 20:6, 21:1, 21:2, 21:5, 21:9, 21:12, 21:15, 21:20, 22:1, 22:2, 22:11, 22:15, 22:17, 47:10
**busy** [1] - 22:11

**button** [1] - 21:3

**C**

**calendars** [1] - 54:21
**cannot** [7] - 4:4, 4:10, 4:12, 4:14, 9:21, 11:23, 35:15
**capricious** [11] - 6:8, 9:9, 10:20, 26:16, 41:16, 45:19, 45:21, 46:5, 58:13, 58:15, 58:24
**capriciously** [2] - 7:6, 58:25
**captured** [1] - 22:2
**capturing** [1] - 20:5
**carve** [1] - 10:24
**carve-out** [1] - 10:24
**case** [23] - 11:15, 11:25, 16:10, 16:11, 16:16, 16:17, 16:19, 22:16, 24:15, 24:16, 27:1, 34:16, 34:23, 36:25, 37:7, 47:22, 48:11, 58:6, 62:21, 62:24, 63:5, 63:19
**cases** [3] - 11:18, 40:2, 40:18
**categorization** [1] - 56:11
**categorize** [2] - 30:23, 33:1
**categorized** [4] - 32:8, 32:18, 54:13
**categorizes** [1] - 33:2
**category** [1] - 32:11
**cautious** [2] - 22:20, 23:5
**certain** [3] - 16:13, 16:19, 22:11
**certainly** [7] - 22:5, 22:9, 24:10, 25:3, 25:9, 28:17, 63:2
**CERTIFICATE** [1] - 64:1
**certify** [1] - 64:3
**challenge** [7] - 9:9, 22:23, 23:6, 37:16, 50:4, 52:12, 53:2
**challenges** [1] - 23:11
**challenging** [14] - 6:17, 12:10, 17:22, 36:13, 36:15, 41:14, 41:15, 41:20, 42:25, 43:3, 49:6, 50:10, 50:11
**Chaney** [7] - 10:6, 10:23, 11:2, 11:25,

18:3, 37:4, 38:2
**change** [2] - 15:10, 54:11
**characterization** [1] - 24:3
**chatting** [2] - 18:8, 47:5
**check** [2] - 13:23, 15:8
**checklist** [1] - 48:4
**checks** [1] - 14:22
**Chevron** [1] - 59:4
**chief** [1] - 47:15
**choose** [7] - 13:25, 17:25, 43:4, 43:9, 49:14, 51:6
**chose** [4] - 13:23, 17:24, 17:25, 18:5
**Circle** [1] - 60:1
**Circuit** [8] - 10:14, 10:23, 11:6, 15:2, 15:7, 23:8, 62:20, 62:24
**Circuit's** [4] - 5:22, 11:15, 11:24, 22:16
**circumstances** [3] - 12:4, 37:18, 38:10
**cite** [1] - 11:19
**cited** [2] - 63:5, 63:6
**cites** [1] - 21:13
**citizen** [2] - 60:14, 60:15
**claim** [20] - 6:5, 9:14, 10:2, 12:8, 12:12, 12:14, 12:15, 12:16, 12:17, 17:12, 25:22, 25:25, 26:8, 26:10, 39:24, 45:7, 45:18, 52:10, 58:24
**clarify** [1] - 36:20
**classification** [27] - 5:23, 6:13, 6:15, 6:16, 6:22, 7:1, 7:5, 7:10, 7:11, 7:22, 8:16, 11:13, 12:3, 16:13, 17:5, 17:22, 22:24, 23:21, 25:12, 31:6, 36:25, 37:23, 40:8, 54:8, 55:23, 56:2, 58:12
**classified** [13] - 6:18, 6:19, 8:21, 30:10, 32:23, 33:16, 36:7, 36:10, 36:21, 53:23, 54:17, 54:25, 55:22
**classifies** [6] - 13:15, 30:18, 30:19, 36:4, 56:23, 57:9
**classify** [17] - 7:17, 8:6, 32:15, 33:4, 38:17, 39:25, 42:9,

51:12, 53:12, 54:16, 54:19, 55:15, 56:22, 56:25, 57:2, 57:8
**classifying** [3] - 13:6, 38:18, 53:20
**clear** [2] - 18:16, 24:10
**clearly** [6] - 16:21, 21:13, 25:19, 33:22, 46:12, 59:9
**Clinton** [24] - 6:18, 7:18, 18:22, 19:5, 20:12, 20:20, 29:15, 30:10, 32:22, 35:9, 36:7, 36:14, 36:16, 36:19, 38:9, 40:7, 40:20, 41:17, 42:15, 44:8, 46:15, 51:1, 54:25, 61:2
**Clinton's** [6] - 19:2, 20:17, 21:10, 21:22, 29:12, 41:2
**close** [1] - 8:13
**closes** [1] - 60:3
**collection** [1] - 62:12
**collections** [1] - 62:14
**combined** [1] - 44:17
**command** [1] - 63:3
**Commerce** [2] - 37:7, 57:22
**commerce** [1] - 47:22
**committed** [5] - 10:25, 11:4, 11:14, 23:15, 53:13
**Committee** [1] - 62:21
**communicated** [7] - 19:1, 20:10, 21:1, 21:5, 21:8, 21:11, 21:19
**compel** [4] - 4:4, 13:25, 14:18, 16:18
**complaint** [17] - 4:6, 4:19, 5:8, 5:12, 5:17, 6:4, 7:17, 9:7, 9:9, 9:14, 9:15, 9:20, 19:8, 21:19, 24:19, 28:22, 59:3
**complete** [4] - 15:1, 24:1, 39:20, 44:13
**completely** [3] - 24:23, 57:17, 57:18
**complied** [1] - 50:24
**comply** [1] - 63:4
**complying** [2] - 51:1, 51:2
**concede** [2] - 17:18, 40:19
**concedes** [3] - 12:9, 12:10, 12:11
**concern** [1] - 13:7
**concerned** [2] - 13:6,

56:7
**conclude** [1] - 21:7
**concluded** [3] - 17:11, 20:19, 28:6
**conclusion** [2] - 6:20, 31:24
**conduct** [4] - 20:6, 22:2, 62:23, 62:25
**conducted** [1] - 21:15
**conducting** [1] - 18:10
**conference** [1] - 42:19
**conform** [1] - 12:22
**confusion** [1] - 24:15
**Congress** [29] - 13:23, 13:24, 14:1, 14:13, 14:19, 14:24, 15:8, 15:9, 15:15, 15:24, 15:25, 16:2, 16:6, 17:24, 22:20, 22:22, 23:2, 23:5, 23:14, 24:7, 38:12, 39:21, 42:13, 52:7, 54:3, 55:4, 55:19, 56:6, 57:7
**Congress's** [1] - 15:6
**congressmen** [2] - 33:21, 46:16
**consequences** [1] - 25:6
**consider** [4] - 8:7, 26:21, 26:23, 27:4
**consideration** [1] - 14:12
**considerations** [1] - 14:15
**considers** [2] - 10:10, 10:13
**consistent** [1] - 18:3
**constitute** [1] - 10:14
**constitutes** [2] - 11:7, 12:6
**construed** [3] - 10:14, 11:6, 17:15
**consummation** [1] - 25:7
**contain** [2] - 22:10, 22:12
**contemplate** [1] - 12:2
**contemplates** [1] - 62:13
**contemporaneously** [1] - 20:3
**contemporaneousss** [1] - 19:24
**content** [1] - 63:15
**contest** [1] - 22:8
**context** [3] - 17:16, 47:23, 48:8
**contract** [1] - 17:1
**control** [37] - 8:21,

8:22, 18:2, 24:6, 29:10, 29:17, 29:20, 30:1, 30:4, 31:1, 31:3, 31:19, 31:23, 32:15, 35:13, 35:18, 35:24, 39:13, 39:20, 42:23, 43:18, 43:21, 43:22, 43:23, 43:25, 44:14, 44:19, 48:5, 48:17, 49:4, 49:20, 50:17, 51:7, 51:10, 59:25, 62:18, 62:19
**conversation** [3] - 19:18, 47:15, 59:15
**conversations** [4] - 33:20, 46:15, 46:18
**core** [1] - 25:1
**correct** [14] - 10:22, 15:21, 16:7, 21:1, 28:18, 29:2, 29:22, 32:1, 32:3, 32:25, 34:10, 55:11, 63:11, 64:4
**correctly** [2] - 7:16, 38:6
**counsel** [1] - 47:1
**country** [1] - 46:20
**couple** [1] - 22:4
**course** [8] - 6:23, 21:2, 21:5, 21:8, 21:11, 21:20, 21:25, 47:10
**Court** [49] - 4:10, 4:14, 5:15, 6:4, 6:14, 7:5, 7:15, 7:25, 9:4, 9:15, 9:18, 9:21, 10:8, 10:16, 11:2, 11:20, 12:20, 13:5, 13:6, 13:13, 13:24, 16:16, 16:23, 17:3, 17:11, 23:8, 24:8, 25:11, 29:9, 29:12, 36:17, 36:20, 37:15, 37:18, 38:3, 39:7, 40:10, 40:22, 41:5, 41:21, 41:25, 46:9, 50:12, 50:13, 50:15, 57:25, 62:7, 62:8, 63:4
**court** [2] - 43:5, 43:6
**COURT** [136] - 4:15, 4:21, 5:6, 5:10, 5:13, 6:9, 7:8, 8:2, 9:4, 9:25, 10:19, 11:9, 12:1, 12:23, 14:4, 15:3, 15:18, 16:9, 16:23, 17:8, 18:7, 18:19, 19:4, 19:12, 19:19, 20:4, 20:15, 20:22, 21:13, 21:23, 23:13, 24:10, 25:9,

25:19, 26:4, 26:10, 26:25, 27:8, 27:13, 27:17, 27:21, 27:24, 28:4, 28:17, 28:22, 28:25, 29:3, 29:7, 29:19, 29:23, 30:3, 30:7, 30:12, 30:14, 30:22, 31:13, 31:24, 32:2, 32:4, 32:23, 33:3, 33:8, 33:14, 33:25, 34:8, 34:25, 35:25, 36:11, 37:3, 37:21, 38:1, 38:8, 38:15, 39:18, 40:8, 40:10, 41:9, 41:21, 42:2, 42:14, 42:17, 43:10, 43:18, 43:25, 44:6, 44:9, 45:4, 45:9, 45:13, 45:21, 46:11, 47:3, 48:10, 48:15, 49:8, 49:13, 49:20, 50:14, 50:21, 51:9, 52:1, 52:15, 53:5, 53:10, 53:17, 54:1, 54:10, 55:1, 55:12, 56:1, 56:8, 56:17, 56:19, 57:16, 58:2, 58:5, 58:10, 58:18, 58:21, 59:4, 59:22, 60:9, 60:12, 60:14, 60:17, 60:22, 61:2, 61:12, 61:16, 61:22, 61:24, 63:5, 63:8, 63:12, 63:17, 64:1
**Court's** [4] - 10:6, 22:15, 37:6, 45:4
**courts** [2] - 17:15, 38:11
**Courts** [2] - 23:14, 58:1
**cover** [1] - 28:1
**covered** [4] - 13:2, 27:24, 28:2, 61:21
**create** [1] - 25:6
**created** [11] - 8:8, 20:3, 20:7, 20:12, 20:20, 40:9, 40:25, 41:11, 49:25, 54:12
**creates** [1] - 12:5
**creation** [5] - 32:9, 40:5, 40:6, 40:23, 54:14
**CREW** [7] - 37:4, 38:2, 38:6, 38:15, 45:5, 57:19
**criteria** [1] - 33:17
**Cuba** [1] - 9:1
**current** [1] - 58:6
**custody** [30] - 8:14,

8:22, 24:6, 29:10, 29:16, 30:1, 30:3, 31:1, 31:19, 31:23, 32:14, 35:13, 35:18, 35:24, 39:13, 42:23, 43:18, 43:21, 44:19, 48:5, 48:17, 49:3, 49:20, 50:17, 51:7, 51:10, 56:5, 59:25, 62:18, 62:19

**D**

**D.C** [12] - 5:22, 10:14, 10:23, 11:5, 11:15, 11:24, 15:2, 15:7, 22:16, 23:8, 62:20, 62:24
**daily** [1] - 54:21
**danger** [1] - 15:16
**DATE** [1] - 64:9
**day-to-day** [1] - 38:12
**de** [1] - 42:3
**dead** [3] - 27:9, 27:12, 27:21
**deal** [2] - 9:14, 40:23
**dealing** [2] - 12:25, 15:18
**decide** [5] - 7:16, 14:14, 26:5, 31:15, 54:4
**decided** [1] - 27:5
**decision** [64] - 4:13, 6:13, 6:15, 7:7, 7:10, 7:11, 7:15, 7:22, 8:3, 8:16, 8:23, 9:4, 9:10, 9:17, 10:3, 10:6, 11:4, 11:13, 11:17, 11:23, 12:3, 12:5, 14:1, 14:19, 16:20, 16:21, 17:9, 17:12, 17:13, 17:23, 22:15, 22:16, 23:21, 23:22, 23:25, 25:8, 25:12, 25:15, 25:17, 27:12, 27:14, 27:16, 31:9, 37:20, 37:21, 39:25, 40:10, 40:11, 41:9, 41:15, 41:20, 41:21, 45:11, 45:16, 45:24, 45:25, 47:17, 53:13, 53:15, 58:12, 59:2, 59:7
**decision-making** [1] - 25:8
**decisions** [8] - 5:22, 6:17, 7:5, 10:23, 16:14, 24:9, 40:5, 40:7
**declared** [1] - 61:7

**declines** [1] - 11:20
**defect** [2] - 4:5, 5:20
**defendant** [1] - 48:10
**defer** [1] - 42:2
**deference** [5] - 22:7, 46:6, 46:7, 59:5, 59:10
**defined** [1] - 62:5
**defining** [4] - 12:6, 12:18, 12:21, 17:17
**definition** [12] - 20:22, 30:16, 31:10, 47:8, 51:15, 51:18, 51:23, 55:20, 55:24, 56:10, 62:6
**delegated** [2] - 16:14, 24:1
**demand** [1] - 30:8
**Department** [2] - 8:25, 37:7
**deposited** [1] - 34:11
**designated** [4] - 23:19, 44:23, 51:10, 62:12
**designates** [1] - 30:5
**designating** [1] - 13:9
**determination** [40] - 6:22, 6:24, 11:22, 33:7, 35:23, 36:15, 37:9, 37:11, 37:17, 37:19, 37:24, 39:5, 41:6, 41:13, 41:14, 41:15, 41:25, 42:4, 45:15, 45:19, 48:6, 49:23, 50:2, 50:4, 50:5, 50:10, 51:24, 52:13, 52:15, 52:19, 52:21, 52:22, 52:23, 53:1, 53:3, 53:6, 58:15, 60:6, 60:25
**determinative** [1] - 50:3
**determine** [7] - 4:15, 12:19, 12:20, 18:4, 29:5, 36:18, 46:17
**determined** [7] - 10:17, 17:3, 47:25, 48:4, 49:2, 51:4, 51:20
**determining** [1] - 10:16
**diaries** [4] - 20:1, 20:23, 22:9, 59:12
**diary** [9] - 18:13, 18:24, 19:17, 20:24, 22:12, 22:14, 45:1, 46:22
**different** [13] - 14:16, 19:16, 20:6, 20:7, 37:8, 37:18, 38:10,

40:24, 46:25, 53:1, 57:21, 61:9, 62:20
**differentiation** [1] - 8:11
**difficult** [1] - 58:17
**dignitaries** [2] - 33:20, 46:15
**dimensions** [1] - 24:20
**disagrees** [1] - 18:18
**discharge** [1] - 48:13
**discovery** [2] - 36:24, 37:2
**discretion** [16] - 10:15, 10:20, 11:1, 11:4, 11:8, 16:5, 23:16, 24:1, 26:18, 42:24, 48:20, 52:6, 52:17, 55:3, 55:5
**discretionary** [3] - 9:22, 9:23, 13:20
**discuss** [3] - 7:2, 59:11, 60:23
**discusses** [1] - 58:7
**discussing** [2] - 24:23, 25:5
**discussions** [1] - 46:21
**dismiss** [3] - 6:4, 26:18, 36:22
**dismissed** [1] - 4:7
**disposal** [3] - 40:5, 40:6, 40:23
**dispose** [1] - 55:9
**disposing** [1] - 39:22
**dispute** [1] - 44:25
**distinguish** [2] - 16:9, 38:2
**District** [1] - 25:10
**docket** [1] - 20:11
**documentary** [1] - 32:5
**documents** [2] - 15:16, 15:17
**done** [8] - 15:12, 25:10, 25:20, 25:21, 42:7, 42:8, 42:9
**door** [3] - 29:13, 35:8, 50:6, 51:3, 60:2, 60:3, 60:19, 61:6
**down** [2] - 19:17, 29:12
**drafting** [2] - 22:20, 23:5
**duplication** [1] - 20:5
**during** [14] - 20:14, 32:10, 38:7, 39:20, 40:3, 40:18, 41:1, 54:6, 54:7, 56:12, 57:1, 57:18, 57:19
**duty** [5] - 62:7, 62:11, 62:17, 62:25, 63:2

### E

**early** [1] - 27:25
**easier** [1] - 56:25
**easily** [1] - 55:19
**easy** [1] - 57:7
**effect** [1] - 41:8
**either** [1] - 19:21
**elected** [2] - 61:3, 61:4
**end** [9] - 36:3, 38:23, 46:23, 47:20, 57:4, 59:14, 62:15
**ended** [1] - 41:3
**ends** [3] - 16:12, 30:25, 50:2
**enforce** [9] - 4:13, 9:22, 11:17, 11:20, 11:23, 17:11, 18:5, 51:15, 51:16
**enforceable** [1] - 62:7
**enforced** [1] - 51:19
**enforcement** [36] - 7:2, 8:19, 9:6, 9:13, 9:17, 9:23, 10:4, 10:7, 10:9, 10:11, 11:3, 11:12, 13:21, 15:22, 16:4, 17:24, 23:25, 25:14, 25:15, 27:4, 34:5, 34:12, 37:22, 42:25, 43:13, 43:15, 44:11, 48:24, 49:7, 50:8, 50:11, 52:5, 52:16, 52:20, 52:25
**entire** [2] - 24:15, 57:16
**entitled** [3] - 22:6, 46:1, 64:5
**equivalent** [4] - 18:24, 19:21, 20:2, 20:24
**escorted** [1] - 59:19
**essentially** [4] - 16:14, 40:11, 42:17, 52:16
**establish** [2] - 46:12, 59:9
**evaluate** [1] - 24:8
**evaluation** [1] - 24:3
**event** [1] - 15:23
**eventual** [1] - 27:19
**evidence** [2] - 28:13, 41:6
**exact** [1] - 20:5
**exactly** [7] - 7:13, 8:23, 11:1, 14:12, 15:12, 31:13, 42:23
**examination** [1] - 7:23

**examine** [1] - 9:15
**example** [2] - 32:21, 54:21
**except** [1] - 33:11
**excluding** [1] - 40:13
**exclusive** [1] - 56:20
**exclusively** [1] - 22:14
**executive** [1] - 32:6
**exemption** [1] - 23:9
**exercise** [6] - 8:17, 10:20, 26:13, 48:20, 48:25, 52:6
**exercises** [2] - 33:3, 51:12
**Exhibit** [1] - 4:24
**exist** [5] - 40:25, 49:23, 57:11, 57:12, 57:15
**existing** [1] - 62:14
**expedition** [2] - 57:11, 57:15
**experts** [1] - 14:20
**explained** [1] - 25:11
**explanation** [1] - 26:1
**expounding** [1] - 19:14
**expressed** [1] - 23:9
**extent** [3] - 29:9, 32:7, 32:17
**extremely** [1] - 40:3

### F

**f)** [1] - 32:2
**FACA** [3] - 37:8, 47:22, 47:23
**face** [1] - 4:15
**faced** [1] - 39:17
**fact** [9] - 13:12, 14:24, 18:7, 19:23, 22:1, 27:1, 41:13, 43:12, 56:24
**facts** [7] - 19:6, 19:9, 20:18, 26:6, 59:1, 59:2, 59:12
**factual** [2] - 6:6, 20:17
**FOIA-based** [1] - 12:12
**fail** [2] - 9:17, 47:25
**fails** [3] - 6:4, 9:24, 12:13
**failure** [7] - 9:22, 9:23, 10:7, 11:3, 37:22, 50:11, 52:20
**faith** [1] - 16:5
**fall** [7] - 8:14, 47:8, 47:18, 47:24, 48:7, 51:19, 61:13
**falls** [2] - 56:15, 60:7
**far** [2] - 61:3, 61:4
**FAR** [4] - 12:12, 12:15,

12:17, 13:2
**Federal** [6] - 12:7, 17:20, 34:22, 35:2, 35:3, 43:14
**federal** [1] - 12:18
**felt** [1] - 15:15
**figure** [2] - 37:1, 41:5, 57:6
**file** [2] - 43:5
**filed** [5] - 24:19, 26:24, 30:24, 32:9, 32:24
**filtered** [1] - 19:19
**final** [18] - 5:25, 6:3, 6:23, 6:24, 25:2, 25:3, 25:9, 25:14, 26:20, 27:13, 27:16, 28:11, 28:15, 31:9, 45:22, 45:24, 46:4, 50:2
**findings** [1] - 20:17
**first** [16] - 4:8, 5:1, 8:4, 11:14, 13:17, 25:23, 26:22, 28:7, 28:12, 30:9, 34:4, 41:24, 57:25, 62:9, 63:9
**fishing** [2] - 57:10, 57:15
**fits** [1] - 33:16
**five** [2] - 46:8, 46:9
**five-page** [2] - 46:8, 46:9
**focus** [5] - 21:9, 45:12, 45:14, 45:17, 55:23
**focused** [2] - 40:3, 55:24
**focusing** [4] - 20:4, 20:5, 25:3, 52:13
**FOIA** [25] - 6:2, 12:12, 13:2, 24:16, 24:17, 25:4, 25:22, 25:24, 26:8, 28:8, 35:16, 37:13, 37:14, 37:15, 41:19, 44:24, 44:25, 45:16, 48:8, 60:7, 60:8, 60:9, 61:9, 61:11, 61:13
**FOIA-based** [1] - 12:12
**following** [1] - 16:8
**force** [1] - 54:1
**foregoing** [1] - 64:4
**foreign** [6] - 18:11, 21:4, 33:20, 46:15, 46:20, 47:16
**former** [8] - 14:10, 14:18, 16:15, 17:1, 17:2, 34:18, 60:16
**forth** [1] - 52:5
**forward** [1] - 36:25

**Freedom** [1] - 12:8
**freestanding** [1] - 17:11
**Friends** [1] - 62:21
**front** [1] - 7:5
**frustrating** [1] - 13:11
**functional** [4] - 18:22, 18:24, 20:1, 20:24
**fundamental** [2] - 4:5, 5:20
**fundamentally** [1] - 25:24
**fundamentals** [1] - 6:9
**future** [1] - 22:10

### G

**general** [11] - 13:7, 13:18, 14:9, 14:14, 14:20, 26:14, 34:7, 34:21, 43:5, 48:21, 52:7
**general's** [1] - 14:2
**genesis** [1] - 24:17
**George** [1] - 36:12
**given** [6] - 5:2, 13:12, 15:3, 30:22, 38:23, 59:5
**government** [11] - 19:2, 20:25, 21:2, 21:5, 21:8, 21:12, 21:20, 44:17, 44:21, 47:10, 51:22
**granted** [1] - 6:5
**great** [1] - 47:15
**grounds** [1] - 23:6
**guess** [1] - 6:11
**guidance** [1] - 28:13
**guidelines** [7] - 12:6, 12:11, 12:18, 12:19, 12:21, 17:14, 17:16
**guys** [1] - 28:6

### H

**hand** [2] - 21:25, 55:6
**hands** [1] - 14:2
**hanging** [1] - 57:21
**happy** [1] - 40:15
**harmed** [1] - 50:1
**hat** [1] - 57:21
**head** [2] - 41:10, 60:1
**hearing** [1] - 5:3
**heck** [1] - 10:5
**Heckler** [5] - 10:5, 10:23, 11:2, 11:25, 18:3
**held** [2] - 11:2, 42:19

**help** [2] - 31:7, 61:13
**helped** [1] - 59:17
**helpful** [1] - 24:12
**hiding** [1] - 29:1
**historian** [1] - 19:15
**historical** [2] - 15:25, 22:18
**Historical** [3] - 16:10, 36:12, 57:20
**historically** [1] - 22:9
**history** [3] - 22:25, 23:10, 42:18
**hoc** [1] - 19:22
**hold** [2] - 10:23, 38:19
**holding** [3] - 12:23, 37:3, 45:5
**holds** [2] - 54:19, 60:16
**Honor** [16] - 5:5, 6:1, 10:22, 13:17, 18:17, 27:23, 28:2, 28:5, 29:22, 32:16, 33:12, 43:16, 62:10, 63:7, 63:16
**honor** [2] - 14:25, 16:6
**Honor's** [1] - 14:22
**hook** [2] - 38:19, 38:22
**hopefully** [1] - 15:21
**House** [4] - 31:7, 32:12, 42:20, 59:21

**I**

**idea** [4] - 35:12, 36:24, 44:12, 47:2
**identical** [1] - 11:6
**ignore** [1] - 57:17
**II** [12] - 12:1, 12:5, 12:13, 12:14, 12:23, 12:25, 13:4, 17:3, 17:10, 17:14, 40:10, 57:19
**immediately** [1] - 30:2
**implement** [1] - 59:6
**important** [6] - 23:11, 34:16, 36:25, 51:23, 51:24, 58:18
**impose** [1] - 62:17
**improperly** [1] - 8:21
**include** [3] - 31:10, 52:1, 52:2
**included** [1] - 19:23
**includes** [1] - 20:23
**incorporated** [1] - 5:11
**independent** [1] - 24:3
**indicate** [1] - 43:14
**indication** [1] - 11:10

**indispensable** [1] - 30:14
**individual** [1] - 10:12
**individuals** [1] - 32:6
**information** [10] - 4:21, 15:10, 22:10, 22:12, 28:20, 33:18, 36:17, 36:19, 41:10, 43:24
**Information** [1] - 12:8
**informed** [1] - 57:12
**inherently** [1] - 23:25
**initial** [1] - 15:2
**initiate** [3] - 9:13, 10:11, 11:3
**injury** [12] - 4:8, 4:9, 4:12, 5:17, 9:12, 47:19, 48:9, 49:1, 60:3, 60:5, 60:25
**input** [1] - 42:5
**inquiry** [3] - 9:16, 9:20
**inspections** [2] - 62:23, 62:25
**instance** [6] - 15:25, 16:7, 35:20, 37:17, 37:20, 49:10
**instances** [4] - 21:14, 46:14, 46:19, 61:10
**instead** [1] - 23:18
**intended** [3] - 14:13, 22:23, 24:7
**intent** [1] - 42:12
**interest** [5] - 10:11, 10:13, 10:18, 22:18, 35:1
**interesting** [4] - 18:19, 27:18, 63:19, 63:21
**interfering** [1] - 38:12
**interrupted** [1] - 27:25
**intimately** [1] - 59:18
**invoke** [12] - 7:2, 9:5, 9:17, 10:3, 11:12, 13:20, 25:13, 25:15, 35:1, 37:22, 52:16, 52:25
**invoking** [1] - 27:4
**involved** [3] - 17:14, 46:7, 59:18
**issue** [22] - 6:10, 6:12, 6:24, 6:25, 7:5, 7:9, 7:23, 12:8, 12:16, 12:19, 14:23, 16:20, 18:17, 18:20, 27:15, 30:11, 30:13, 36:23, 36:24, 38:14, 50:23, 58:7
**issues** [10] - 7:13, 24:22, 25:5, 26:21, 26:23, 28:3, 37:2, 38:11, 44:1, 57:24

**itself** [2] - 7:10, 43:13

**J**

**job** [2] - 47:6, 47:7
**jogger** [1] - 20:16
**joggers** [2] - 20:14, 20:20
**jointly** [1] - 8:25
**journal** [1] - 20:24
**journals** [1] - 20:23
**Judge** [1] - 58:21
**judgment** [3] - 11:17, 15:6, 17:2
**judicial** [8] - 5:21, 7:8, 7:19, 7:24, 17:21, 39:25, 52:12
**Judicial** [8] - 37:7, 47:22, 48:9, 48:10, 49:5, 50:1, 51:3, 57:22
**Justice** [1] - 8:25

**K**

**Kaneshiro** [1] - 64:3
**KANESHIRO** [1] - 64:9
**Kaneshiro-Miller** [1] - 64:3
**KANESHIRO-MILLER** [1] - 64:9
**keep** [4] - 14:25, 48:17, 48:18, 49:18
**keeps** [1] - 34:5
**Kennedy** [2] - 9:1, 9:2
**Kennedy's** [1] - 16:1
**kept** [3] - 18:9, 21:15, 33:21
**kick** [1] - 60:8
**kind** [3] - 6:9, 13:14, 48:23
**knock** [3] - 35:8, 60:2, 60:18
**knows** [1] - 30:10

**L**

**lack** [4] - 4:9, 5:18, 5:25, 42:5
**language** [5] - 10:12, 11:7, 12:24, 39:24, 62:16
**last** [1] - 42:11
**law** [7] - 10:16, 11:1, 11:5, 11:24, 15:10, 16:2, 58:7
**laws** [1] - 11:16
**lawsuit** [11] - 8:24,

8:25, 26:24, 27:6, 27:8, 27:19, 37:15, 38:20, 47:20, 53:21
**leader** [2] - 21:4, 47:16
**leaders** [1] - 18:11
**leads** [1] - 51:25
**least** [2] - 18:14, 47:4
**leave** [1] - 14:19
**leaves** [4] - 42:21, 50:6, 50:7, 52:9
**leaving** [2] - 14:13, 32:12
**led** [2] - 23:1, 24:18
**left** [1] - 14:1
**legal** [2] - 16:13, 25:6
**legality** [1] - 16:16
**legislative** [1] - 23:10
**less** [2] - 38:22, 39:22
**letter** [42] - 4:23, 5:1, 5:9, 7:7, 8:6, 11:10, 19:7, 19:8, 19:10, 20:19, 21:7, 21:13, 21:17, 21:18, 23:18, 24:11, 24:24, 25:2, 25:12, 25:14, 25:19, 25:23, 26:12, 27:3, 27:9, 27:15, 28:7, 28:10, 28:12, 29:14, 36:9, 41:18, 44:10, 45:22, 46:8, 46:9, 47:11, 53:14, 53:19, 60:1
**letters** [12] - 6:1, 6:7, 24:16, 24:18, 33:6, 39:4, 52:14, 57:13, 57:14, 59:3, 59:9, 59:13
**Library** [2] - 9:3, 32:22
**lies** [1] - 13:18
**light** [1] - 53:18
**likely** [2] - 20:2, 61:15
**limited** [3] - 36:24, 37:2, 55:7
**line** [2] - 5:22, 10:23
**list** [1] - 55:21
**listen** [1] - 47:15
**listing** [1] - 33:19
**literally** [3] - 18:9, 19:12, 55:8
**litigant** [4] - 4:3, 14:17, 16:17, 22:23
**litigants** [3] - 13:25, 17:21, 18:2
**litigated** [2] - 23:4, 26:22
**litigation** [2] - 15:3, 23:12
**look** [5] - 16:24, 17:4, 25:10, 34:4, 44:18

**looked** [1] - 41:18
**looks** [2] - 10:9, 46:9
**losing** [1] - 15:16

**M**

**main** [1] - 23:7
**maker** [2] - 16:20, 16:22
**maliciously** [1] - 13:14
**manage** [2] - 56:6, 57:2
**managed** [1] - 41:1
**management** [5] - 40:5, 40:6, 40:23, 56:4, 56:25
**mandamus** [1] - 38:3
**mandatory** [3] - 62:3, 62:25, 63:2
**map** [1] - 9:1
**Materials** [1] - 15:13
**materials** [4] - 7:17, 7:19, 32:5, 34:18
**matter** [3] - 42:18, 59:8, 64:5
**McIlveney** [2] - 8:23, 8:24
**mean** [34] - 8:6, 12:23, 17:15, 17:16, 29:11, 29:13, 34:17, 34:23, 36:10, 37:10, 43:12, 43:16, 43:19, 44:12, 46:6, 47:23, 48:19, 50:3, 50:22, 51:21, 53:21, 54:6, 56:5, 56:15, 56:23, 57:9, 58:14, 58:16, 58:23, 59:11, 60:24, 60:25
**means** [3] - 54:24, 56:25, 63:21
**measuring** [1] - 46:4
**mechanism** [20] - 7:2, 8:19, 9:6, 9:18, 10:4, 10:10, 11:12, 13:21, 17:24, 25:14, 25:16, 27:4, 43:1, 43:15, 48:24, 49:7, 52:5, 52:16, 52:25
**mechanisms** [5] - 15:22, 34:5, 37:22, 44:11, 50:8
**meet** [1] - 62:6
**meetings** [1] - 59:17
**memory** [4] - 19:20, 20:14, 20:16, 20:20
**mention** [1] - 42:5
**mere** [1] - 19:23
**merited** [1] - 59:2
**merits** [1] - 9:10

middle [1] - 43:3
might [5] - 17:15,
  20:10, 23:22, 24:12,
  27:2
Miller [1] - 64:3
MILLER [1] - 64:9
mind [3] - 20:17,
  42:13, 58:8
mine [1] - 23:16
minute [1] - 61:19
misclassified [6] -
  13:20, 38:25, 39:3,
  49:14, 49:15, 52:4
misclassifying [1] -
  15:10
missing [3] - 18:1,
  30:14, 36:11
moment [4] - 4:16,
  20:7, 39:4, 48:23
moreover [1] - 4:13
morning [2] - 28:5,
  63:19
most [2] - 25:23,
  61:15
motion [1] - 36:22
MR [134] - 4:18, 5:5,
  5:7, 5:11, 5:14, 6:16,
  7:13, 8:18, 9:8, 10:5,
  10:22, 11:15, 12:4,
  13:16, 14:11, 15:6,
  15:21, 16:11, 17:7,
  17:10, 18:16, 18:21,
  19:6, 19:16, 19:21,
  20:9, 20:18, 21:6,
  21:18, 22:4, 23:24,
  24:14, 25:18, 25:21,
  26:6, 26:19, 27:6,
  27:11, 27:15, 27:19,
  27:23, 28:2, 28:5,
  28:19, 28:24, 29:2,
  29:5, 29:9, 29:22,
  29:25, 30:6, 30:9,
  30:13, 30:16, 31:5,
  31:17, 32:1, 32:3,
  32:16, 32:25, 33:5,
  33:12, 33:15, 34:4,
  34:10, 35:11, 36:5,
  36:13, 37:6, 37:24,
  38:6, 38:9, 39:2,
  40:2, 40:9, 40:18,
  41:12, 41:24, 42:8,
  42:16, 42:22, 43:16,
  43:20, 44:4, 44:7,
  44:10, 45:7, 45:11,
  45:14, 46:7, 46:12,
  47:21, 48:14, 49:2,
  49:12, 49:18, 49:22,
  50:15, 50:25, 51:18,
  52:9, 52:19, 53:7,
  53:16, 53:25, 54:6,

54:15, 55:11, 55:15,
  56:4, 56:13, 56:18,
  56:22, 57:24, 58:4,
  58:6, 58:14, 58:19,
  58:23, 59:7, 60:5,
  60:10, 60:13, 60:15,
  60:20, 60:23, 61:4,
  61:15, 61:20, 61:23,
  62:9, 63:7, 63:11,
  63:15
mushy [1] - 50:21
musing [1] - 18:8
must [2] - 4:6, 6:4

N

namely [2] - 5:23, 7:20
NARA [17] - 4:10,
  4:11, 4:19, 5:14,
  5:15, 6:25, 7:1, 7:6,
  18:23, 19:8, 20:19,
  21:7, 22:6, 62:22,
  62:24, 62:25, 63:4
NARA's [2] - 4:13, 6:7
narrow [2] - 12:4, 13:3
narrower [1] - 12:24
nature [2] - 8:7, 62:3
nearly [1] - 11:6
necessarily [5] - 7:16,
  9:19, 34:11, 41:1,
  47:7
necessary [2] - 9:12,
  36:14
need [4] - 36:23,
  56:13, 62:1, 63:22
needs [3] - 9:15,
  56:25, 57:8
never [4] - 24:24, 39:9,
  41:16, 41:17
New [1] - 44:2
new [1] - 15:17
next [5] - 36:23, 37:1,
  46:17, 50:14, 50:18
nice [2] - 44:10, 60:1
Nixon [5] - 15:13,
  22:16, 23:4, 23:7,
  23:12
none [1] - 57:24
note [1] - 17:13
notes [7] - 18:25,
  19:22, 20:1, 20:2,
  20:8, 20:23, 54:22
nothing [10] - 13:13,
  26:8, 29:14, 38:18,
  42:10, 44:8, 50:25,
  51:21, 52:23, 55:10
notion [1] - 42:6
novo [1] - 42:3
number [2] - 12:10,

12:11

O

objective [1] - 53:8
obligation [10] -
  35:21, 39:14, 48:1,
  49:3, 49:17, 49:23,
  49:24, 49:25, 55:17,
  55:18
obligations [4] -
  14:25, 41:8, 48:11,
  58:9
Observatory [1] - 60:1
obtain [1] - 35:21
occasion [1] - 24:25
occurred [4] - 11:18,
  15:4, 46:24, 46:25
occurring [1] - 46:25
OF [1] - 64:1
office [8] - 31:25,
  32:1, 32:6, 38:10,
  38:13, 39:21, 40:21,
  60:16
Office [3] - 59:16,
  59:17, 59:20
OFFICIAL [1] - 64:1
official [8] - 18:15,
  19:1, 20:6, 21:25,
  22:2, 22:10, 22:14,
  22:17
once [20] - 7:10, 14:5,
  23:20, 28:15, 29:6,
  33:15, 34:13, 34:19,
  41:7, 42:1, 42:7,
  42:8, 48:4, 49:2,
  49:4, 49:23, 49:25,
  50:5, 51:6, 51:18
one [35] - 4:23, 6:17,
  10:9, 12:2, 12:10,
  13:17, 16:17, 19:19,
  22:21, 22:25, 23:7,
  30:10, 35:4, 36:10,
  39:8, 44:6, 44:7,
  44:11, 49:6, 49:9,
  50:8, 51:13, 51:17,
  52:5, 54:19, 54:20,
  54:22, 57:5, 59:14,
  61:12, 62:1, 62:14
ones [2] - 19:12, 30:24
open [3] - 13:8, 17:4,
  52:9
opens [3] - 50:6, 51:2,
  61:6
operations [1] - 59:17
opinion [3] - 8:9, 45:5,
  45:23
opportunity [5] -
  26:20, 26:23, 52:10,

54:4, 61:2
opposed [4] - 19:14,
  40:13, 51:16, 53:11
option [1] - 44:7
options [2] - 44:4,
  50:1
order [13] - 4:3, 5:15,
  9:13, 12:19, 29:3,
  29:7, 35:6, 48:25,
  49:10, 50:23, 60:17,
  60:20, 63:4
ordered [1] - 50:16
orders [1] - 58:10
original [1] - 58:10
otherwise [2] - 13:2,
  16:22
outline [1] - 61:17
outside [6] - 8:21,
  19:24, 22:18, 37:13,
  37:14, 48:7
Oval [3] - 59:15,
  59:17, 59:20
overall [1] - 53:8
overruled [1] - 4:14
own [7] - 7:7, 7:11,
  7:17, 7:21, 16:4,
  24:3
ownership [1] - 44:14

P

page [5] - 15:1, 46:8,
  46:9, 57:5
paper [2] - 42:20,
  54:19
papers [4] - 7:21,
  20:1, 42:10, 57:5
parse [1] - 21:23
part [9] - 11:16, 11:22,
  17:8, 17:10, 17:12,
  18:14, 23:25, 42:24,
  53:10
particular [8] - 5:23,
  5:24, 6:6, 11:5,
  17:19, 17:22, 22:24,
  48:12
particularly [1] - 40:15
parts [1] - 33:12
party [4] - 30:15,
  36:11, 36:14, 40:15
pass [1] - 15:10
passage [1] - 23:1
passed [3] - 15:17,
  16:2, 23:2
past [1] - 15:12
Patricia [1] - 64:3
PATRICIA [1] - 64:9
perception [1] - 19:20
perfect [1] - 56:12

perhaps [2] - 21:9,
  24:23
permits [1] - 17:21
permitted [1] - 8:17
person [1] - 56:20
personal [61] - 5:24,
  6:19, 7:14, 7:21,
  7:24, 8:10, 8:12,
  9:10, 18:13, 18:25,
  19:2, 19:10, 19:22,
  19:25, 20:1, 20:2,
  20:22, 20:23, 22:19,
  22:21, 22:25, 23:3,
  23:6, 23:9, 23:19,
  23:20, 26:2, 26:7,
  27:2, 30:24, 31:4,
  32:8, 32:12, 32:13,
  32:24, 33:10, 34:14,
  36:7, 41:22, 43:24,
  47:8, 47:12, 51:14,
  53:12, 54:5, 54:11,
  54:14, 54:23, 54:24,
  54:25, 56:9, 56:11,
  56:14, 56:18, 56:20,
  56:24, 57:5, 59:12,
  62:15
perspective [1] -
  55:20
Peterson [2] - 16:19,
  17:13
phone [7] - 18:11,
  19:13, 21:4, 29:14,
  43:7, 47:14, 59:25
phrase [1] - 48:18
physically [1] - 43:6
pick [2] - 21:4, 51:6
piece [1] - 42:20
place [4] - 11:14,
  51:19, 56:3, 56:11
plaintiff [16] - 5:3,
  6:17, 12:9, 12:10,
  12:11, 14:17, 16:22,
  17:18, 18:23, 19:7,
  20:19, 22:8, 24:20,
  24:25, 25:3, 31:5
plaintiff's [9] - 4:6,
  4:8, 4:9, 4:19, 5:17,
  7:7, 7:17, 9:12, 21:6
play [1] - 45:16
pleadings [1] - 4:16
point [22] - 4:16, 5:1,
  7:12, 15:19, 22:8,
  24:11, 25:12, 26:19,
  37:1, 38:16, 38:22,
  39:8, 40:19, 40:21,
  42:1, 42:6, 43:2,
  43:4, 46:23, 50:22
pointed [2] - 21:14,
  48:21
points [3] - 12:9, 22:5,

27:25
**policies** [1] - 46:16
**policy** [1] - 46:18
**portion** [2] - 8:16, 47:18
**portions** [2] - 21:16, 47:4
**position** [5] - 6:12, 18:4, 18:16, 27:13, 33:22
**possess** [3] - 4:11, 4:19, 5:15
**possession** [3] - 44:14, 55:18, 60:10
**possibility** [8] - 13:22, 16:6, 50:6, 50:7, 53:2, 60:23, 61:5
**possible** [4] - 32:7, 33:24, 37:9, 54:16
**possibly** [1] - 30:6
**post** [2] - 19:22, 20:21
**post-presidency** [1] - 20:21
**posted** [1] - 20:10
**potential** [2] - 4:4, 23:6
**power** [5] - 48:12, 48:16, 48:24, 49:16, 54:2
**powers** [2] - 38:11, 50:19
**PRA** [19] - 4:13, 4:14, 5:20, 5:21, 5:24, 6:2, 12:16, 16:6, 16:8, 17:11, 24:17, 25:5, 25:6, 25:8, 45:6, 52:12, 53:7, 53:10, 58:8
**practical** [1] - 32:17
**pre** [1] - 62:14
**pre-existing** [1] - 62:14
**precluded** [3] - 5:24, 7:20, 17:22
**precludes** [1] - 5:21
**precluding** [1] - 7:24
**preclusion** [1] - 22:22
**preconditions** [1] - 12:13
**predecessor** [1] - 15:14
**predicate** [1] - 25:13
**premised** [1] - 28:17
**prepared** [4] - 18:25, 20:16, 20:25, 42:3
**prerogative** [1] - 63:1
**present** [5] - 12:5, 16:20, 25:4, 27:6, 27:20
**presented** [5] - 6:25,

23:11, 25:23, 26:9, 59:2
**preservation** [1] - 31:19
**Preservation** [1] - 15:14
**preserve** [1] - 16:2
**presidency** [23] - 8:13, 18:15, 19:14, 20:13, 20:14, 20:21, 30:25, 32:10, 32:11, 36:3, 36:4, 38:7, 38:16, 38:21, 38:23, 40:3, 40:4, 40:19, 41:1, 56:12, 57:18, 57:19, 57:20
**President** [35] - 6:18, 7:18, 9:1, 15:13, 16:1, 18:22, 19:2, 19:5, 20:12, 20:17, 20:20, 21:10, 21:21, 22:13, 23:4, 23:7, 29:12, 29:15, 30:10, 35:9, 36:7, 36:14, 36:16, 36:19, 38:9, 40:7, 40:20, 41:2, 41:17, 42:14, 44:7, 46:15, 51:1, 54:25, 61:2
**president** [69] - 4:22, 7:16, 8:1, 8:3, 8:13, 10:1, 13:7, 13:10, 13:13, 13:14, 13:19, 14:5, 14:10, 14:18, 14:22, 15:8, 15:9, 16:5, 16:7, 16:12, 16:15, 17:1, 17:2, 18:7, 19:17, 21:14, 22:11, 22:13, 23:1, 23:16, 23:19, 30:4, 30:17, 30:19, 30:22, 31:8, 31:11, 31:20, 32:5, 32:7, 32:19, 32:25, 33:2, 34:18, 36:4, 36:6, 38:4, 38:13, 38:17, 39:19, 42:5, 42:9, 46:20, 51:11, 51:12, 53:11, 53:13, 54:9, 54:15, 54:17, 55:6, 55:22, 57:2, 57:8, 60:16, 62:13
**president's** [12] - 7:1, 7:9, 7:20, 7:21, 16:12, 23:3, 31:24, 38:12, 41:10, 54:5, 54:8, 55:23
**Presidential** [21] - 4:1, 9:2, 13:2, 14:6, 15:13, 15:15, 23:1,

29:25, 34:17, 34:25, 35:12, 39:18, 40:12, 40:13, 40:16, 42:18, 43:12, 44:15, 45:15, 45:17, 59:6
**presidential** [111] - 4:5, 7:14, 7:23, 8:12, 8:13, 9:10, 12:3, 12:7, 12:21, 12:25, 17:17, 17:20, 19:11, 22:1, 22:9, 22:12, 22:24, 24:5, 26:3, 27:2, 28:9, 28:14, 28:16, 29:6, 30:4, 30:17, 30:20, 30:21, 30:23, 31:1, 31:10, 31:11, 31:12, 31:15, 31:20, 31:22, 32:8, 32:13, 32:19, 32:20, 32:24, 33:1, 33:10, 33:13, 33:15, 33:18, 33:23, 34:15, 34:20, 35:23, 36:8, 37:11, 37:12, 37:25, 39:6, 39:12, 39:16, 41:4, 41:7, 41:8, 41:19, 41:22, 44:14, 44:20, 45:2, 45:12, 45:20, 46:13, 46:14, 47:19, 47:25, 48:4, 48:7, 49:3, 49:24, 50:5, 50:16, 51:4, 51:5, 51:11, 51:14, 51:20, 51:24, 52:22, 52:24, 53:4, 53:8, 53:12, 54:14, 54:18, 55:8, 55:9, 55:18, 55:20, 55:21, 56:24, 56:11, 56:15, 56:24, 57:5, 57:9, 59:10, 59:16, 60:7, 61:8, 62:4, 62:5, 62:12
**presidents** [2] - 14:25, 34:16
**press** [2] - 42:19, 44:1
**pressing** [1] - 21:3
**presumably** [2] - 6:19, 14:24
**presumed** [1] - 16:5
**presumption** [1] - 23:15
**presumptively** [1] - 10:7
**pretty** [1] - 46:12
**prevent** [1] - 13:10
**prevention** [1] - 37:9
**prevents** [1] - 37:9
**primary** [1] - 13:17
**privacy** [3] - 13:12, 23:3, 23:6

**private** [15] - 4:3, 13:9, 13:14, 13:25, 14:17, 16:17, 18:2, 22:23, 39:23, 40:15, 45:5, 45:23, 52:1, 60:14, 60:15
**PRMPA** [1] - 15:14
**problem** [4] - 6:23, 36:6, 41:12, 57:4
**Procedure** [1] - 4:2
**Proceedings** [1] - 63:24
**proceedings** [2] - 60:25, 64:5
**process** [8] - 17:5, 25:8, 44:24, 45:3, 48:1, 56:2, 61:9
**processed** [1] - 51:5
**produced** [1] - 32:5
**properly** [2] - 10:17, 51:5
**property** [3] - 44:16, 44:21, 51:22
**protection** [1] - 22:21
**provide** [3] - 4:1, 24:21, 36:20
**provided** [6] - 19:6, 19:9, 20:18, 28:13, 34:13, 41:6
**provision** [4] - 34:6, 34:22, 35:16, 52:3
**public** [16] - 10:11, 10:13, 10:18, 13:8, 13:12, 20:9, 23:17, 33:24, 35:1, 35:15, 35:19, 39:15, 43:21, 44:22, 51:23, 53:9
**Public** [1] - 44:18
**publicly** [1] - 16:3
**purported** [1] - 8:15
**purporting** [1] - 8:5
**purports** [2] - 23:20, 53:14
**purpose** [1] - 8:7
**purposes** [3] - 5:2, 28:23, 47:12
**pursuant** [1] - 24:17
**pursue** [3] - 13:21, 14:1, 18:1
**put** [1] - 35:6
**puts** [3] - 54:19, 54:23, 63:12

## Q

**quality** [1] - 63:18
**quickly** [1] - 33:24
**quite** [1] - 23:17
**quote** [3] - 14:23,

62:17, 62:18

## R

**raise** [1] - 55:6
**raised** [2] - 6:13, 24:24
**rather** [2] - 19:10, 26:3
**rationale** [3] - 7:19, 7:24, 18:3
**rationally** [4] - 18:23, 19:8, 20:19, 21:7
**raw** [1] - 19:20
**reach** [1] - 18:17
**read** [10] - 11:10, 13:5, 17:10, 24:13, 35:3, 35:25, 36:1, 46:8, 46:11, 63:20
**reading** [6] - 17:3, 22:6, 22:7, 24:14, 36:1, 36:2
**Reagan's** [1] - 22:14
**real** [1] - 15:16
**really** [7] - 7:4, 16:11, 16:17, 18:14, 38:4, 41:10, 62:1
**realm** [3] - 18:12, 19:24, 22:18
**reason** [7] - 5:19, 5:25, 6:3, 11:16, 17:23, 24:22
**reasonable** [1] - 22:5
**reasons** [4] - 4:6, 12:13, 14:19, 22:25
**receipt** [2] - 32:9, 54:14
**receive** [1] - 34:20
**received** [7] - 28:10, 32:5, 34:15, 34:18, 39:8, 39:9, 53:19
**receiving** [1] - 53:18
**reclassify** [5] - 8:5, 16:18, 17:19, 18:1, 53:22
**reclassifying** [1] - 53:20
**recognizes** [2] - 13:13, 19:25
**recognizing** [1] - 23:14
**recollection** [1] - 19:22
**Record** [1] - 44:15
**record** [42] - 4:5, 8:9, 12:7, 12:18, 12:21, 15:1, 19:3, 20:9, 21:21, 22:1, 22:17, 22:19, 22:24, 29:15, 30:9, 30:20, 31:10,

31:11, 31:12, 31:15, 32:19, 32:20, 33:2, 33:15, 45:23, 47:7, 47:9, 49:22, 51:20, 51:24, 54:24, 54:25, 55:20, 55:21, 55:24, 56:16, 56:18, 57:10, 64:4

**recorded** [1] - 18:22
**recorder** [2] - 21:3, 21:24
**recording** [3] - 19:13, 19:14, 33:21
**recordings** [3] - 47:12, 59:15, 59:18
**Recordings** [1] - 15:13
**records** [192] - 5:24, 6:6, 6:19, 7:14, 8:12, 8:14, 8:20, 13:1, 13:21, 14:1, 14:7, 14:8, 14:16, 15:11, 16:1, 16:3, 16:19, 17:17, 17:19, 17:20, 18:1, 18:14, 19:10, 19:11, 19:25, 20:22, 21:10, 21:11, 21:19, 22:21, 23:10, 24:4, 24:5, 26:2, 26:3, 26:7, 26:14, 27:2, 27:3, 28:9, 28:14, 28:16, 29:6, 29:16, 30:1, 30:4, 30:10, 30:17, 30:18, 30:19, 30:20, 30:21, 30:23, 31:1, 31:8, 31:20, 31:21, 31:22, 31:23, 32:8, 33:1, 33:13, 33:17, 33:18, 33:22, 33:23, 34:10, 34:12, 34:14, 34:15, 34:20, 35:12, 35:14, 35:15, 35:20, 35:22, 35:23, 35:24, 36:4, 36:7, 36:8, 36:9, 36:21, 36:22, 37:11, 37:12, 37:25, 39:6, 39:12, 39:13, 39:14, 39:16, 39:20, 39:22, 39:25, 40:24, 40:25, 41:3, 41:4, 41:7, 41:8, 41:17, 41:19, 42:10, 43:7, 43:22, 43:23, 44:8, 44:14, 44:15, 44:20, 45:1, 45:2, 45:12, 45:20, 46:13, 46:14, 47:19, 47:24, 47:25, 48:2, 48:3, 48:4, 48:5, 48:7, 48:8, 48:17, 49:2,

49:3, 49:14, 49:15, 49:21, 49:24, 50:5, 50:7, 50:16, 50:18, 51:2, 51:4, 51:5, 51:11, 52:4, 52:21, 52:22, 52:25, 53:4, 53:8, 54:16, 54:17, 54:18, 54:23, 55:9, 55:18, 55:20, 56:5, 56:14, 57:2, 57:8, 57:11, 57:12, 59:9, 59:10, 59:16, 60:2, 60:6, 60:7, 61:6, 61:8, 61:10, 62:5, 62:12, 62:15, 62:23
**Records** [25] - 4:2, 12:7, 13:3, 14:6, 15:15, 17:20, 23:2, 29:25, 34:17, 34:22, 34:25, 35:2, 35:3, 35:12, 39:18, 40:12, 40:14, 40:17, 42:18, 43:12, 43:14, 44:18, 45:15, 45:17, 59:6
**recover** [1] - 9:1
**recovery** [3] - 13:21, 14:16, 18:1
**redress** [3] - 5:17, 9:12, 60:4
**redressability** [7] - 6:10, 9:11, 9:16, 9:21, 9:24, 50:3, 61:7
**redressable** [4] - 4:8, 47:19, 49:1, 60:5
**redressed** [2] - 4:12, 51:3, 60:24
**reference** [2] - 33:10, 36:16
**referenced** [2] - 5:9, 6:1
**refusal** [1] - 9:5
**regard** [1] - 34:21
**regardless** [2] - 8:1, 30:19
**related** [1] - 6:2
**relating** [2] - 16:1, 22:10
**relatively** [1] - 63:20
**release** [1] - 44:1
**relevant** [4] - 9:16, 16:20, 16:21, 21:21
**relied** [1] - 14:24
**relief** [2] - 4:1, 6:5
**relies** [1] - 37:10
**remedies** [2] - 14:7, 35:2
**remedy** [7] - 13:15, 13:17, 13:24, 14:4, 37:10, 43:13, 52:11

**repeat** [1] - 62:1
**repeating** [2] - 48:18, 49:18
**reply** [2] - 11:19, 63:5
**reported** [1] - 46:20
**REPORTER** [1] - 64:1
**represent** [2] - 25:7, 27:16
**representative** [1] - 10:13
**request** [1] - 28:8
**requests** [1] - 24:17
**require** [2] - 4:10, 29:10
**required** [14] - 7:3, 24:21, 30:1, 30:3, 35:13, 35:18, 42:23, 43:9, 43:20, 44:19, 45:2, 54:15, 63:3
**requirement** [3] - 39:12, 43:8, 54:20
**requirements** [1] - 26:19
**reserve** [1] - 44:13
**resolve** [2] - 26:23, 37:2
**resources** [1] - 18:5
**respect** [3] - 25:4, 25:22, 27:16
**respond** [2] - 24:18, 25:1
**responded** [3] - 18:23, 19:8, 24:2
**responding** [3] - 6:7, 7:7, 24:2
**response** [11] - 4:25, 6:2, 28:7, 28:10, 28:11, 33:5, 39:15, 45:4, 52:18, 63:14
**responses** [1] - 62:9
**responsibility** [6] - 31:19, 39:14, 62:4, 62:19, 62:23, 63:1
**responsible** [1] - 38:20
**rest** [2] - 36:2, 63:15
**rests** [1] - 35:17
**retain** [1] - 44:13
**retained** [1] - 7:19
**retains** [1] - 16:13
**review** [31] - 5:21, 7:9, 7:15, 7:20, 7:25, 8:3, 9:5, 9:18, 9:21, 10:1, 10:2, 10:19, 10:21, 10:24, 11:8, 12:6, 17:5, 17:21, 37:22, 40:1, 40:11, 41:21, 41:23, 41:25, 43:23, 52:3, 55:2, 58:11, 58:15, 58:22, 59:8

**reviewable** [10] - 6:13, 7:12, 10:8, 12:2, 23:22, 23:24, 25:17, 45:25, 53:24, 62:7
**reviewed** [3] - 11:23, 39:11, 41:16
**reviewing** [2] - 17:16, 41:25
**role** [2] - 24:6, 24:8
**rooms** [1] - 59:20
**running** [2] - 18:9, 21:15

## S

**sat** [1] - 19:17
**saw** [1] - 46:21
**scheme** [3] - 24:7, 24:9, 31:2
**SCHWEI** [46] - 4:18, 5:5, 5:7, 5:11, 5:14, 6:16, 7:13, 8:18, 9:8, 10:5, 10:22, 11:15, 12:4, 13:16, 14:11, 15:6, 15:21, 16:11, 17:7, 17:10, 18:16, 18:21, 19:6, 19:16, 19:21, 20:9, 20:18, 21:6, 21:18, 22:4, 23:24, 24:14, 25:18, 25:21, 26:6, 26:19, 27:6, 27:11, 27:15, 27:19, 27:23, 28:2, 62:9, 63:7, 63:11, 63:15
**scope** [4] - 6:11, 23:3, 37:13, 37:14
**scrutiny** [1] - 4:4
**SEC** [1] - 11:19
**second** [12] - 4:23, 5:19, 6:12, 6:22, 10:8, 14:3, 14:21, 15:25, 22:8, 30:11, 62:16, 63:9
**secretary** [1] - 46:17
**section** [14] - 32:16, 34:6, 35:25, 36:1, 51:15, 51:16, 51:18, 56:5, 56:6, 56:9, 56:10, 62:6, 63:4
**Section** [12] - 8:19, 32:2, 32:4, 43:11, 44:12, 54:13, 56:1, 56:8, 62:3, 62:11, 62:13, 63:10
**sections** [2] - 44:18, 51:19
**see** [7] - 21:17, 35:3, 36:24, 38:21, 49:16,

53:17, 54:3
**seek** [2] - 14:15, 50:17
**segregate** [2] - 21:16, 44:25
**seize** [8] - 4:10, 5:16, 15:11, 16:18, 24:21, 29:13, 29:18, 43:6
**seizing** [1] - 15:17
**seizure** [2] - 4:4, 29:11
**senators** [1] - 46:16
**sense** [2] - 26:22, 56:12
**sensitivity** [1] - 7:20
**sent** [1] - 47:14
**sentence** [1] - 43:11
**separate** [3] - 9:11, 9:20, 34:6
**separated** [1] - 31:4
**separately** [3] - 30:24, 32:9, 32:24
**separation** [1] - 38:11
**serious** [2] - 14:11, 14:15
**Service** [1] - 62:21
**serving** [1] - 20:23
**set** [4] - 52:5, 57:3, 59:17, 59:18
**sets** [1] - 49:25
**setting** [1] - 6:23
**shall** [8] - 31:18, 32:7, 32:17, 32:23, 44:13, 62:4, 62:22
**sheet** [1] - 54:19
**shield** [1] - 13:8
**shredding** [1] - 55:8
**similar** [2] - 38:7, 47:1
**simply** [9] - 5:16, 13:9, 16:19, 17:2, 19:2, 19:17, 22:17, 48:16, 61:7
**single** [2] - 42:20, 59:23
**sit** [1] - 51:21
**sits** [1] - 48:23
**sitting** [1] - 20:8
**situation** [3] - 12:25, 14:16, 38:3
**situations** [1] - 14:15
**slate** [4] - 57:22, 58:3, 58:8, 63:21
**slightly** [1] - 37:8
**snippets** [1] - 13:5
**softer** [1] - 26:4
**solely** [9] - 20:12, 20:13, 20:16, 20:20, 37:10, 45:18, 52:21, 54:8
**someone** [4] - 12:15, 12:17, 19:13, 21:25
**sometimes** [2] - 59:20

**somewhere** [1] - 43:1
**sorry** [2] - 37:15, 57:14
**sort** [7] - 18:12, 31:8, 37:2, 42:6, 47:20, 53:22, 57:6
**sorts** [1] - 13:8
**sound** [4] - 19:10, 21:21, 49:22, 59:12
**sounds** [2] - 11:12, 29:11
**source** [2] - 53:5, 53:7
**speaking** [2] - 21:22, 33:19
**specific** [3] - 30:22, 62:12, 63:2
**specifically** [5] - 12:1, 21:16, 29:17, 52:12, 56:2
**specifies** [1] - 43:13
**speech** [1] - 54:22
**speeches** [2] - 54:22, 54:23
**spend** [1] - 18:5
**square** [1] - 39:24
**stack** [1] - 57:5
**staff** [2] - 32:6, 47:15
**standard** [5] - 10:21, 41:23, 41:24, 58:11, 59:8
**standing** [2] - 26:11, 47:23
**start** [1] - 6:9
**started** [2] - 18:12, 23:14
**starts** [2] - 10:5, 39:22
**state** [2] - 6:5, 46:18
**states** [2] - 33:6, 34:8
**States** [7] - 8:24, 31:18, 44:13, 44:16, 44:17, 44:20, 51:21
**stating** [3] - 10:6, 10:24, 29:15
**statute** [51] - 5:20, 8:11, 8:16, 8:18, 10:25, 12:16, 12:22, 13:11, 15:17, 15:18, 15:20, 15:21, 19:23, 19:25, 21:23, 22:3, 22:6, 23:5, 29:24, 30:25, 31:14, 31:17, 33:9, 33:11, 33:13, 35:17, 36:2, 37:5, 38:19, 38:24, 42:6, 42:21, 42:22, 46:1, 48:12, 48:22, 48:25, 49:7, 49:13, 51:8, 51:9, 51:11, 52:1, 52:2, 52:6, 54:3, 59:6, 60:8, 62:22

**statutes** [2] - 4:3, 18:6
**statutory** [17] - 10:9, 11:5, 11:6, 14:25, 15:11, 24:7, 24:9, 31:2, 34:23, 35:5, 35:7, 38:19, 38:22, 48:11, 48:19, 49:16, 49:17
**stay** [1] - 44:16
**step** [4] - 36:23, 37:1, 50:18, 59:23
**still** [11] - 16:12, 17:14, 23:3, 23:4, 28:15, 30:21, 40:20, 41:13, 47:7, 55:16, 55:17
**stops** [2] - 60:25, 61:1
**strike** [1] - 13:11
**strong** [1] - 23:15
**struck** [1] - 40:16
**structure** [1] - 15:11
**stuck** [2] - 37:16, 39:17
**subject** [4] - 39:25, 41:19, 48:11, 52:4
**subsection** [2] - 32:17, 33:11
**subsequent** [2] - 14:24, 22:16
**subsequently** [2] - 13:5, 15:4
**substance** [3] - 30:18, 30:20, 55:25
**sue** [4] - 14:18, 26:15, 34:2, 61:2
**sued** [1] - 36:12
**suggest** [2] - 52:3, 57:13
**suggests** [1] - 47:11
**suit** [1] - 28:17
**supposed** [10] - 26:15, 32:25, 42:2, 44:3, 44:16, 44:21, 44:24, 51:5, 51:22, 54:18
**Supreme** [4] - 10:6, 11:2, 22:15, 23:8
**sweep** [1] - 13:1
**system** [2] - 48:3, 57:3

**T**

**talks** [8] - 23:10, 30:18, 34:10, 34:13, 34:19, 47:8, 56:4, 56:9
**tape** [7] - 19:12, 19:20, 21:3, 21:15, 21:24, 47:14
**tapes** [14] - 4:20, 5:15,

5:16, 6:19, 8:6, 8:9, 18:9, 18:21, 18:24, 18:25, 24:21, 28:14, 42:15, 47:4
**Taylor** [7] - 18:8, 21:14, 46:19, 47:5, 47:6, 47:14, 59:19
**tee** [1] - 26:10
**teed** [2] - 24:12, 24:16
**telephone** [1] - 19:18
**term** [11] - 16:12, 31:25, 39:20, 41:2, 54:6, 54:8, 54:10, 57:1, 57:4, 62:15
**text** [3] - 10:9, 11:5, 11:6
**THE** [135] - 4:15, 4:21, 5:6, 5:10, 5:13, 6:9, 7:8, 8:2, 9:4, 9:25, 10:19, 11:9, 12:1, 12:23, 14:4, 15:3, 15:18, 16:9, 16:23, 17:8, 18:7, 18:19, 19:4, 19:12, 19:19, 20:4, 20:15, 20:22, 21:13, 21:23, 23:13, 24:10, 25:9, 25:19, 26:4, 26:10, 26:25, 27:8, 27:13, 27:17, 27:21, 27:24, 28:4, 28:17, 28:22, 28:25, 29:3, 29:7, 29:19, 29:23, 30:3, 30:7, 30:12, 30:14, 30:22, 31:13, 31:24, 32:2, 32:4, 32:23, 33:3, 33:8, 33:14, 33:25, 34:8, 34:25, 35:25, 36:11, 37:3, 37:21, 38:1, 38:8, 38:15, 39:18, 40:8, 40:10, 41:9, 41:21, 42:2, 42:14, 42:17, 43:10, 43:18, 43:25, 44:6, 44:9, 45:4, 45:9, 45:13, 45:21, 46:11, 47:3, 48:10, 48:15, 49:8, 49:13, 49:20, 50:14, 50:21, 51:9, 52:1, 52:15, 53:5, 53:10, 53:17, 54:1, 54:10, 55:1, 55:12, 56:1, 56:8, 56:17, 56:19, 57:16, 58:2, 58:5, 58:10, 58:18, 58:21, 59:4, 59:22, 60:9, 60:12, 60:14, 60:17, 60:22, 61:2, 61:12, 61:16, 61:22, 61:24, 63:5, 63:8,

63:12, 63:17
**themselves** [1] - 21:11
**theoretically** [1] - 24:4
**theory** [2] - 52:24, 57:16
**therefore** [7] - 4:12, 13:3, 24:25, 25:5, 31:22, 48:7, 62:6
**thereof** [1] - 20:2
**they've** [2] - 40:25, 50:24
**thinking** [1] - 58:20
**thinks** [2] - 26:25, 41:13
**third** [3] - 5:25, 6:12, 15:8
**three** [1] - 13:16
**threshold** [7] - 4:6, 5:19, 5:25, 6:3, 9:15, 18:18, 27:20
**throughout** [1] - 19:1
**tied** [1] - 5:19
**timing** [1] - 20:4
**today** [1] - 30:11
**took** [6] - 4:22, 42:15, 47:14, 53:18, 61:17
**track** [1] - 18:14
**transacting** [6] - 20:25, 21:2, 21:5, 21:8, 21:12, 21:20
**transcript** [3] - 20:6, 20:9, 64:4
**transferred** [1] - 62:14
**transferring** [1] - 6:20
**treat** [2] - 34:14, 34:20
**troubling** [2] - 53:17, 55:13
**true** [3] - 5:21, 11:24, 28:23
**trust** [1] - 55:3
**trusted** [1] - 55:4
**try** [8] - 13:25, 35:21, 43:6, 44:11, 48:21, 50:23, 57:11
**trying** [10] - 13:1, 13:11, 14:18, 16:18, 41:5, 43:1, 43:2, 46:17, 57:7, 57:8
**turn** [2] - 37:6, 51:1
**turned** [1] - 31:8
**turns** [1] - 61:6
**two** [10] - 6:16, 7:4, 12:11, 32:12, 33:5, 52:13, 62:9, 62:13, 63:9, 63:12
**type** [7] - 10:12, 12:14, 25:5, 60:16, 63:1, 63:2

**U**

**ultimately** [2] - 26:11, 29:19
**undefined** [1] - 23:4
**under** [66] - 4:3, 4:12, 5:21, 8:4, 8:11, 9:6, 9:16, 9:20, 10:19, 10:21, 11:24, 12:13, 12:15, 14:7, 14:14, 17:12, 17:20, 22:3, 25:6, 25:8, 26:13, 26:16, 29:23, 29:25, 30:25, 31:2, 35:11, 35:15, 35:16, 37:5, 37:19, 38:24, 40:12, 40:16, 40:20, 40:21, 42:21, 42:22, 43:14, 44:15, 45:6, 45:7, 45:9, 46:1, 47:21, 48:11, 48:25, 49:10, 49:13, 51:8, 51:16, 52:12, 52:23, 53:13, 54:3, 54:13, 55:17, 58:24, 59:6, 59:8, 60:7, 61:9, 61:10, 63:3, 63:22
**underlies** [1] - 4:5
**unenforceable** [1] - 50:22
**unequivocal** [1] - 63:3
**unfettered** [5] - 10:21, 26:17, 48:20, 55:3, 55:5
**United** [7] - 8:24, 31:18, 44:13, 44:15, 44:16, 44:20, 51:21
**units** [1] - 32:6
**unlawfully** [1] - 7:18
**unless** [1] - 60:10
**unreviewable** [5] - 10:15, 11:3, 11:7, 26:11, 52:18
**up** [18] - 15:23, 17:5, 18:8, 21:4, 23:1, 24:12, 24:16, 26:10, 32:4, 35:8, 50:1, 51:2, 54:8, 54:19, 57:3, 59:17, 59:18, 60:1
**upheld** [1] - 15:7
**utilized** [4] - 8:8, 20:25, 41:11, 42:4

**V**

**vehicle** [1] - 52:11
**versus** [4] - 33:10, 41:22, 53:12, 56:11

**vest** [1] - 56:19
**veto** [2] - 39:21, 55:7
**vice** [3] - 38:4, 38:13, 38:17
**view** [6] - 9:5, 26:2, 27:22, 40:4, 43:19, 46:24
**violation** [3] - 11:18, 11:21, 11:22
**virtually** [1] - 39:19
**voice** [2] - 21:10, 21:22
**vs** [2] - 37:4, 47:22

## W

**Watch** [8] - 37:7, 47:22, 48:9, 48:10, 49:5, 50:1, 51:3, 57:22
**watching** [1] - 47:6
**website** [1] - 32:21
**Webster** [1] - 62:21
**week** [1] - 46:23
**whatsoever** [2] - 53:11, 55:2
**White** [4] - 31:7, 32:12, 42:20, 59:21
**whole** [4] - 15:19, 25:11, 44:19, 45:2
**wildly** [1] - 15:9
**win** [2] - 60:22, 61:1
**window** [1] - 17:4
**works** [1] - 57:16
**write** [8] - 26:12, 26:15, 27:3, 27:10, 29:14, 44:10, 46:22, 60:1
**writing** [3] - 57:22, 58:3, 63:20
**wrote** [3] - 19:17, 28:10, 46:9

## Y

**years** [4] - 44:22, 44:23
**York** [1] - 44:2